## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

ISIDRO BARICUATRO, JR.,  BONIFACIO
CARREON, JOEL FRANCO, SAXON
GANNOD, FERDINAND D. GARCIA,
WELSON GOROM, RODELIO MALIGO,
ADRIAN PAYAGAN, ERWIN A. REALIN,
JOSUE RABADAN, MARCELO RELOTA,
ROSELLER MANUEL, ARMANDO
CHUMACERA, ROGELIO CALAGOS,
ALBERTO ARCILLA, BUTCH ERA PEREZ,
DANILO ACIERTO, RICARDO RAMOS,
RANEL LAMOSTE, EDUARDO REAL,
CAMILO ALAGDON, ZOSIMO BARROGA,
RANDY CABUENAS, BIENVENIDO
CRUZAT, ROY CUYAG, TEODORO
DOMINGUEZ, JOSE ESPIRITU, OMAR
ESTOESTA, TEOFILO ERWIN GARCIA,
RAMIL GUEVARRA, BENITO ILAGAN, JR.,
LEMUEL LUMANOG, AMADO
MATUSALIN, ANGELO NALZARO, DANTE
PEREZ, SAMUEL VILLA, and NOEL
MASIKIP individually and on behalf of all
persons similarly situated,

        Plaintiffs,

    v.

INDUSTRIAL PERSONNEL AND
MANAGEMENT SERVICES, INC., D&R
RESOURCES, LLC, GRAND ISLE
SHIPYARD, DANILO N. DAYAO,
RANDOLPH F. NUNEZ MALAGAPO,
PACIFIC OCEAN MANNING, INC., V
MANPOWER PHILIPPINES, INC., f/k/a
V PEOPLE MANPOWER PHILIPPINES,
INC.,, THUNDER ENTERPRISES, INC.,
DNR-OFFSHORE AND CREWING
SERVICES, INC., NILFIL PERALTA, and
MARK PREGEANT,

Defendants.

    :
    :
    :
    :
    :
    :
    :
    :
    :
    :
    :
    :
    :
    :
    :

**CLASS ACTION/COLLECTIVE
ACTION**

Civil Action No.: 2:11-cv-02777-KDE-JCW

**SECOND AMENDED CLASS AND
COLLECTIVE ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

District Judge Section "N":    Judge Kurt D. Engelhardt

Mag. Judge Division 2:    Mag. Judge Joseph C. Wilkinson, Jr.

## SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

1.      Plaintiffs Isidro Baricuatro, Jr., Bonifacio Carreon, Joel Franco, Saxon Gannod, Ferdinand D. Garcia, Welson Gorom, Rodelio Maligo, Adrian Payagan, Erwin A. Realin, Josue Rabadan, Marcelo Relota, Roseller Manuel, Armando Chumacera, Rogelio Calagos, Alberto Arcilla, Butch Era Perez, Danilo Acierto, Ricardo Ramos, Ranel Lamoste, Eduardo Real, Camilo Alagdon, Zosimo Barroga, Randy Cabuenas, Bienvenido Cruzat, Roy Cuyag, Teodoro Dominguez, Jose Espiritu, Omar Estoesta, Teofilo Erwin Garcia, Ramil Guevarra, Benito Ilagan, Jr., Lemuel Lumanog, Amado Matusalin, Angelo Nalzaro, Dante Perez, Samuel Villa, and Noel Masikip (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, and on behalf of the members of the proposed Rule 23 classes defined below, by and through their undersigned counsel, bring this Second Amended Class and Collective Action Complaint pursuant to 29 U.S.C. § 216(b) and Rule 23 of the Federal Rules of Civil Procedure against Industrial Personnel and Management Services, Inc. ("IPAMS"), D&R Resources, LLC ("D&R"), Grand Isle Shipyard ("Grand Isle"), Danilo N. Dayao ("Dayao"), Randolph F. Nunez Malagapo ("Malagapo"), Pacific Ocean Manning, Inc. ("POMI"), V Manpower Philippines, Inc. (f/k/a V People Manpower Philippines, Inc.) ("V People"), Thunder Enterprises, Inc. ("Thunder"), DNR-Offshore and Crewing Services, Inc. ("DNR"), Nilfil Peralta ("Peralta"), and Mark Pregeant, Jr. ("Pregeant") (collectively, "Defendants").

2.      Plaintiffs bring this case on behalf of themselves and all persons similarly situated who were recruited by, trafficked by, employed by, exploited by, and/or

imprisoned in ways similar to those described below. Plaintiffs also bring this case on behalf of themselves and all persons similarly situated who, in violation of law and prior contractual agreements, were not compensated properly, at any time since November 8, 2001. Plaintiffs also bring this case under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*. ("FLSA") on behalf of themselves and all persons who currently work or have worked for Defendants[1] under E-2 and/or B-1/OCS visas in the United States, at any time since November 8, 2008.

## I.    INTRODUCTION

3.    Plaintiffs are citizens of the Philippines and Asian Pacific Islanders who were recruited and trafficked into the United States, in particular the State of Louisiana, to provide labor for Defendant Grand Isle.

4.    To reach the United States and procure a job with Grand Isle, Plaintiffs were assisted by two recruiting agencies based in the Philippines: Defendants IPAMS and POMI. Targeting Filipino workers, including Plaintiffs, desperate to secure employment abroad to earn enough of a living to support themselves and their families, IPAMS and POMI promised to help Plaintiffs and other Filipino workers obtain E-2 or B-1/OCS visas and to provide them with stable economic and employment opportunities in the United States.

5.    Two United States-based placement (or manpower) agencies, Defendants DNR (f/k/a D&R) – which, on information and belief, is or was owned by Defendants Malagapo, Dayao, Peralta, and Thunder – and V People, also helped recruit Plaintiffs

---

[1] On information and belief, each Defendant in this case qualifies as an "employer" as defined by the Fair Labor Standard Act, 29 U.S.C. § 203(d), and applicable case law.

from the Philippines and traffic them into Louisiana.  DNR (f/k/a D&R), working

primarily in conjunction with IPAMS, and V People, working primarily in conjunction

with POMI, sponsored certain Plaintiffs' E-2 or B-1/OCS visas, assisted Plaintiffs with

the visa application process, and procured jobs for Plaintiffs in Louisiana with Defendant

Grand Isle.[2]  On information and belief, DNR (f/k/a D&R) and V People represented to

Plaintiffs and other similarly situated workers during the recruitment process that

employment with Grand Isle in the United States was worth the heavy cost of abandoning

their families in the Philippines.  On further information and belief, in approximately

2009, Grand Isle added DNR (f/k/a D&R) to its fleet of recruiting agencies in the

Philippines (which also includes IPAMS and POMI) and discontinued its relationship

with V People.

      6.     IPAMS', POMI's, DNR's (f/k/a D&R), and V People's recruitment of

Plaintiffs and other Filipino workers was in fact a ruse.  While IPAMS, POMI, DNR

(f/k/a D&R), and V People promised employment and economic stability in order to

persuade Plaintiffs and other Filipino workers to work for Defendant Grand Isle in the

United States, these Defendants knew when they made this assurance that, in actuality,

Grand Isle, in conjunction with and with the support of Defendants DNR (f/k/a D&R),

Thunder, Malagapo and Dayao, has in fact for years operated what is essentially a labor

camp for Asian Pacific Islander laborers from the Philippines.

---

[2] Plaintiffs set forth below which specific Defendant(s) recruited each Plaintiff and which specific
Defendant(s) assisted each Plaintiff with obtaining his visa and securing a job with Grand Isle.
*See* Paragraphs 19-55, *infra*.

7.      Specifically, from the minute Plaintiffs and other Filipino workers set foot in Louisiana, they were essentially imprisoned by Defendants Grand Isle, DNR (f/k/a D&R), Thunder, Malagapo, and Dayao.  On information and belief, Defendants Grand Isle, DNR (f/k/a D&R), Thunder, Malagapo, and Dayao, forced Plaintiffs and other similarly situated workers to live in overcrowded, substandard housing facilities, which, on information and belief, were owned by Grand Isle and operated/managed by Grand Isle, DNR (f/k/a D&R), Malagapo, and Dayao.  One such substandard housing facility is a bunkhouse in Galliano, Louisiana, which Plaintiffs shared with at least 100 other workers. The bunkhouse was divided into small rooms, an estimated 10 feet by 10 feet in size, each of which contained two sets of bunk beds to accommodate four workers. Another example is a barge in Lafitte, Louisiana.  The rooms on the barge were also 10 feet by 10 feet in size, but slept six workers to a room and contained "sleeping mats" rather than actual beds.  Furthermore, if American workers needed a place to sleep or if they preferred a room occupied by Asian Pacific Islander workers, Defendants Grand Isle, DNR (f/k/a D&R), Thunder, Malagapo and  Dayao expelled the Asian Pacific Islander workers from their room and forced them to sleep elsewhere.

8.      Defendants Grand Isle, DNR (f/k/a D&R), Thunder, Malagapo and Dayao closely monitored these housing facilities to ensure that Plaintiffs and other similarly situated workers would not escape or attempt to escape their confines.  Specifically, on information and belief, these Defendants maintained and enforced a strict curfew for Plaintiffs and other similarly situated workers that confined them to the housing facilities after 10:00 PM.  In the case of the Galliano bunkhouse, Defendants Grand Isle, DNR

(f/k/a D&R), Thunder, Malagapo, and Dayao went so far as to lock Plaintiffs inside the bunkhouse after 10:00 PM.  They also set up security cameras outside the bunkhouse to discourage Plaintiffs from escaping or attempting to escape.  Taking yet another step to restrict Plaintiffs' freedom of movement, Defendants Grand Isle, DNR (f/k/a D&R), Thunder, Malagapo, and Dayao prohibited Plaintiffs and other similarly situated workers from obtaining driver's licenses, or even from riding in a car with an American worker.

9.      Plaintiffs' work conditions were as insufferable as their housing conditions.  Plaintiffs and other similarly situated workers were forced to work approximately 12 hours per day, six to seven days per week, often without proper meal or rest breaks. This rigorous work schedule was implemented and enforced by Defendants Grand Isle, DNR (f/k/a D&R), Thunder, Malagapo, Dayao, and Pregeant.  Moreover, on top of Plaintiffs' work as welders, fitters, and other similarly skilled craftsmen, Defendant Pregeant also required certain Plaintiffs and other similarly situated workers to wash his car, perform maintenance and repair work on his home, and perform other non-work-related tasks for his personal benefit.

10.      On information and belief, Defendants Grand Isle, DNR (f/k/a D&R), and/or V People distributed paychecks to Plaintiffs and other Filipino workers. Yet, rather than properly compensate Plaintiffs for their hard work, Grand Isle, DNR (f/k/a D&R), and/or V People refused to pay them for all of the straight-time and overtime hours they worked.  In addition, Grand Isle, DNR (f/k/a D&R), and/or V People deducted an excessive and unreasonable amount from Plaintiffs' wages – often up to $2,000 to $3,500 per month – for housing and living expenses.  These expense deductions occurred

6

automatically, even when certain Plaintiffs were occasionally assigned to work on an offshore oil platform and the owner of the platform, rather than Grand Isle, DNR (f/k/a D&R), and/or V People, paid for Plaintiffs' food and shelter.  Furthermore, in many cases, Grand Isle, DNR (f/k/a D&R), and/or V People automatically deducted from Plaintiffs' wages the alleged cost of required work-related tools and equipment, thereby forcing Plaintiffs to pay for these items even though they clearly benefitted the company(ies) for whom Plaintiffs performed work.[3]  Moreover, although these Plaintiffs were forced to pay for work-related tools and equipment, it was Grand Isle, DNR (f/k/a D&R), and/or V People who ultimately possessed and retained these items.

11.     Because Plaintiffs were foreign nationals of Asian Pacific Islander descent working on temporary visas in an unfamiliar land, they had no option but to bow to the exploitative and unlawful employment practices thrust upon them.  On information and belief, even when Plaintiffs mustered the courage to question the exploitative employment practices discussed above, Defendants Grand Isle, DNR (f/k/a D&R), Thunder, Malagapo, and/or Dayao used Plaintiffs' status as immigrant workers against them.  Specifically, if Plaintiffs questioned why they were paid so little to work so much, Grand Isle, DNR (f/k/a D&R), Thunder, Malagapo, and/or Dayao, or their representatives, routinely threatened to deport them.[4]  Likewise, if Plaintiffs questioned

---

[3] That Grand Isle, DNR (f/k/a D&R) and/or V People often deducted the cost of protective equipment and tools from the paychecks of Filipino workers has been confirmed by the following Plaintiffs: Arcilla, Gorom, Real, Payagan, Relota, Carreon, Franco, Realin, Gannod, D. Perez, Barroga, Estoesta, Espiritu, and Ramos.  Plaintiffs reserve the right to amend this allegation after the benefit of discovery.

[4] That Grand Isle, DNR (f/k/a D&R), Thunder, Dayao, and/or Malagapo, or their representatives, routinely threatened to deport Plaintiffs and other similarly situated workers has been confirmed by the following Plaintiffs: Arcilla, F. Garcia, Gorom, Pagayan, Real, Relota, Carreon, Franco,

why such excessive and unreasonable expenses were deducted from their paychecks, Defendants Grand Isle, DNR (f/k/a D&R), Thunder, Malagapo, and/or Dayao, or their representatives, routinely threatened to deport them.

12.     In short, Defendants who serve as recruiting and placement agencies for Grand Isle - IPAMS, POMI, DNR (f/k/a D&R), and V People - attracted Plaintiffs and other similarly situated workers to Grand Isle with promises of economic and employment stability.  Yet, these Defendants knew full well that once Plaintiffs and other similarly situated workers actually arrived in Louisiana, Defendants Grand Isle, DNR (f/k/a D&R), Thunder, Malagapo, Dayao, and Pregeant used Plaintiffs' status as foreign workers against them.  Defendants Grand Isle, DNR (f/k/a D&R), Thunder, Malagapo, and Dayao essentially imprisoned Plaintiffs and other similarly situated workers in the ways described above, and routinely used threats of deportation to ensure that Plaintiffs acquiesced to the unlawful and exploitative employment practices described herein.

13.     Adding insult to injury, Defendants Grand Isle, DNR (f/k/a D&R), Thunder, Malagapo, Dayao, and Pregeant showed preferential treatment to non-Asian Pacific Islander workers and to workers who were United States citizens, in that these workers were not subject to limitations on their freedom and were not exploited and abused as were Plaintiffs and other Asian Pacific Islander workers.  As set forth herein, Plaintiffs were treated as prisoners by Defendants Grand Isle, DNR (f/k/a D&R), Thunder, Malagapo, and Dayao, while non-Asian Pacific Islander workers and workers

---

Maligo, Gannod, Lamoste, Realin, Acierto, Alagdon, Baricuatro, Barroga, Chumacera, Cruzat, Dominguez, Espiritu, Estoesta, Galagos, Ilagen, Guevarra, Cuyag, Matusalin, Nalzaro, B. Perez, D. Perez, Ramos, and Manuel.  Plaintiffs reserve the right to amend this allegation after the benefit of discovery.

who were United States citizens were treated in accordance with the rights and liberties guaranteed to all workers in the United States.

14.     Knowing that Plaintiffs feared deportation back to the Philippines, where wages were significantly less, Defendants collectively capitalized on these fears by exploiting them as detailed above.  Plaintiffs thus faced the unfortunate dilemma of acquiescing to the intolerable working conditions described herein or being forced back to their home country where they could barely earn a living and support their families. Plaintiffs, having no other option, reluctantly submitted to the exploitative conditions forced upon them.

## II.     <u>JURISDICTION AND VENUE</u>

15.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 18 U.S.C. § 1595(a) (civil trafficking), 18 U.S.C. § 1964(c) (RICO), and 29 U.S.C. 216(b) (FLSA).  The Court has supplemental jurisdiction over the state law causes of action asserted in this Complaint pursuant to 28 U.S.C. § 1367, because the state law claims form part of the same case or controversy as the federal law claims.

16.     Venue is proper in this District pursuant to 28 U.S.C. 1391(b) (2), because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District.  Venue is also proper in this District pursuant to 18 U.S.C. § 1965(a) because some or all Defendants reside, are found, have agents, and/or transact their affairs in the Eastern District of Louisiana.

### III.   PARTIES

Plaintiffs

17.     Plaintiffs are each persons of full age of majority, citizens of the

Philippines, and Asian Pacific Islanders, who were recruited from the Philippines

between 2006 and the present by Defendants IPAMS and/or POMI and/or DNR (f/k/a

D&R) and/or V People.  Each Plaintiff currently resides in the State of Louisiana and/or

resided in the State of Louisiana at the time of the events giving rise to this lawsuit.

18.     At all relevant times, Plaintiffs were each classified as E-2 or B-1/OCS

visa workers, which allowed them to work in the United States and, in particular, in the

State of Louisiana.

The IPAMS Plaintiffs[5]

19.     Plaintiff Isidro Baricuatro, Jr. is a person of full age and majority; is a

citizen of the Philippines; and, is an Asian Pacific Islander.  He was recruited by

Defendant IPAMS to work in the United States as a certified welder.  Defendant IPAMS

assisted him in obtaining an E-2 visa and arranged for him to work as a welder with

Defendant Grand Isle.  On information and belief, Plaintiff Baricuatro worked for Grand

Isle from approximately January 2007 through June 2007, July 2007 through May 2008,

June 2008 through November 2008, and October 2010 through December 2010.  Plaintiff

Baricuatro was a victim of the unlawful conduct alleged herein.

20.     Plaintiff Jose Espiritu is a person of full age and majority; is a citizen of

the Philippines; and, is an Asian Pacific Islander.   He was recruited by Defendant

_____

[5] The IPAMS Plaintiffs include those individual Plaintiffs who were recruited by IPAMS to work
in the United States.

IPAMS to work in the United States as a certified pipe fitter.  Defendants IPAMS and

DNR (f/k/a D&R) assisted him in obtaining an E-2 visa and  arranged for him to work as

a pipe fitter with Defendant Grand Isle.  On information and belief, Plaintiff Espiritu

worked for Grand Isle between approximately 2007 and 2011.  Plaintiff Espiritu was a

victim of the unlawful conduct alleged herein.

   21. Plaintiff Omar Estoesta is a person of full age and majority; is a citizen of

the Philippines; and, is an Asian Pacific Islander.   He was recruited by Defendant

IPAMS to work in the United States as a certified structural pipe fitter.  Defendant

IPAMS assisted him in obtaining an E-2 visa and arranged for him to work as a structural

pipe fitter with Defendant Grand Isle.  On information and belief, Plaintiff Estoesta

worked for Grand Isle between approximately January 2007 and September 2010.

Plaintiff Estoesta was a victim of the unlawful conduct alleged herein.

   22. Plaintiff Joel Franco is a person of full age and majority; is a citizen of the

Philippines; and, is an Asian Pacific Islander.  He was recruited by Defendant IPAMS to

work in the United States as a certified structural fitter.  Defendants IPAMS, specifically

an IPAMS representative with the last name of Hernandez, assisted him in obtaining an

E-2 visa and arranged for him to work as a structural fitter with Defendant Grand Isle.

Plaintiff Franco worked for Grand Isle from approximately January 2007 through June

2007, August 2007 through April 2007, and June 2008 through August 2009.  Plaintiff

Franco was a victim of the unlawful conduct alleged herein.

   23. Plaintiff Saxon Gannod is a person of full age and majority; is a citizen of

the Philippines; and, is an Asian Pacific Islander.   He was recruited by Defendant

IPAMS to work in the United States as a certified welder.  Defendants IPAMS and DNR (f/k/a D&R) assisted him in obtaining an E-2 visa and arranged for him to work as a welder with Defendant Grand Isle.  On information and belief, Plaintiff Gannod worked for Grand Isle between approximately January 2007 and August 2009.  Plaintiff Gannod was a victim of the unlawful conduct alleged herein.

24.     Plaintiff Ferdinand D. Garcia is a person of full age and majority; is a citizen of the Philippines; and, is an Asian Pacific Islander.  He was recruited by Defendant IPAMS to work in the United States as a certified combination welder.  Defendant IPAMS assisted him in obtaining an E-2 visa and arranged for him to work as a welder with Defendant Grand Isle.  On information and belief, Plaintiff Ferdinand Garcia worked for Grand Isle from approximately January 2007 through December 2007, January 2008 through June 2008, and August 2008 through December 2010.  Plaintiff Ferdinand Garcia was a victim of the unlawful conduct alleged herein.

25.     Plaintiff Welson Gorom is a person of full age and majority; is a citizen of the Philippines; and, is an Asian Pacific Islander. He was recruited by Defendant IPAMS to work in the United States as a certified welder.  Defendant IPAMS assisted him in obtaining an E-2 visa and arranged for him to work as a welder with Defendant Grand Isle.  On information and belief, Plaintiff Gorom worked for Grand Isle between approximately January 2007 and September 2009.  Plaintiff Gorom was a victim of the unlawful conduct alleged herein.

26.     Plaintiff Rodelio Maligo is a person of full age and majority; is a citizen of the Philippines; and, is an Asian Pacific Islander.   He was recruited by Defendant

IPAMS to work in the United States as a certified structural fitter.  Defendants IPAMS, DNR (f/k/a D&R), Malagapo, and Dayao assisted him in obtaining an E-2 visa and arranged for him to work as a structural fitter with Defendant Grand Isle .  On information and belief, Plaintiff Maligo worked for Grand Isle from approximately January 2007 through June 2007, July 2007 through December 2007, January 2008 through July 2008, and September 2008 through August 2009.  Plaintiff Maligo was a victim of the unlawful conduct alleged herein.

27.     Plaintiff Adrian Payagan is a person of full age and majority; is a citizen of the Philippines; and, is an Asian Pacific Islander.  He was recruited by Defendant IPAMS to work in the United States as a certified structural fitter.  Defendant IPAMS assisted him in obtaining an E-2 visa and arranged for him to work as a fitter with Defendant Grand Isle.  On information and belief, Plaintiff Payagan worked for Grand Isle from approximately January 2007 through October 2007, January 2008 through June 2008, and August 2008 through the Summer of 2009.  Plaintiff Payagan was a victim of the unlawful conduct alleged herein.

28.     Plaintiff Ricardo Ramos is a person of full age and majority; is a citizen of the Philippines; and, is an Asian Pacific Islander. He was recruited by Defendant IPAMS to work in the United States as a certified welder.  Defendant IPAMS, specifically an IPAMS representative with the last name of Hernandez, assisted him in obtaining an E-2 visa and arranged for him to work as a welder with Defendant Grand Isle.  On information and belief, Plaintiff Ramos worked for Grand Isle from approximately April

13

2008 through November 2008 and October 2011 through March 2012.  Plaintiff Ramos was a victim of the unlawful conduct alleged herein.

29.     Plaintiff Erwin A. Realin is a person of full age and majority; is a citizen of the Philippines; and, is an Asian Pacific Islander.  He was recruited by Defendant IPAMS to work in the United States as a certified welder.  Defendants IPAMS and Peralta assisted him in obtaining an E-2 visa and arranged for him to work as a welder with Defendant Grand Isle.  On information and belief, Plaintiff Realin worked for Grand Isle between approximately January 2007 and June 2011.  Plaintiff Realin was a victim of the unlawful conduct alleged herein.

30.     Plaintiff Samuel Villa is a person of full age and majority; is a citizen of the Philippines; and, is an Asian Pacific Islander.  He was recruited by Defendant IPAMS to work in the United States as a certified pipe fitter.  Defendants IPAMS and DNR (f/k/a D&R) assisted him in obtaining a H-2b visa and  arranged for him to work as a pipe fitter with Defendant Grand Isle.  On information and belief, Plaintiff Villa worked for Grand Isle from approximately April 2008 through October 2008.  Plaintiff Villa was a victim of the unlawful conduct alleged herein.

<u>The POMI Plaintiffs</u>[6]

31.     Plaintiff Danilo Acierto is a person of full age and majority; is a citizen of the Philippines; and, is an Asian Pacific Islander.  He was recruited by Defendant POMI to work in the United States as a certified welder and fitter.  Defendants POMI and V People assisted him in obtaining an E-2 visa and arranged for him to work as a welder

---

[6] The POMI Plaintiffs include those individual Plaintiffs who were recruited by POMI to work in the United States.

and fitter with Defendant Grand Isle. On information and belief, Plaintiff Acierto worked for Grand Isle from approximately November 2006 through December 2007 and July 2008 through October 2009.  Plaintiff Acierto was a victim of the unlawful conduct alleged herein.

32.     Plaintiff Camilo Alagdon is a person of full age and majority and is a citizen of the Philippines.  He was recruited by Defendant POMI to work in the United States as a certified welder.  Defendants POMI and DNR assisted him in obtaining a B-1/OCS visa and arranged for him to work as a welder with Defendant Grand Isle.  On information and belief, Plaintiff Alagdon worked for Grand Isle between approximately 2006 and 2010 and from January 2012 through May 2012.  Plaintiff Alagdon was a victim of the unlawful conduct alleged herein.

33.     Plaintiff Alberto Arcilla is a person of full age and majority; is a citizen of the Philippines; and, is an Asian Pacific Islander.  He was recruited by Defendant POMI to work in the United States as a certified welder.  Defendants POMI, V People, and Dayao assisted him in obtaining an E-2 visa and arranged for him to work as a welder with Defendant Grand Isle.  On information and belief, Plaintiff Arcilla worked for Grand Isle from approximately November 2006 through May 2007, June 2007 through December 2007, and November 2008 through April 2009.  Plaintiff Arcilla was a victim of the unlawful conduct alleged herein.

34.     Plaintiff Zosimo Barroga is a person of full age and majority; is a citizen of the Philippines; and, is an Asian Pacific Islander. He was recruited by Defendant POMI to work in the United States as a certified welder.  Defendants POMI and V People

15

assisted him in obtaining an E-2 visa and arranged for him to work as a welder with Defendant Grand Isle.  On information and belief, Plaintiff Barroga worked for Grand Isle between approximately November 2006 and May 2009.  Plaintiff Barroga was a victim of the unlawful conduct alleged herein.

35.     Plaintiff Randy Cabuenas is a person of full age and majority; is a citizen of the Philippines; and, is an Asian Pacific Islander.   He was recruited by Defendant POMI to work in the United States as a certified welder.  Defendants POMI, V People, and DNR (f/k/a D&R) assisted him in obtaining an E-2 visa and, on a separate occasion, a B-1/OCS visa.  These Defendants also arranged for him to work as a welder with Defendant Grand Isle.  On information and belief, Plaintiff Cabuenas worked for Grand Isle from approximately November 2006 through June 2007, July 2007 through November 2007, December 2007 through March 2008, September 2008 through April 2009, July 2009 through August 2009, and May 2012 through July 2012.  Plaintiff Cabuenas was a victim of the unlawful conduct alleged herein.

36.     Plaintiff Rogelio Calagos is a person of full age and majority; is a citizen of the Philippines; and, is an Asian Pacific Islander.  He was recruited by Defendant POMI to work in the United States as a certified welder.  Defendants POMI and V People assisted him in obtaining an E-2 visa and arranged for him to work as a welder with Defendant Grand Isle.  On information and belief, Plaintiff Calagos worked for Grand Isle from approximately November 2006 through December 2007.  Plaintiff Calagos was a victim of the unlawful conduct alleged herein.

37.     Plaintiff Bonifacio Carreon is a person of full age and majority; is a citizen of the Philippines; and, is an Asian Pacific Islander.  He was recruited by Defendant POMI to work in the United States as a certified welder.  Defendants POMI and V People assisted him in obtaining an E-2 visa and arranged for him to work as a welder with Defendant Grand Isle.  On information and belief, Plaintiff Carreon worked for Grand Isle from approximately November 2006 through May 2007, June 2007 through November 2007, and July 2008 through December 2008.  Plaintiff Carreon was a victim of the unlawful conduct alleged herein.

38.     Plaintiff Armando Chumacera is a person of full age and majority; is a citizen of the Philippines; and, is an Asian Pacific Islander.  He was recruited by Defendant POMI to work in the United States as a certified fitter.  Defendants POMI and V People assisted him in obtaining an E-2 visa and arranged for him to work as a fitter with Defendant Grand Isle. On information and belief, Plaintiff Chumacera worked for Grand Isle from approximately November 2006 through May 2007, July 2007 through December 2007, January 2008 through July 2008, and September 2008 through November 2008.  Plaintiff Chumacera was a victim of the unlawful conduct alleged herein.

39.     Plaintiff Bienvenido Cruzat is a person of full age and majority; is a citizen of the Philippines; and, is an Asian Pacific Islander.  He was recruited by Defendant POMI to work in the United States as a certified fitter.  Defendants POMI and V People assisted him in obtaining an E-2 visa, and  Defendants V People and DNR(f/k/a D&R) arranged for him to work as a fitter with Defendant Grand Isle.  On information

and belief, Plaintiff Cruzat worked for Grand Isle from approximately January 2007 through December 2007 and February 2008 through September 2008.  Plaintiff Cruzat was a victim of the unlawful conduct alleged herein.

40.     Plaintiff Roy Cuyag is a person of full age and majority; is a citizen of the Philippines; and, is an Asian Pacific Islander.  He was recruited by Defendant POMI to work in the United States as a certified welder.  Defendants POMI and V People assisted him in obtaining a B-1/OCS visa and arranged for him to work as a welder with Defendant Grand Isle.  On information and belief, Plaintiff Cuyag worked for Grand Isle from approximately June 2006 through December 2006, March 2007 through June 2007, October 2007 through February 2008, May 2008 through January 2009, February 2009 through June 2009, October 2009 through February 2010, November 2010 through February 2011, April 2011 through December 2011, October 2011 through December 2011, and January 2012 through March 2012.  Plaintiff Cuyag was a victim of the unlawful conduct alleged herein.

41.     Plaintiff Teodoro Dominguez is a person of full age and majority; is a citizen of the Philippines; and, is an Asian Pacific Islander.  He was recruited by Defendant POMI to work in the United States as a certified structural pipe fitter.  Defendants POMI and V People assisted him in obtaining an E-2 visa and  arranged for him to work as a structural pipe fitter with Defendant Grand Isle.  On information and belief, Plaintiff Dominguez worked for Grand Isle from approximately December 2006 through June 2007 and July 2007 through December 2007.  Plaintiff Dominguez was a victim of the unlawful conduct alleged herein.

18

42.     Plaintiff Teofilo Erwin Garcia is a person of full age and majority; is a citizen of the Philippines; and, is an Asian Pacific Islander. He was recruited by Defendant POMI to work in the United States as a certified welder.  Defendants POMI and V People assisted him in obtaining an E-2 visa and arranged for him to work as a welder with Defendant Grand Isle.  On information and belief, Plaintiff Teofilo Garcia worked for Grand Isle from approximately December 2006 through June 2007, July 2007 through September 2007, and November 2007 through March 2008.  Plaintiff Teofilo Garcia was a victim of the unlawful conduct alleged herein.

43.     Plaintiff Ramil Guevarra is a person of full age and majority; is a citizen of the Philippines; and, is an Asian Pacific Islander.  He was recruited by Defendant POMI to work in the United States as a certified welder.  Defendants POMI, V People, and DNR (f/k/a D&R) assisted him in obtaining a B-1/OCS visa and arranged for him to work as a welder with Defendant Grand Isle.  On information and belief, Plaintiff Guevarra worked for Grand Isle from approximately June 2006 through September 2006, October 2006 through January 2007, March 2007 through September 2007, October 2007 through February 2008, May 2008 through September 2008, October 2008 through February 2009, March 2009 through July 2009, July 2010 through December 2010, January 2011 through November 2011, and January 2012 through May 2012.  Plaintiff Guevarra was a victim of the unlawful conduct alleged herein.

44.     Plaintiff Benito Ilagan is a person of full age and majority; is a citizen of the Philippines; and, is an Asian Pacific Islander.   He was recruited by Defendant POMI to work in the United States as a certified welder.  Defendants POMI and DNR(f/k/a

19

D&R) assisted him in obtaining an E-2 visa and arranged for him to work as a welder with Defendant Grand Isle.  On information and belief, Plaintiff Ilagan worked for Grand Isle from approximately November 2006 through May 2007 and June 2007 through February 2008.  Plaintiff Ilagan was a victim of the unlawful conduct alleged herein.

45.     Plaintiff Ranel Lamoste is a person of full age and majority; is a citizen of the Philippines; and, is an Asian Pacific Islander.   He was recruited by Defendant POMI to work in the United States as a certified scaffold builder.  Defendants POMI and V People assisted him in obtaining a B-1/OCS visa and arranged for him to work as a scaffold builder, among other job positions, with Defendant Grand Isle.  On information and belief, Plaintiff Lamoste worked for Grand Isle between approximately 2005 and May 2012.  Plaintiff Lamoste was a victim of the unlawful conduct alleged herein.

46.     Plaintiff Lemuel Lumanog is a person of full age and majority; is a citizen of the Philippines; and, is an Asian Pacific Islander. He was recruited by Defendant POMI to work in the United States as a certified combination welder.  Defendants POMI and V People assisted him in obtaining an E-2 visa and arranged for him to work as a combination welder with Defendant Grand Isle.  On information and belief, Plaintiff Lumanog worked for Grand Isle from approximately November 2006 through May 2007, June 2007 through June 2008, and September 2008 through January 2009.  Plaintiff Lumanog was a victim of the unlawful conduct alleged herein.

47.     Plaintiff Roseller Manuel is a person of full age and majority; is a citizen of the Philippines; and, is an Asian Pacific Islander.   He was recruited by Defendant POMI to work in the United States as a certified welder.  Defendants POMI and V People

20

assisted him in obtaining an E-2 visa and arranged for him to work as a welder with Defendant Grand Isle.  On information and belief, Plaintiff Manuel worked for Grand Isle from approximately November 2006 through December 2007.  Plaintiff Manuel was a victim of the unlawful conduct alleged herein.

48.     Plaintiff Noel Masikip is a person of full age and majority; is a citizen of the Philippines; and, is an Asian Pacific Islander.   He was recruited by Defendant POMI to work in the United States as a certified welder.  Defendants POMI and V People assisted him in obtaining an E-2 visa and arranged for him to work as a welder with Defendant Grand Isle.  On information and belief, Plaintiff Masikip worked for Grand Isle from approximately November 2006 through September 2008.  Plaintiff Masikip was a victim of the unlawful conduct alleged herein.

49.     Plaintiff Amada Matusalin is a person of full age and majority; is a citizen of the Philippines; and, is an Asian Pacific Islander.   He was recruited by Defendant POMI to work in the United States as a certified pipe fitter.  Defendants POMI and V People assisted him in obtaining an E-2 visa and  arranged for him to work as a pipe fitter with Defendant Grand Isle.  On information and belief, Plaintiff Matusalin worked for Grand Isle from approximately January 2007 through June 2008.  Plaintiff Matusalin was a victim of the unlawful conduct alleged herein.

50.     Plaintiff Angelo Nalzaro is a person of full age and majority; is a citizen of the Philippines; and, is an Asian Pacific Islander.  He was recruited by Defendant POMI to work in the United States as a certified welder.  Defendants POMI, V People, Malagapo, and Dayao assisted him in obtaining a B-1/OCS visa and arranged for him to

work as a welder with Defendant Grand Isle.  On information and belief, Plaintiff

Nalzaro worked for Grand Isle between approximately December 2005 and March 2012.

Plaintiff Nalzaro was a victim of the unlawful conduct alleged herein.

51.     Plaintiff Butch Era Perez is a person of full age and majority; is a citizen

of the Philippines; and, is an Asian Pacific Islander.  He was recruited by Defendant

POMI to work in the United States as a certified fitter.  Defendants POMI and V People

assisted him in obtaining an E-2 visa and arranged for him to work as a fitter with

Defendant Grand Isle.  On information and belief, Plaintiff Butch Era Perez worked for

Grand Isle from approximately January 2007 through December 2007.  Plaintiff Butch

Era Perez was a victim of the unlawful conduct alleged herein.

52.     Plaintiff Dante Perez is a person of full age and majority; is a citizen of the

Philippines; and, is an Asian Pacific Islander.   He was recruited by Defendant POMI to

work in the United States as a certified structural pipe fitter.  Defendant POMI assisted

him in obtaining an E-2 visa and arranged for him to work as a structural pipe fitter with

Defendant Grand Isle.  On information and belief, Plaintiff Dante Perez worked for

Grand Isle between approximately November 2006 and September 2009.  Plaintiff Dante

Perez was a victim of the unlawful conduct alleged herein.

53.     Plaintiff Josue Rabadan is a person of full age and majority; is a citizen of

the Philippines; and, is an Asian Pacific Islander.   He was recruited by Defendant POMI

to work in the United States as a certified welder.  Defendants POMI and V People

assisted him in obtaining an E-2 visa and arranged for him to work as a welder with

Defendant Grand Isle. Plaintiff Rabadan worked for Grand Isle after 2006.  Plaintiff Rabadan was a victim of the unlawful conduct alleged herein.

54.     Plaintiff Eduardo Real is a person of full age and majority; is a citizen of the Philippines; and, is an Asian Pacific Islander.   He was recruited by Defendant POMI to work in the United States as a certified welder.  Defendant POMI also assisted him in obtaining a B-1/OCS visa and arranged for him to work as a welder with Grand Isle.  On a separate occasion, Defendants DNR (f/k/a D&R), Dayao, and Malagapo helped Plaintiff Real obtain a B-1/OCS visa and arranged for him to work as a welder with Defendant Grand Isle.  On information and belief, Plaintiff Real worked for Grand Isle from approximately March 2006 through March 2007, February 2007 through February 2010, and September 2010 through March 2012.  On March 30, 2012, Plaintiff Real escaped Grand Isle's facility.  Plaintiff Real was a victim of the unlawful conduct alleged herein.

55.     Plaintiff Marcelo Relota is a person of full age and majority; is a citizen of the Philippines; and, is an Asian Pacific Islander.   He was recruited by Defendant POMI to work in the United States as a certified fitter.  Defendants POMI and V People assisted him in obtaining an E-2 visa and arranged for him to work as a fitter with Defendant Grand Isle.  On information and belief, Plaintiff Relota worked for Grand Isle from approximately December 2006 through June 2007, July 2007 through December 2007, and September 2008 through July 2009.  Plaintiff Relota was a victim of the unlawful conduct alleged herein.

Defendants

56.     Defendant IPAMS is a corporation organized under the laws of the Philippines, with its principal place of business in Manila, Philippines. At all times relevant to this suit, IPAMS was engaged in the business of recruiting laborers from the Philippines for employment in the United States, and was authorized to undertake this business by the Philippine Overseas Employment Administration ("POEA").  As a subset of this business, IPAMS helped Filipino workers obtain their visas to work in the United States and helped place them in jobs in the United States.  In this case, IPAMS, acting on behalf of, in the interest of, in partnership with, and/or in conjunction with Defendants DNR (f/k/a D&R) Malagapo, Dayao, Peralta, Thunder, and Grand Isle, recruited the IPAMS Plaintiffs as described above for employment in Louisiana, helped them obtain their visas, and arranged for them to work with Grand Isle in Louisiana.  IPAMS acts through and is liable for the conduct of its agents, representatives, and employees as alleged herein.

57.     Defendant DNR (f/k/a D&R) is a corporation organized under the laws of the State of Louisiana, with its main office and principal place of business located at 18838 Highway 3235, Galliano, Louisiana.  On information and belief, D&R recently changed its corporate name to DNR.  On further information and belief, fifty percent of DNR (f/k/a D&R) is or was owned by Defendants Dayao, Peralta, and Malagapo.[7]  The remaining fifty percent of the company is or was owned by Defendant Thunder.

---

[7] On information and belief, "D&R" is an acronym for "Danilo [Dayao] and Randolph [Malagapo]," while "DNR" is an acronym for "Danilo [Dayao], Nilfil [Peralta], and Randolph [Malagapo]."

Defendant Pregeant serves as a Director of Thunder and, on information and belief, his relatives, Bryan Pregeant and Brad Pregeant, are also Directors of Thunder. DNR (f/k/a D&R) is a Treaty Investor and a primary E-2 visa holder. *See, e.g.,* Paragraphs 68-72, *infra.* Accordingly, DNR (f/k/a D&R) is engaged in the business of obtaining visas for workers from the Philippines and facilitating the hiring, placement, and employment of workers from the Philippines in the United States. DNR (f/k/a D&R), on its own and/or in conjunction with Defendants Dayao, Malagapo, Peralta, Thunder, IPAMS, and Grand Isle, obtained visas for certain Plaintiffs as described above and arranged jobs for them with Grand Isle in Louisiana. On information and belief, in approximately 2009, Grand Isle added DNR (f/k/a D&R) to its fleet of recruiting agencies in the Philippines (which also includes IPAMS and POMI). DNR (f/k/a D&R) acts through and is liable for the conduct of its agents, representatives, and employees, including, but not limited to, Dayao, Malagapo, Peralta, Pregeant, and Thunder as alleged herein.

58.     Defendants Dayao, Peralta, and Malagapo are persons of full age of majority and citizens of the Philippines. They own, operate, manage, and/or control fifty percent of DNR (f/k/a D&R). The remaining fifty percent of the company is or was owned by Defendant Thunder. Individually, and/or through DNR (f/k/a D&R), and/or in conjunction with Defendants Grand Isle, Thunder, and IPAMS, Defendants Dayao, Peralta, and Malagapo helped obtain visas for certain Plaintiffs as described above, and arranged for certain Plaintiffs to work with Grand Isle in the United States. On information and belief, Defendants Dayao, Peralta, and Malagapo further committed the

unlawful acts alleged herein in connection with the recruitment and employment of Plaintiffs and other similarly situated workers.

59.     Defendant Thunder is a corporation organized under the laws of Louisiana and presently doing business in Louisiana.  On information and belief, Defendant Pregeant is a Director of Thunder, as are his relatives, Bryan Pregeant and Brad Pregeant. On information and belief, during the relevant time period, Thunder owns or owned fifty percent of Defendant DNR (f/k/a D&R).  The remaining fifty percent of DNR (f/k/a D&R) is or was owned by Defendants Dayao, Malagapo, and Peralta, who are Filipino nationals.  DNR (f/k/a D&R) is allowed to recruit Filipino workers to the United States as a "Treaty Investor" and primary E-2 visa holder, because Filipino nationals own fifty percent of the corporation.  *See, e.g.,* Paragraphs 68-72, *infra*.  On information and belief, Defendants Thunder and DNR (f/k/a D&R) are, in effect, alter egos of one another. Specifically, during the relevant time period, Thunder's fifty percent capital investment and ownership interest in DNR (f/k/a D&R) was the sole purpose for Thunder's corporate existence.  On information and belief, the remaining fifty percent of DNR (f/k/a/ D&R) was secured by Defendants Malagapo's and Dayao's "investments" in the form of promissory notes, which were purportedly secured by their respective properties in the Philippines.  The Filipinos' capital investments were illiquid "shell investments."  Thus, but for Thunder's fifty percent liquid capital contribution and ownership interest, DNR (f/k/a D&R) would not be able to recruit and traffic Plaintiffs and other Filipino workers into the United States and to perform the exploitative and illegal acts described herein. *See* 22 CFR 41.51(b)(2).  More to the point, Thunder, with Defendant Pregeant as one of

its Directors (and his relatives as the other Directors), used DNR (f/k/a D&R) to recruit Filipino workers into the United States, which it could not have done without the illusory backing of Filipino "investors."  In short, Thunder used DNR (f/k/a D&R) to participate in and facilitate DNR's (f/k/a D&R), Malagapo's, Dayao's, and Peralta's illegal and fraudulent conduct described herein.  Thunder acts through and is liable for the conduct of its agents, representatives, and employees as alleged herein.  Thunder is also liable for the conduct of DNR (f/k/a D&R), at least during the time period it was a fifty percent owner of (DNR (f/k/a D&R)), as alleged herein.

60.     Defendant POMI is a corporation organized under the laws of the Philippines, with its principal place of business in Manila, Philippines.  On information and belief, POMI is engaged in the same business as Defendant IPAMS described above, namely recruiting laborers from the Philippines for employment in the United States, helping Filipino workers obtain visas to work in the United States, and placing Filipino workers in jobs in the United States.  In this case, POMI, acting on behalf of, in the interest of, in partnership with, and/or in conjunction with Defendants V People and Grand Isle, recruited certain Plaintiffs as described above for employment in the United States, helped them obtain visas, and arranged for them to work with Grand Isle in Louisiana.  POMI acts through and is liable for the conduct of its agents, representatives, and employees as alleged herein.

61.     Defendant V People is a corporation organized under the laws of the Philippines, with its principal place of business in the State of Texas.  On information and belief, V People is engaged in the same business as Defendant DNR (f/k/a D&R)

described above, namely: obtaining visas for workers from the Philippines and facilitating the hiring, placement, and employment of such workers in the United States. Individually, and/or in conjunction with Defendants POMI, Grand Isle, Malagapo, Dayao, and Peralta, V People obtained visas for certain Plaintiffs as described above and arranged for them to work with Grand Isle in Louisiana during all relevant times prior to November 2008.  V People acts through and is liable for the conduct of its agents, representatives, and employees as alleged herein.

62.     Defendant Grand Isle is a Louisiana corporation authorized to do business and presently doing business in the State of Louisiana.  Defendant Pregeant has served as President of Grand Isle during the relevant time period, while his relative, Bryan Pregeant, has served as Vice President.  On information and belief, in cooperation with Defendants IPAMS, DNR (f/k/a D&R), Dayao, Malagapo, Peralta, and Thunder, Grand Isle helped obtain visas for Plaintiffs as described herein and arranged for them to work with Grand Isle in Louisiana.  In further cooperation with Defendants POMI, V-People, Dayao, Malagapo, and/or Peralta, Grand Isle helped obtain visas for certain Plaintiffs as described above and arranged for them to work with Grand Isle in Louisiana.  On information and belief, at all relevant times Grand Isle has been an enterprise engaged in interstate commerce within the meaning of the FLSA.  Grand Isle acts through and is liable for the conduct of its agents, representatives, and employees, including, but not limited to, Defendant Pregeant as alleged herein.  DNR, Thunder, Malagapo, Dayao, and Peralta are also agents and representatives of Grand Isle.

28

63.     Defendant Pregeant has served as President for Defendant Grand Isle during the relevant time period.  His relative, Bryan Pregeant, has served as Grand Isle's Vice President. Defendant Pregeant, along with Bryan Pregeant and Brad Pregeant, have also served as Directors of Defendant Thunder, which is a fifty percent interest holder in Defendant DNR (f/k/a D&R).  DNR (f/k/a D&R) is a Treaty Investor and primary E-2 visa holder.  *See, e.g.,* Paragraphs 68-72, *infra*.  On information and belief, Defendant Pregeant committed the unlawful acts alleged herein in connection with the recruitment and employment of Plaintiffs and other similarly situated workers.

64.     On information and belief, at all relevant times, each Defendant has employed and/or jointly employed Plaintiffs within the meaning of the FLSA.

65.     Each Defendant is jointly and severally liable for the unlawful acts alleged herein.

### IV.     STATEMENT OF FACTS

**A.  Laws Regulating The Recruitment Of Philippine Nationals For Employment Within Louisiana**

**a.   IPAMS and POMI are authorized by the Philippine Overseas Employment Administration ("the POEA") to recruit Plaintiffs and other Filipino workers to work in the United States**

66.     In the Philippines, the POEA, a government entity, regulates the recruitment of Philippine nationals to work abroad, including in the United States.

67.     Any person, partnership, or corporation engaged in the recruitment and placement of workers abroad ("Private Employment Agency") must obtain a license from the POEA.   *See* POEA Rules and Regulations Governing the Recruitment of Land-Based Overseas Workers ('POEA Rules"), Rule 2(22).

29

68.     According to the POEA's rules and regulations, an employer who engages a Private Employment Agency to recruit Filipinos to work abroad is responsible for paying the workers' visa fee, airfare, POEA processing fee, and membership fee for the Philippine Overseas Workers Welfare Administration.  *See* POEA Rules, Rule 5, Section 2.

69.     Defendants IPAMS and POMI are licensed by the POEA to operate as "Private Employment Agencies."  *See* http://www.poea.gov.ph/cgi-bin/aglist.asp?mode=all.

**b. United States federal regulations regarding "E-Treaty" visa workers**

70.     Section 101(a)(15)(E) of the Immigration and Nationality Act ("INA") provides that individuals from nations with whom the United States has a reciprocal treaty may enter the country with either an E-1 ("Treaty Trader") or E-2 ("Treaty Investor") visa in order to develop businesses.  The United States presently has such treaties with 79 countries, including the Philippines.  *See* http://travel.state.gov/visa/fees/fees_3726.html.

71.     An individual entering the United States with an E-2 visa must do so "solely to develop and direct the operations of an enterprise in which he has invested, or of an enterprise in which he is actively in the process of investing, a substantial amount of capital."  *See* INA § 101(a)(15)(E)(ii).  Nationals of the treaty country must own at least fifty percent of the business in question.  *See* 22 CFR 41.51(b)(2).

72.     E-2 visas may also be available to "essential personnel" of the primary E-2-holder.  *See id.*  In order to qualify as "essential personnel," the foreign national must

be of the same nationality as the primary E-2 visa holder and must possess very specialized skills that are essential to the operation of the primary E-2 visa holder's enterprise.  *See* 22 CFR 41.15(b)(2) and (13); *see also* 62 Fed. Reg. 48144 (Sept. 12, 1977); 8 CFR 214.2(e)(3).

73.     The primary E-2 visa holder has complete control over the process by which an "essential personnel" foreign national can obtain an E-2 visa.  The primary E-2-holder must file a Form DS-160 with the American consulate in the country where the employee resides.  *See* Immigration Procedures Handbook, Section 4:19.  The primary E-2 visa holder must also submit a DS-156E Supplement Form, which includes proof of the company's substantial trade or investment, a business plan, a letter describing the company's business, the position that the "essential personnel" foreign national will fill, and the "essential personnel" foreign national's job qualifications.  *See* Immigration Procedures Handbook, Section 4:18.

74.     An "essential personnel" foreign national who possesses an E-2 visa may only work in the United States in the activity for which he or she was approved to work at the time the visa was granted.  *See* 8 CFR 214.2(e)(8)(ii).  Although foreign nationals may work for parents or subsidiaries of the company for which they were initially approved, any change to a new employer will result in the foreign national's failure to maintain E-2 status.  *Id*.  "Essential personnel" who hold E-2 visas are therefore dependent on their employer to both obtain and maintain their legal status in the United States.

### c. Regulations of the Louisiana Workforce Commission

75.     The Louisiana Workforce Commission administers the Louisiana Private

Employment Services law, La. R.S. 23:101, *et seq*. ("the LPES"), which provides that

any person, company, corporation, or partnership must be licensed by the Louisiana

Workforce Commission before it may operate, solicit, or advertise as an employment

service within Louisiana.

76.     The LPES provides that any contract between an employment service and

an applicant or candidate must first be approved by the Louisiana Workforce

Commission. The LPES further provides that any fees charged by an employment service

must be based on a schedule of fees as applied to the applicant's projected first year's

gross earnings.

77.     Regulations implementing the LPES provide that an employment service

may not charge or receive a fee from an applicant prior to the actual commencement of

work on a job procured by the employment service.

### B. Factual Allegations Relating To Human Trafficking Scheme

78.     On information and belief, beginning in at least 2006 and continuing

through the present, Defendants IPAMS and POMI placed ads in various Philippine

newspapers and on various Philippine radio stations seeking to recruit Filipino welders,

fitters, and other similarly skilled workers to work in the United States.

79.     On information and belief, Defendants IPAMS and POMI placed such ads

in coordination and agreement with each other and with Defendants DNR (f/k/a D&R), V

People, Malagapo, Dayao, Peralta, Thunder, Pregeant, and Grand Isle in a scheme to

obtain, transport, and provide Filipino workers to Defendant Grand Isle in Louisiana.  On information and belief, Defendants Dayao and Malagapo worked for GIS as E-2 visa holders prior to their ownership of D&R (now DNR) and Defendant Peralta worked for POMI and/or V People prior to his co-ownership of DNR.  On information and belief, Grand Isle first hand-selected Malagapo and Dayao as Filipino national investors in D&R (D&R was co-owned by Thunder and helmed, in part, by Pregeant).  Grand Isle later handpicked Peralta as an additional Filipino national investor in DNR (f/k/a D&R).  On information and belief, D&R is an acronym for "Danilo [Dayao] and Randolf [Malagapo]" and DNR is an acronym for "Danilo [Dayao], Nilfil [Peralta], and Randolf [Malagapo]." On further information and belief, during at least 2006 through the present,[8] these Defendants have frequently communicated and consulted via mail, facsimile, e-mail, and/or telephone for the purpose of coordinating and directing the recruitment of Filipino workers for work in the United States, including recruiting efforts on behalf of Grand Isle.

80.     Via Defendants IPAMS' and POMI's advertisements and/or through word-of-mouth, Plaintiffs and other Filipino workers learned that IPAMS and POMI were recruiting Filipino workers, including certified welders, fitters, and other similarly skilled craftsmen, to work in the United States.

81.     Plaintiffs also learned that IPAMS was recruiting for and on behalf of Defendant DNR (f/k/a D&R), while POMI was recruiting for and on behalf of Defendant V People.  In addition, Plaintiffs discovered that both DNR (f/k/a D&R) and V People

---

[8]  On information and belief, Defendant V People did not recruit Filipino workers for Grand Isle at any time after October 2008.

were recruiting Filipino workers in order to fulfill their contractual commitments to

Defendant Grand Isle.  Specifically, on information and belief, Grand Isle contracted with

DNR (f/k/a D&R) and V People, respectively, to provide Grand Isle with workers who

possess Plaintiffs' skill and expertise, including certified welders, fitters, and other

similarly skilled workers.  On further information and belief, in approximately 2009,

Grand Isle added DNR (f/k/a D&R) to its fleet of recruiting agencies in the Philippines

(which also includes IPAMS and POMI).

        82.    On information and belief, Plaintiffs submitted employment applications

to the office of one of the Philippines-based recruiting agencies - IPAMS POMI, or DNR

(f/k/a D&R) - and were then interviewed by the applicable recruiting agency regarding

their job qualifications.  On further information and belief, the recruiting and interview

process was essentially the same, irrespective of whether Plaintiffs applied for work

through IPAMS, POMI, or DNR (f/k/a D&R).  Specifically, on information and belief,

regardless of whether Plaintiffs applied for employment through IPAMS, POMI, V

People, and/or DNR (f/k/a D&R), they were informed during the interview by an IPAMS,

POMI, or DNR (f/k/a D&R) representative(s) that, if Plaintiffs' employment applications

were accepted, they would be transported to the United States.  On information and

belief, certain Plaintiffs were also assured by IPAMS, POMI, V People, and/or DNR

(f/k/a D&R) that their employer in the United States would provide them with adequate

living arrangements, including food and housing free of charge.[9]  On information and

---

[9] That IPAMS, POMI and/or DNR (f/k/a D&R) routinely promised Plaintiffs to pay for their
living expenses in the United States has been confirmed by the following Plaintiffs: Arcilla,
Acierto, Baricuatro, Cabuenas, Carreon, Cruzat, Cuyag, Franco, Gannod, F. Garcia, Gorom,
Lamoste, Maligo, Matusalin, Nalzaro, Payagan, Real, Realin, Relota, and Villa.  Plaintiffs reserve

belief, Plaintiffs were further assured that, despite having to leave their families and other opportunities in the Philippines, a job in the United States would afford Plaintiffs ample economic and employment stability.  Finally, on information and belief, Plaintiffs were assured by IPAMS, POMI, and/or DNR (f/k/a D&R) during their respective interviews that, if Plaintiffs' employment applications were accepted, they would receive a temporary work visa.  On information and belief, upon receiving their visa, in many cases Plaintiffs were informed by a representative(s) of the applicable recruiting agency - IPAMS, POMI, V People, and/or DNR (f/k/a D&R) - that the visa would allow them to work in the United States for five (5) years, and that they could eventually obtain a green card or permanent residency.[10]

83.    On information and belief, regardless of whether they applied for employment through IPAMS, POMI, or DNR, all Plaintiffs were required to undergo a trade test following their interview to ensure that they possessed the requisite skill and expertise to work as welders, fitters, or other similarly skilled craftsmen in the United States.  Plaintiffs were also required to undergo certain medical tests.

**C. Each Plaintiff Signed An Employment Contract To Perform Work For Grand Isle In The United States**

84.    On information and belief, upon successful completion of the interview

---

the right to amend these allegations after the benefit of discovery.

[10] Plaintiff Baricuatro confirmed that Dayao promised that he would eventually obtain a green card and/or become a United States citizen; Plaintiff Carreon confirmed that Peralta promised him the same; Plaintiff Chumacera confirmed that POMI, V People, Malagapo, and Dayao each promised him the same; Plaintiff Acierto confirmed that V People promised him the same; Plaintiff Franco confirmed that Dayao promised him the same; Plaintiffs Espiritu, F. Garcia, Maligo, Pagayan, and Realin confirmed that Pregeant promised them the same. Plaintiffs reserve the right to amend these allegations after the benefit of discovery.

and trade and medical tests, Plaintiffs were informed by the applicable recruiting agency - IPAMS, POMI, or DNR (f/k/a D&R) - that they were required to complete an interview with the United States Embassy in Manila.  On further information and belief, the applicable recruiting agency provided Plaintiffs with all of the necessary paperwork for their interview with the United States Embassy.  Generally speaking, Defendant DNR (f/k/a D&R) served as the visa sponsor for the IPAMS Plaintiffs and assisted IPAMS in completing and obtaining the requisite paperwork for the IPAMS Plaintiffs' Embassy interview.  On information and belief, V People performed the same function with respect to the POMI Plaintiffs and Defendant POMI until around October 2008.

85.     On information and belief, regardless of whether they applied for employment through IPAMS, POMI, or DNR, all Plaintiffs were nevertheless victims of the same unlawful conduct.  In particular, before the Embassy interview, Plaintiffs were required by the applicable recruiting agency – IPAMS, POMI, or DNR (f/k/a D&R) – to complete and sign an employment contract. On information and belief, Plaintiffs were instructed by IPAMS, POMI, or DNR (f/k/a D&R) to present this contract to the United States Embassy and were assured that presentation of a signed offer of employment to the United States Embassy would assist Plaintiffs' prospects of passing the Embassy interview.

86.     The employment contract was drafted in English.  On information and belief, certain Plaintiffs, being unable to read English proficiently, had questions regarding the terms of the offer of employment.  However, routinely, the only person to whom Plaintiffs could submit inquiries was a secretary at the office of the applicable

recruiting agency, IPAMS, POMI, or DNR (f/k/a D&R).  On information and belief,
Plaintiffs also were rushed by the agency to review the terms of the offer of employment
prior to completing or signing the document.

      87.    On information and belief, despite the questionable circumstances
surrounding Plaintiffs' review and execution of the employment contracts, the contracts
provided to the United States Embassy conformed with earlier assurances made to
Plaintiffs, discussed above, that Plaintiffs would not be charged for housing and living
expenses.  In particular, on information and belief, the contracts provided to the United
States Embassy contained relatively standardized terms regarding, *inter alia*, basic
monthly pay, required hours of work (both hours per day and days per week), overtime
pay, and paid vacation leave.

      88.    For example, on information and belief, when applying to the United
States Embassy for visas for certain Plaintiffs, including, *inter alia*, Plaintiffs Payagan
and Maligo, Defendant DNR's (f/k/a D&R) legal representative at the time, Gary Ilagan
of Ilagen Bachman, P.C. in Houston, Texas, represented to the U.S. Embassy that these
Plaintiffs "**will receive a wage of $1,666.66 per month plus benefits totaling about
$75.00 per day for housing, food, transportation, medical expenses and international
phone calls.**"

      89.    Ultimately, however, notwithstanding the aforementioned assurances and
the employment contracts memorializing these assurances, Defendants Grand Isle, DNR
(f/k/a D&R), and/or  V People: (1) deducted exorbitant expenses from Plaintiffs' wages
for housing and living expenses; (2) deducted substantial expenses from Plaintiffs' wages

for work-related tools and equipment, even those these tools and equipment were retained by, and ultimately benefitted, the companies for whom Plaintiffs performed work; and (3) failed to pay Plaintiffs in accordance with the federal minimum wage rate.  These wage and hour violations are discussed below.[11]

90.     Accordingly, on information and belief, IPAMS, POMI, DNR (f/k/a D&R), V People, and Grand Isle compelled, coerced, deceived, and/or used other deceptive and/or unlawful methods to procure Plaintiffs' signatures on the employment contracts.  As discussed above, Plaintiffs were routinely assured during their recruitment that they would not be charged for housing and living expenses.  Plaintiffs relied on these assurances when they signed their respective employment contracts. Yet, on information and belief, the agencies that made these assurances to Plaintiffs and that entered into contracts memorializing these assurances – IPAMS, POMI, DNR (f/k/a D&R), V People, and Grand Isle – knew full well that, in actuality, Plaintiffs would be charged exorbitant and unreasonable expenses for housing and living accommodations and work-related tools and equipment, and that their wages would at times fall below the federal minimum wage rate.  Thus, Plaintiffs were deceived and/or otherwise fraudulently induced to sign the employment contracts.

91.     Furthermore, as discussed above, when recruiting Plaintiffs, the applicable recruiting agency - IPAMS, POMI, or DNR (f/k/a D&R) - promised certain Plaintiffs that

---

[11] On information and belief, at least one Plaintiff, Ricardo Ramos, was forced by IPAMS to sign not one, but *two*, employment contracts.  The first contract contained terms which authorized the deduction of housing/living expenses from his wages.  By contrast, the second contract was akin to the standardized employment contracts discussed above, and contained no provisions regarding expense deductions.  On information and belief, IPAMS required Plaintiff Ramos to present only the second contract to the United States Embassy, and maintained the first contract for its own internal use.

their temporary work visas would eventually make them eligible for permanent resident status.  *See* note 10 *supra*.  On information and belief, Plaintiffs relied on this promise when they signed the employment contracts.  However, on information and belief, IPAMS, POMI, DNR (f/k/a D&R), V People, and Grand Isle knew full well that Plaintiffs' work visas were merely temporary, and had no correlation to permanent resident status.  Accordingly, Plaintiffs were further deceived and/or otherwise fraudulently induced to sign the employment contracts.

92.    Moreover, on information and belief, Plaintiffs' respective employment contracts were not pre-approved by the Louisiana Workforce Commission as required by law.

**D.  Substandard Housing Arrangements And Exorbitant Living Expenses**

93.    Upon successful completion of the Embassy interview, Plaintiffs were given temporary work visas to enter the United States for the purpose of working for Grand Isle.

94.    Upon arrival in the United States, Plaintiffs were immediately forced into what can only be classified as an exploitative, unlawful, and abusive employment relationship.

95.    Specifically, on information and belief, when Plaintiffs landed in Louisiana, they were picked up at the airport and driven to Grand Isle's property in Galliano, Louisiana.

96.    At the Galliano property, Defendants Grand Isle, DNR (f/k/a D&R), Thunder, Malagapo, and/or Dayao forced Plaintiffs to live in an overcrowded bunkhouse,

a converted bowling alley, which they shared with at least 100 other workers. The bunkhouse was divided into small rooms, each of which contained two sets of bunk beds to sleep four workers. The individual rooms did not contain their own bathrooms; rather, all workers in the bunkhouse shared community bathrooms. Defendants Grand Isle, DNR (f/k/a D&R), Thunder, Malagapo, and/or Dayao gave Plaintiffs no choice but to live in this facility.

97.     Remarkably, despite these living conditions, Defendants Grand Isle, DNR (f/k/a D&R), and/or V People charged Plaintiffs an exorbitant amount per month – often from $2,000 to $3,500 per employee - to live in the cramped, overcrowded bunkhouse. On information and belief, the living expenses deducted from Plaintiffs' wages far exceeded both the actual cost for lodging and the fair rental value of a single bunk bed in a small room in the bunkhouse. As discussed above, on information and belief, Plaintiffs were assured before they signed their employment contracts that they would not be charged for housing and living expenses. Thus, on information and belief, Plaintiffs only learned about these exorbitant charges when they received their first paycheck, after having already begun work in the United States.

98.     Plaintiffs had no say in where they lived or how much they were charged for living expenses. On information and belief, Grand Isle, DNR (f/k/a D&R), and/or V People automatically deducted such expenses from Plaintiffs' respective paychecks each month, absent Plaintiffs' consent. In addition, on information and belief, Defendants Grand Isle, DNR (f/k/a D&R), Thunder, Malagapo, and/or Dayao forbade Plaintiffs from living anywhere except the Galliano bunkhouse, and if Plaintiffs complained about the

40

substandard condition of the bunkhouse or the excessive living expenses deducted from their wages, these Defendants or their representatives threatened to deport them.

99.     Beyond the appalling housing conditions, the Galliano property proved to be essentially a prison. On information and belief, Defendants Grand Isle, DNR (f/k/a D&R), Thunder, Malagapo, and/or Dayao forbade all Plaintiffs from leaving the Galliano property except to go to work or, once per week, to travel to the local Wal-Mart in Grand Isle's vans while supervised by at least one Grand Isle representative. On information and belief, if Plaintiffs attempted to leave for any other purpose, or if Plaintiffs attempted to leave on their own, Defendants Grand Isle, DNR (f/k/a D&R), Thunder, Malagapo, and/or Dayao threatened to deport them.

100.     On information and belief, Defendants Grand Isle, DNR (f/k/a D&R), Thunder, Malagapo, and/or Dayao enforced a strict 10:00 PM curfew for Plaintiffs. After 10:00 PM, Plaintiffs could not leave the Galliano bunkhouse. Security cameras were set up around the bunkhouse to ensure that Plaintiffs could not escape unseen, and the front gate of the Galliano property was locked to ensure that Plaintiffs could not escape. On information and belief, Plaintiffs were barred from leaving the bunkhouse after curfew for any reason, even to smoke a cigarette or to attempt to obtain an internet signal. In effect, then, Defendants Grand Isle, DNR (f/k/a D&R), Thunder, Malagapo, and/or Dayao held Plaintiffs as prisoners in the bunkhouse until it was time to work.

101.     At times, certain Plaintiffs were relocated to Lafitte, Louisiana, where they were forced to live on a barge and subjected to even worse living conditions than in Galliano.

102.    Plaintiffs who were relocated to the barge were forced to live in an approximately 10 foot by 10 foot room, which slept four to six workers.  They were also forced to sleep on racks, rather than actual beds.

103.    Despite these near uninhabitable conditions, Grand Isle, DNR (f/k/a D&R), and/or V People again deducted exorbitant expenses from Plaintiffs' wages, often from $2,000 to $3,500 per month.  On information and belief, the more Plaintiffs earned, the more expenses Grand Isle, DNR (f/k/a D&R), and/or V People deducted from their wages, *i.e.,* for every hour worked, a certain dollar amount was deducted for housing per hour, with no cap as to the amount deducted or to the hours subject to the deduction.

104.    In addition, certain Plaintiffs were occasionally assigned to work and live on offshore oil platforms, in which case the owner of the platform paid for Plaintiffs' living expenses.  On information and belief, this did not stop Grand Isle, DNR (f/k/a D&R), and/or V People (f/k/a D&R) from continuing to automatically deduct living expenses from Plaintiffs' paychecks.

105.    On information and belief, Plaintiffs complained on numerous occasions regarding their substandard living conditions and the exorbitant living expenses they were charged for such substandard living conditions.  These complaints proved futile.  On information and belief, when Plaintiffs complained, Defendants Grand Isle, DNR (f/k/a D&R), Thunder, Malagapo, and/or Dayao, Peralta simply threatened to deport them, creating a culture of fear that forced Plaintiffs to be subservient to the exploitative employment practices forced upon them.

### E.  Disparate Treatment Of Asian Pacific Islander Workers And American Workers

106.    Defendants Grand Isle, DNR (f/k/a D&R), Thunder, Malagapo, and/or Dayao showed preferential treatment in favor of American workers with respect to, *inter alia*, lodging, living conditions, and freedom of movement.

107.    On information and belief, American workers were not required to pay for living expenses or, at best, were charged for living expenses at a rate significantly lower than that charged to Plaintiffs and other Asian Pacific Islander and Filipino workers.

108.    American workers were also given their preference of sleeping accommodations.  On information and belief, if Plaintiffs or other Asian Pacific Islander or Filipino workers were assigned to a bunk that an American worker wanted, the Asian Pacific Islander or Filipino worker was forced to relinquish it.

109.    In addition, on information and belief, American workers were not subject to the same restrictions on freedom of movement that were imposed on Plaintiffs and other Asian Pacific Islander or Filipino workers by Defendants Grand Isle, DNR (f/k/a D&R), Thunder, Malagapo, and Dayao.  On information and belief, American workers, for example, were permitted to have driver's licenses and cars, while Defendants Grand Isle, DNR (f/k/a D&R), Thunder, Malagapo, and/or Dayao prohibited Plaintiffs from obtaining driver's licenses, purchasing or leasing cars, or even riding in cars with American workers.  On further information and belief, American workers were also permitted to leave Grand Isle's housing facilities at will and to consume alcohol during their free time, whereas Plaintiffs and other Asian Pacific Islander or Filipino workers were not.

43

110.    Generally speaking, American workers could leave Defendants Grand Isle's, DNR's (f/k/a D&R), Malagapo's, and/or Dayao's supervision whenever they desired.  Plaintiffs, on the other hand, were required to be escorted or supervised by at least one of these Defendants or their representatives at all times.

**F.  Inadequate Working Conditions And Unlawful Compensation Practices**

111.    Plaintiffs' work conditions were no better than their living conditions. Specifically, on information and belief, Plaintiffs were required to work approximately 12 hours per day, six to seven days per week.  The work schedule was implemented and enforced by Defendants Grand Isle, DNR (f/k/a D&R), Thunder, Malagapo, Dayao, Peralta, and Pregeant.

112.    Despite their hard work, Plaintiffs were not compensated for all of the hours and overtime hours they worked.  For example, Plaintiffs were not compensated for any necessary travel time – the time spent traveling in Grand Isle's vehicles and under Grand Isle's control to and from the job site each day.  In many cases, this travel time exceeded 2-3 hours per day.  Moreover, in at least some cases, Plaintiffs were not compensated for time spent donning, doffing and cleaning required personal protective equipment and tools.[12]

113.    In addition, as set forth above, the living expenses deducted from Plaintiffs' wages were excessive and can by no measure be classified as reasonable.  On

---

[12] That Plaintiffs were not compensated for their time spent donning and doffing and cleaning personal protective equipment and tools was confirmed by the following Plaintiffs: Arcilla, F. Garcia, Gorom, Pagayan, Real, Relota, Carreon, Franco, Maligo, Gannod, Lamoste, Realin, Alagdon, Barroga, Cruzat, Estoesta, Lumanog, Matusalim, Nalzaro, D. Perez, Ramos, and Manuel.  Plaintiffs reserve the right to amend these allegations after the benefit of discovery.

information and belief, these expenses were deducted by Grand Isle, DNR (f/k/a D&R), and V People despite prior assurances to Plaintiffs, discussed above, that housing and living accommodations would be provided free of charge.  That these unreasonable and exorbitant deductions came from Plaintiffs' wages means that Plaintiffs were deprived of adequate compensation.

114.    Grand Isle, DNR (f/k/a D&R), and V People also deducted from certain Plaintiffs' wages expenses for work-related tools and equipment. On information and belief, although certain Plaintiffs were forced to pay for work-related tools and equipment, it was Grand Isle, DNR (f/k/a D&R), and/or V People who ultimately possessed and retained these items.  Because these deductions clearly benefitted the companies for whom Plaintiffs performed work, they violate wage and hour laws.

115.    Furthermore, between 2006 through the present, Grand Isle's, DNR's (f/k/a D&R), and V People's deductions of living expenses and/or expenses for work-related tools and equipment at times caused Plaintiffs' respective hourly wage rates to at times fall below the prevailing minimum wage rate, in violation of applicable wage and hour laws.

### G.  Certain Defendants Fraudulently Submitted Tax Returns For Plaintiffs And Confiscated Monies That Should Have Been Refunded To Plaintiffs

116.    On information and belief, Defendants Dayao, Malagapo, and/or DNR (f/k/a D&R), submitted tax returns on certain Plaintiffs' purported behalf, yet retained the monies that were owed to Plaintiffs as refunds.[13]  This not only negatively impacted

---

[13] That these Defendants filed taxes on behalf of certain Plaintiffs has been confirmed by the following Plaintiffs: Baricuatro, Carreon, Franco, F. Garcia, Gannod, and Maligo.  Plaintiffs reserve the right to amend these allegations after the benefit of discovery.

Plaintiffs' gross pay, but also the amounts that these Defendants should have contributed

to the state and federal taxing authorities in the form of employee payroll taxes.

### H. Certain Defendants Held Hostage Plaintiffs' Passports And Social Security Cards

117.    On information and belief, Plaintiffs returned to the Philippines when their

respective employment contracts and visas expired.  On further information and belief,

upon returning to the Philippines, certain Plaintiffs had their passports confiscated by the

applicable recruiting agency, IPAMS, POMI, or DNR.  Plaintiffs' main source of

livelihood is employment outside of the Philippines, and IPAMS', POMI's, and DNR's

retention of Plaintiffs' passports prevented Plaintiffs from seeking or obtaining

employment elsewhere.  On information and belief, Plaintiffs' passports were generally

not returned to them until the day that they were scheduled to return to the United States

to resume working for Grand Isle.

118.    In addition, on information and belief, while Plaintiffs were in the United

States, Defendants Malagapo, Peralta, and Dayao, individually or through DNR (f/k/a

D&R), and Defendant Pregeant retained certain Plaintiffs' social security cards against

Plaintiffs' will and over Plaintiffs' objections.  These Defendants refused to release the

social security cards until the expiration of Plaintiffs' visas.

### V.    RELEVANT TIME PERIOD

119.    Plaintiffs' claims under the FLSA permit Plaintiffs and members of the

putative class who provide their written consent to join the action to recover unpaid

wages and damages for up to three years prior to the commencement of this lawsuit.

Because Plaintiffs allege willful violations of the FLSA, the minimum two-year statute of

limitations is extended to three years.

120.    Plaintiffs' claims under the Racketeer Influenced and Corrupt

Organization Act ("RICO") are subject to a statute of limitations of four years.

121.    Plaintiffs' claims under the Civil Rights Act of 1866, 42 U.S.C. Section

1981 are subject to a statute of limitations of four years.

122.    Plaintiffs' claims under the Klu Klux Klan Act of 1871, 42 U.S.C. Section

1985 are subject to a statute of limitations of one year.

123.    Pursuant to La. Civ. Code, Article 3492, Plaintiffs' claims for intentional

and negligent infliction of emotional distress, fraudulent/intentional and negligent

misrepresentation, and false imprisonment are subject to a prescriptive period of one

year.

124.    Plaintiffs' breach of contract claim is governed by a ten-year limitations

period.

125.    Accordingly, the allegations set forth herein concern Defendants' unlawful

employment practices and conduct since 2001.

## VI.    CLASS ACTION ALLEGATIONS

126.    Plaintiffs bring this action as to certain Counts as a class action pursuant to

Fed. R. Civ. P. 23 on behalf of themselves and the following classes:

### IPAMS Class

All Filipino E-2 or B-1/OCS foreign nationals who were recruited by
Defendants IPAMS, DNR, and/or D&R, who traveled or were transported
to the United States at any time since November 8, 2001 under the
auspices of E-2 or B-1/OCS visas for the purpose of performing work for
Defendant Grand Isle Shipyard.

<u>POMI Class</u>

All Filipino E-2 or B-1/OCS foreign nationals who were recruited by Defendants POMI and/or V People and who traveled or were transported to the United States at any time since November 8, 2001 under the auspices of E-2 or B-1/OCS visas for the purpose of performing work for Defendant Grand Isle Shipyard.

<u>DNR Class</u>

All Filipino E-2 or B-1/OCS foreign nationals who were recruited exclusively by Defendants DNR and/or D&R and who traveled or were transported to the United States at any time since November 8, 2001 under the auspices of E-2 or B-1/OCS visas for the purpose of performing work for Defendant Grand Isle Shipyard.

127.   The members of the proposed classes are so numerous that joinder of all members is impracticable.

128.   Plaintiffs will fairly and adequately represent and protect the interests of the proposed classes because there is no conflict between the claims of the Plaintiffs and those of the proposed classes, and Plaintiffs' claims are typical of the claims of the proposed class members.  Plaintiffs' counsel are competent and experienced in litigating class actions and other complex litigation matters, including civil rights, employment and wage and hour cases like this one.

129.   There are questions of fact common to the proposed classes, which predominate over any questions affecting only individual members of the proposed classes, including, but not limited to:

a.   Whether Defendants Grand Isle, DNR (f/k/a D&R), Thunder, Malagapo, and Dayao, collectively or individually, threatened to and/or physically restrained Plaintiffs' and other class members' movement and freedom in

order to obtain and maintain Plaintiffs' and other class members' labor or services;

b.   Whether Defendants IPAMS, POMI, DNR (f/k/a D&R), V People, Malagapo, Dayao, Peralta, and Thunder, collectively or individually, recruited, harbored, transported, and/or provided Plaintiffs and other class members to Defendant Grand Isle for the purpose of subjecting them to forced labor and/or involuntary servitude;

c.   Whether Defendants conducted and/or conspired to conduct one or more enterprises through a pattern of racketeering activity;

d.   Whether Defendants, through one or more enterprises, committed and/or agreed to commit the predicate racketeering acts described in Plaintiffs' Second Claim for Relief;

e.   Whether Defendants, collectively or individually, subjected Plaintiffs and other class members to discriminatory terms and conditions of employment based on their national origin and/or alienage;

f.   Whether Defendants conspired for the purpose of depriving Plaintiffs and other class members of their right to be free from involuntary servitude or forced labor;

g.   Whether Defendants IPAMS, POMI, DNR (f/k/a D&R), V People, Dayao, Malagapo, Peralta and Grand Isle, collectively or individually, made fraudulent or negligent misrepresentations to Plaintiffs and other class members in order to secure E-2 or B-1/OCS visas;

49

h.  Whether Defendants Grand Isle, IPAMS, POMI, DNR (f/k/a D&R), V People, and Thunder, collectively or individually, failed to comply with the terms of Plaintiffs' and other class members' employment contracts, and, if so, whether those contracts and legal requirements applicable to the employment of Plaintiffs and other class members.

130.  There are also questions of law common to the proposed classes, which predominate over any questions affecting only individual members of the proposed classes, including, but not limited to:

a.  Whether Defendants' conduct as alleged in the First Claim for Relief constituted trafficking within the meaning of 18 U.S.C. §§ 1589-90, and thus constituted a violation of those provisions;

b.  Whether Defendants' conduct as alleged in the Second Claim for Relief violated RICO Section 1962(c);

c.  Whether Defendants' conduct as alleged in the Third Claim for Relief violated RICO Section 1962(d);

d.  Whether Defendants' conduct as alleged in the Fourth Claim for Relief violated 42 U.S.C. § 1981;

e.  Whether Grand Isle's, DNR's (f/k/a D&R), IPAMS', POMI's, Malagapo's, Dayao's, Peralta's, and Pregeant's conduct as alleged in the Fifth Claim for Relief violated the FLSA;

f.  Whether Defendants' conduct as alleged in the Sixth Claim for Relief violated 42 U.S.C. § 1985(3);

50

g.  Whether Defendants IPAMS', POMI's, DNR's (f/k/a D&R), V People's, Grand Isle's, Malagapo's, Dayao's, and Peralta's collective or individual conduct as alleged in the Seventh Claim for Relief constitutes fraudulent and/or intentional and/or negligent misrepresentation in violation of Louisiana state law;

h.  Whether Defendants Grand Isle's, IPAMS', POMI's, DNR's (f/k/a D&R), V People's, and Thunder's collective or individual conduct as alleged in the Eighth Claim for Relief constitutes breach of contract in violation of Louisiana state law;

i.  Whether Defendants Grand Isle's, IPAMS', POMI's, DNR's (f/k/a D&R), V People's, and Thunder's collective or individual conduct as alleged in the Ninth Claim for Relief constitutes breach of the implied covenant of good faith and fair dealing in violation of Louisiana state law;

j.  Whether Defendants Grand's Isle, DNR's (f/k/a D&R), Thunder's, Malagapo's, and Dayao's, collective or individual conduct as alleged in the Tenth Claim for Relief constitutes false imprisonment in violation of Louisiana state law;

k.  Whether Defendants' conduct as alleged in the Eleventh Claim for Relief was extreme and outrageous;

l.  The nature of the damages available to Plaintiffs and other class members; and

m.  Whether and what kinds of injunctive relief are appropriate.

131.     Plaintiffs' claims are typical of the claims of the proposed classes in the following ways: 1) Plaintiffs are members of the proposed class; 2) Plaintiffs' claims arise out of the same policies, practices and course of conduct that form the basis of the proposed class; 3) Plaintiffs' claims are based on the same legal and remedial theories as those of the proposed class and involve similar factual circumstances; 4) there are no conflicts between the interests of the named Plaintiffs and the class members; and 5) the injuries suffered by the named Plaintiffs are similar to the injuries suffered by the proposed class members.

132.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(2), because Defendants have acted and/or have refused to act on grounds generally applicable to the proposed classes thereby making injunctive relief an appropriate remedy to the proposed classes.  In addition, on information and belief, Defendants continue to engage in the conduct alleged herein thereby threatening current and future violations of potential class members' rights.

133.     Class certification is further appropriate under Fed. R. Civ. P. 23(b)(3), because questions of law and fact common to the class predominate over any questions affecting only individual members of the proposed classes.

134.     Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in

the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The proposed classes are readily identifiable from Defendants' own records. Prosecution of separate actions by individual members of the proposed classes would create the risk of inconsistent or varying adjudications with respect to individual members of the proposed classes that would establish incompatible standards of conduct for Defendants.

135.    A class action is superior to other available methods for adjudication of this controversy because joinder of all members is impractical. Furthermore, the amounts at stake for many of the proposed class members, while substantial, are not great enough to enable them to maintain separate suits against Defendants.

136.    Without a class action, Defendants will likely retain the benefit of their wrongdoing and will continue an illegal course of action, which will result in further damages to Plaintiffs and the proposed class.  Plaintiffs envision no difficulty in the management of this action as a class action.

## VII.    COLLECTIVE ACTION ALLEGATIONS UNDER THE FLSA

137.    This action is also maintainable as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) as to the Fifth Count.  In addition to Plaintiffs, numerous current and former employees are similarly situated to Plaintiffs with regard to this Count in that they have been denied proper compensation, including overtime compensation and payment of the minimum wage, and/or have been subject to improper deductions, at some point during the three years prior to the filing of the Complaint.

138.    Plaintiffs are representative of those other current and former employees and are acting on behalf of their interests as well as Plaintiffs' own interests in bringing this action.

139.    The class that Plaintiffs seek to represent is defined as:

all individuals who are currently employed, or formerly have been employed by Defendants in the United States, under E-2 and/or B-1/OCS visas, since November 8, 2008 (the "Collective Class").

140.    Members of the Collective Class are similarly situated, as they have substantially similar job requirements and provisions and are subject to a set of common practices, policies and/or plans that require or permit them to perform work, in the form of spending time or conducting activities for the benefit of Defendants, which are not compensated pursuant to the FLSA.

141.    Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class. Plaintiffs have retained counsel competent and experienced in complex employment class action and collective action litigation.

142.    Defendants Grand Isle's and DNR's (f/k/a D&R) failure to pay Plaintiffs and the Class their lawful wages was and is willful. These Defendants knew or should have known that their conduct was unlawful and/or showed reckless disregard for the matter of whether their above-described conduct was prohibited by law.

143.    Despite their knowledge that time spent by Plaintiffs and the Class, as described above, was compensable time under both state and federal law, Defendants Grand Isle and DNR (f/k/a D&R) have refused to fully compensate their workers employed in the United States for any of this time.

144.    These similarly situated employees are known to Defendants and are

54

readily identifiable through Defendants' records.  These similarly situated employees

may readily be notified of this action, and allowed to opt into it pursuant to 29 U.S.C. §

216(b), for the purpose of collectively adjudicating their claims for unpaid wages,

overtime compensation,  minimum wage violations, improper deductions, liquidated

damages (or, alternatively, interest), and attorneys' fees and costs under the FLSA.

### FIRST CLAIM FOR RELIEF
**VIOLATION OF THE TRAFFICKING VICTIMS PROTECTION ACT OF 2003
Forced Labor, 18 U.S.C. §§ 1589-90 (trafficking with respect to peonage, slavery, involuntary servitude, or forced labor)
(Brought By All Plaintiffs Against All Defendants)**

145.    Plaintiffs are authorized to bring these civil claims against Defendants

pursuant to the civil remedies provision of the Trafficking Victims Protection

Reauthorization Act of 2003 (TVPA), 18 U.S.C. § 1595.

146.    As set forth in the preceding paragraphs, Plaintiffs allege that Defendants

attempted to and did subject Plaintiffs and other class members to forced labor in

violation of 18 U.S.C. § 1589.  *See* Paragraphs 78-83, *supra*.

147.    Defendants Grand Isle, DNR (f/k/a D&R), Thunder, Malagapo, and/or

Dayao knowingly obtained Plaintiffs' labor by threats of serious harm in violation of 18

U.S.C. § 1589(a)(2).  Under 18 U.S.C. § 1589(c)(2), the term "serious harm" means any

harm, whether physical or nonphysical, including psychological, financial, or reputational

harm, that is sufficiently serious, under all the surrounding circumstances, to compel a

reasonable person of the same background and in the same circumstances to perform or

to continue performing labor or services in order to avoid incurring that harm.

148.    In addition, or in the alternative, Defendants Grand Isle, DNR (f/k/a

D&R), Thunder, Malagapo, and/or Dayao knowingly obtained Plaintiffs' labor by means

of by means of a scheme, plan, or pattern intended to cause Plaintiffs to believe that, if they did not perform such labor or services, they would suffer serious harm in violation of 18 U.S.C. § 1589(a)(3).

149.    The serious harm mentioned in the paragraphs above includes, *inter alia*, constant threats to deport Plaintiffs if they did not continue working for Grand Isle and if they did acquiesce to the exploitative employment practices discussed herein.  A reasonable person of Plaintiffs' background and experience – *i.e.* a foreign national in an unfamiliar country who possesses little money and limited ability to speak, read, or write the native language – would undoubtedly feel compelled to continue working in order to avoid punishment or deportation.  Defendants Grand Isle, DNR (f/k/a D&R), Thunder, Malagapo, and/or Dayao took advantage of this vulnerability by forcing Plaintiffs into slave labor.  *See* Paragraphs 78-83, *supra*.

150.    Moreover, all Defendants knowingly recruited, transported, harbored, provided, and/or obtained Plaintiffs for the purpose of subjecting them to forced labor in violation of 18 U.S.C. § 1589.  This is a violation of 18 U.S.C. § 1590.

151.    In violation of 18 U.S.C. § 1590, and in addition to the violations of 18 U.S.C. § 1589 set forth above, Defendants knowingly recruited, transported, harbored and/or obtained the Plaintiffs and other class members for labor or services in furtherance of Defendants' violations of the following provisions of Title 18, Chapter 77 of the U.S. Code:

      a.   Defendants Grand Isle, DNR (f/k/a D&R), Thunder, Malagapo, and Dayao, collectively or individually, knowingly and willfully held Plaintiffs

in involuntary servitude, as defined by the TVPA, 22 U.S.C. § 7102(5)(a) and (b), violating 18 U.S.C. § 1589;

b.   Defendants IPAMS, POMI, DNR (f/k/a D&R), V People, Malagapo, Dayao and Peralta, collectively or individually, removed, confiscated, or possessed Plaintiffs' and other class members' social security cards and other immigration documents in the course of, or with the intent to violate 18 U.S.C.  §§ 1584, 1589, and 1590, violating 18 U.S.C. § 1592(a); and

c.   Defendants, collectively or individually, attempted to violate 18 U.S.C. §§ 1584, 1589, and 1590.

152.   As a proximate result of these Defendants' conduct, Plaintiffs and other class members have suffered injuries to their persons, businesses, and property, and other damages.

153.   Plaintiffs and other class members are entitled to recover compensatory and punitive damages in an amount to be proven at trial, including attorneys' fees.

**SECOND CLAIM FOR RELIEF**
**VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT**
**ORGANIZATION ACT ("RICO")**
**18 U.S.C. § 1962(c)**
**(Brought By All Plaintiffs Against All Defendants)**

154.   Plaintiffs' Amended RICO Case Statement will be submitted according to the Court's preferences.

155.   Plaintiffs' and other class members' claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-68 ("RICO"), are brought against all Defendants.

156.    Plaintiffs and other foreign workers are "persons" with standing to sue within the meaning of 18 U.S.C. § 1964(c).

157.    Each Defendant is a "RICO person" within the meaning of 18 U.S.C. § 1963(1).

158.    Defendants IPAMS, DNR (f/k/a D&R), Thunder, Dayao, Peralta, Malagapo, Pregeant, and Grand Isle together comprise an association-in-fact. Accordingly, these Defendants are an enterprise (RICO Enterprise I) within the meaning of 18 U.S.C. § 1964(4). *See, e.g.,* Paragraphs 4-5, *supra*.

159.    Defendants POMI, V People, DNR (f/k/a D&R), Thunder, Dayao, Peralta, Malagapo, Pregeant, and Grand Isle together comprise an association-in-fact. Accordingly, these Defendants are an enterprise (RICO Enterprise II) within the meaning of 18 U.S.C. § 1964(4). *See, e.g,* Paragraphs 4-5 *supra*.

160.    The liable Defendants or liable "persons" are separate and distinct entities and/or persons from RICO Enterprises I & II.

161.    Defendants have a separate business purpose to recruit specialized laborers to work for Employer Defendant Grand Isle in order for Grand Isle to fulfill its legitimate contracts with outside entities.

## The RICO Enterprises

### RICO Enterprise I

162.    RICO Enterprise I is an ongoing business relationship between Defendants IPAMS, DNR (f/k/a D&R), Thunder, Dayao, Peralta, Malagapo, Pregeant, and Grand Isle.  The common goal of RICO Enterprise I is to recruit, transport, and provide foreign

58

laborers to work for Grand Isle in the United States, particularly in the State of Louisiana.

163.   RICO Enterprise I is engaged in interstate commerce to the extent that its business activities and transactions involving the international and interstate movement of foreign laborers affect interstate commerce and often require travel and communications across state and international lines.

164.   The members of RICO Enterprise I operate as a continuing unit.

165.   Plaintiffs do not allege that Defendants are employees, officers, or directors of RICO Enterprise I.

166.   Defendants are individuals or entities separate from RICO Enterprise I.

167.   Plaintiffs do not allege that any Defendant is the Enterprise itself.

168.   Defendants IPAMS, DNR (f/k/a D&R), Thunder, Dayao, Peralta, Malagapo, Pregeant, and Grand Isle conducted, participated in, and/or conspired to conduct or participate in the affairs of RICO Enterprise I through a pattern of racketeering activities in violation of 18 U.S.C. § 1962(c).  As set forth in the preceding paragraphs, these Defendants were (and still are) linked by their common goal to recruit, transport, and provide foreign laborers to Grand Isle via the use of fraudulent promises, the deduction of exorbitant living expenses, the practice of forced labor, and/or the practice of trafficking.

169.   Defendants IPAMS, DNR (f/k/a D&R), Thunder, Dayao, Peralta, Malagapo, Pregeant, and Grand Isle conducted, participated in, and/or conspired to conduct or participate in the affairs of RICO Enterprise I by specifically engaging in the following "predicate acts" under 18 U.S.C. § 1961(1):

a. Involuntary servitude in violation of U.S.C. § 1584;

b. Forced labor in violation of 18 U.S.C. § 1589;

c. Trafficking persons with respect to modern day slavery, involuntary servitude, and forced labor in violation of 18 U.S.C. § 1590;

d. Unlawful document-related practices in furtherance of trafficking in violation of 18 U.S.C. § 1592(a); and

e. Immigration document fraud in violation of 18 U.S.C. § 1546.

RICO Enterprise II

170.    RICO Enterprise II is an ongoing business relationship between Defendants POMI, V People, DNR (f/k/a D&R), Thunder, Dayao, Peralta, Malagapo, Pregeant, and Grand Isle.  The common goal of RICO Enterprise II is to recruit, transport, and provide foreign laborers to work for Defendant Grand Isle in the United States, particularly in the State of Louisiana.

171.    RICO Enterprise II is engaged in interstate commerce to the extent that its business activities and transactions involving the international and interstate movement of foreign laborers affect interstate commerce and often require travel and communications across state and international lines.

172.    The members of RICO Enterprise II operate as a continuing unit.

173.    Plaintiffs do not allege that Defendants are employees, officers, or directors of RICO Enterprise II.

174.    Defendants are individuals or entities separate from RICO Enterprise II.

175.    Plaintiffs do not allege that any Defendant is the Enterprise itself.

176.    Defendants POMI, V People, DNR (f/k/a D&R), Thunder, Dayao, Peralta, Malagapo, Pregeant, and Grand Isle conducted, participated in, and/or conspired to conduct or participate in the affairs of RICO Enterprise II through a pattern of racketeering activities in violation of 18 U.S.C. § 1962(c).  As set forth in the preceding paragraphs, these Defendants were (and still are) linked by their common goal to recruit, transport, and provide foreign laborers to Defendant Grand Isle via the use of fraudulent promises, the deduction of exorbitant living expenses, the practice of forced labor, and/or the practice of trafficking.

177.    Defendants POMI, V People, DNR (f/k/a D&R), Thunder, Dayao, Peralta, Malagapo, Pregeant, and Grand Isle conducted, participated in, and/or conspired to conduct or participate in the affairs of RICO Enterprise II by specifically engaging in the following "predicate acts" under 18 U.S.C. § 1961(1):

   a.   Involuntary servitude in violation of U.S.C. § 1584;

   b.   Forced labor in violation of 18 U.S.C. § 1589;

   c.   Trafficking persons with respect to modern day slavery, involuntary servitude, and forced labor in violation of 18 U.S.C. § 1590;

   d.   Unlawful document-related practices in furtherance of trafficking in violation of 18 U.S.C. § 1592(a); and

   e.   Immigration document fraud in violation of 18 U.S.C. § 1546.

## **Predicate Acts**

### Involuntary Servitude: 18 U.S.C. § 1584

178.    Defendants, through RICO Enterprises I and II, intentionally committed

and/or conspired to commit multiple predicate acts of enticement into modern-day slavery in violation of 18 U.S.C. § 1584 (during the time period from 2006 until the present).  *See, e.g.,* Paragraphs 78-117, *supra*.

Forced Labor: 18 U.S.C. § 1589

179.    Defendants, through RICO Enterprises I and II, intentionally committed and/or conspired to commit multiple predicate acts of enticement into modern-day slavery in violation of 18 U.S.C. § 1583 (during the time period from 2006 until the present).  *See* Paragraphs 78-117, *supra*.

Trafficking for the Purposes of Forced Labor and/or<br/>Involuntary Servitude: 18 U.S.C. § 1590

180.    As set forth in the preceding paragraphs, Defendants, through RICO Enterprises I and II, intentionally committed and/or conspired to commit multiple predicate acts of trafficking for the purposes of forced labor and/or involuntary servitude in violation of 18 U.S.C. § 1590 (during the time period from 2006 until the present). *See* Paragraphs 78-117, *supra*.

Document Servitude

181.    Defendants, through RICO Enterprises I and II, intentionally committed and/or conspired to commit multiple predicate acts of document servitude in violation of 18 U.S.C. § 1592.  (during the time period from 2006 until the present). *See* Paragraph 117, *supra*.

**Repeated Racketeering Acts**

182.    Beginning in at least 2006 and continuing through the present, Defendants have repeatedly engaged in the racketeering activity described in this Claim.

183.    On information and belief, the RICO Enterprises described above are currently seeking new Filipino B-1/OCS and E-2 workers for employment with Defendant Grand Isle.  These new laborers may be subjected to similar racketeering activities.

184.    On information and belief, the racketeering activity committed by Defendants, though the RICO Enterprises, continues to this day.  Defendants remain engaged in activities to fraudulently recruit workers in the Philippines and then later exploit them in the United States.

185.    The racketeering activities described in this Second Amended Complaint are part of Defendants' regular business activities.

186.    Defendants' racketeering acts have a common purpose: to profit from the recruitment and eventual forced labor of Plaintiffs and other class members, and to recruit, transport, provide, and maintain a submissive and subservient Filipino B-1/OCS and E-2 guest-worker labor force for Defendant Grand Isle.

187.    Defendants' acts have caused similar injuries to Plaintiffs and other class members, including, *inter alia*: lost work opportunities, lost or unpaid wages, and additional legal fees.

188.    As set forth in the preceding paragraphs, the racketeering acts have similar participants, namely Defendants IPAMS, POMI, DNR (f/k/a D&R), Thunder, Dayao, Peralta, Malagapo, V People, Pregeant, and Grand Isle.

189.    As set forth in the preceding paragraphs, Defendants, through the RICO Enterprises, directed their racketeering activities at similar victims, namely Filipino

workers who contacted IPAMS, POMI, and/or DNR in search of work visas, economic opportunity, and stable employment in the United States.

190.    Defendants' acts also have similar methods of commission, including, for example, common recruitment tactics and the use of similar employment practices and policies with respect to Plaintiffs and other class members.

### Benefits Received by the Enterprise from the Alleged Pattern of Racketeering Activity

191.    The racketeering activity benefited the RICO Enterprises because each group of Defendants had a financial stake in the perpetration and perpetuation of the scheme.  Grand Isle received the benefit of specialized laborers who worked a minimum of 10 hours, six to seven days per week, at illegally low wages; DNR (f/k/a D&R) and V People benefited, *inter alia*,  from contracts to provide such low cost labor to Grand Isle; IPAMS, POMI, V People  and DNR (f/ka D&R) benefited from contracts to continually recruit more low cost laborers to fulfill the Placement Agents' contracts with Grand Isle; and, Dayao, Malagapo, Peralta and Pregeant benefited, *inter alia*, from their ownership interests in certain Defendant companies that also perpetrated and perpetuated the human-trafficking scheme.

### Injury

192.    As a direct and proximate result of Defendants' intentional acts discussed in this section, Plaintiffs and other class members have suffered injuries including, *inter alia*, lost and unpaid wages, lost employment opportunities, and other losses to real or personal property.

193.    Plaintiffs and other class members are therefore entitled to an award of

damages in an amount to be determined at trial, including treble damages and attorneys' fees and costs associated with this action.

## THIRD CLAIM FOR RELIEF
### VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT ("RICO")
### 18 U.S.C. § 1962(d)
### (Brought By All Plaintiffs Against All Defendants)

194.    Plaintiffs' and other class members' claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-68 ("RICO"), are brought against all Defendants.

195.    Plaintiffs' and other foreign workers are "persons" with standing to sue within the meaning of 18 U.S.C. § 1964(c).

196.    Each Defendant is a "RICO person" within the meaning of 18 U.S.C. § 1963(1).

197.    Defendants IPAMS, DNR (f/k/a D&R), Thunder, Dayao, Peralta, Malagapo, Pregeant, and Grand Isle together comprise an association-in-fact. Accordingly, these Defendants are an enterprise (RICO Enterprise I) within the meaning of 18 U.S.C. § 1964(4).

198.    Defendants POMI, V People, DNR (f/k/a D&R), Thunder, Dayao, Peralta, Malagapo, Pregeant, and Grand Isle together comprise an association-in-fact. Accordingly, these Defendants are an enterprise (RICO Enterprise II) within the meaning of 18 U.S.C. § 1964(4). *See, e.g.,* Paragraphs 4-5 *supra.*

199.    The liable Defendants or liable "persons" are separate and distinct entities and/or persons from RICO Enterprises I & II.

65

200.    Defendants have a separate business purpose to recruit specialized laborers to work for Employer Defendant Grand Isle in order for Grand Isle to fulfill its legitimate contracts with outside entities.

## **The RICO Enterprises**

### RICO Enterprise I

201.    RICO Enterprise I is an ongoing business relationship between Defendants IPAMS, DNR (f/k/a D&R), Thunder, Dayao, Peralta, Malagapo, Pregeant, and Grand Isle.  The common goal of RICO Enterprise I is to recruit, transport, and provide foreign laborers to work for Defendant Grand Isle in the United States, particularly in the State of Louisiana.

202.    RICO Enterprise I is engaged in interstate commerce to the extent that its business activities and transactions involving the international and interstate movement of foreign laborers affect interstate commerce and often require travel and communications across state and international lines.

203.    The members of RICO Enterprise I operate as a continuing unit.

204.    Plaintiffs do not allege that Defendants are employees, officers, or directors of RICO Enterprise I.

205.    Defendants are individuals or entities separate from RICO Enterprise I.

206.    Plaintiffs do not allege that any Defendant is the Enterprise itself.

207.    Defendants IPAMS, DNR (f/k/a D&R), Thunder, Dayao, Peralta, Malagapo, Pregeant, and Grand Isle conducted, participated in, and/or conspired to conduct or participate in the affairs of RICO Enterprise I through a pattern of

66

racketeering activities in violation of 18 U.S.C. § 1962(d).  As set forth in the preceding paragraphs, these Defendants were (and still are) linked by their common goal to recruit, transport, and provide foreign laborers to Defendant Grand Isle via the use of fraudulent promises, the deduction of exorbitant living expenses, the practice of forced labor, and/or the practice of trafficking.

208.     Defendants IPAMS, DNR (f/k/a D&R), Thunder, Dayao, Peralta, Malagapo, Pregeant, and Grand Isle conducted, participated in, and/or conspired to conduct or participate in the affairs of RICO Enterprise I by specifically engaging in the following "predicate acts" under 18 U.S.C. § 1961(1):

    a.   Involuntary servitude in violation of U.S.C. § 1584;

    b.   Forced labor in violation of 18 U.S.C. § 1589;

    c.   Trafficking persons with respect to modern day slavery, involuntary servitude, and forced labor in violation of 18 U.S.C. § 1590;

    d.   Unlawful document-related practices in furtherance of trafficking in violation of 18 U.S.C. § 1592(a); and

    e.   Immigration document fraud in violation of 18 U.S.C. § 1546.

RICO Enterprise II

209.     RICO Enterprise II is an ongoing business relationship between Defendants POMI, V People, DNR (f/k/a D&R), Thunder, Dayao, Peralta, Malagapo, Pregeant, and Grand Isle.  The common goal of RICO Enterprise II is to recruit, transport, and provide foreign laborers to work for Defendant Grand Isle in the United States, particularly in the State of Louisiana.

67

210. RICO Enterprise II is engaged in interstate commerce to the extent that its business activities and transactions involving the international and interstate movement of foreign laborers affect interstate commerce and often require travel and communications across state and international lines.

211. The members of RICO Enterprise II operate as a continuing unit.

212. Plaintiffs do not allege that Defendants are employees, officers, or directors of RICO Enterprise II.

213. Defendants are individuals or entities separate from RICO Enterprise II.

214. Plaintiffs do not allege that any Defendant is the Enterprise itself.

215. Defendants POMI, V People, DNR (f/k/a D&R), Thunder, Dayao, Peralta, Malagapo, Pregeant, and Grand Isle conducted, participated in, and/or conspired to conduct or participate in the affairs of RICO Enterprise II through a pattern of racketeering activities in violation of 18 U.S.C. § 1962(d).  As set forth in the preceding paragraphs, these Defendants were (and still are) linked by their common goal to recruit, transport, and provide foreign laborers to Defendant Grand Isle via the use of fraudulent promises, the deduction of exorbitant living expenses, the practice of forced labor, and/or the practice of trafficking.

216. Defendants POMI, V People, DNR (f/k/a D&R), Thunder, Dayao, Peralta, Malagapo, Pregeant, and Grand Isle conducted, participated in, and/or conspired to conduct or participate in the affairs of RICO Enterprise II by specifically engaging in the following "predicate acts" under 18 U.S.C. § 1961(1):

    a.   Involuntary servitude in violation of U.S.C. § 1584;

b.   Forced labor in violation of 18 U.S.C. § 1589;

c.   Trafficking persons with respect to modern day slavery, involuntary servitude, and forced labor in violation of 18 U.S.C. § 1590;

d.   Unlawful document-related practices in furtherance of trafficking in violation of 18 U.S.C. § 1592(a); and

e.   Immigration document fraud in violation of 18 U.S.C. § 1546.

## **Predicate Acts**

### Involuntary Servitude: 18 U.S.C. § 1584

217.   Defendants, through RICO Enterprises I and II, intentionally committed and/or conspired to commit multiple predicate acts of enticement into modern-day slavery in violation of 18 U.S.C. § 1584 (during the time period from 2006 until the present).  *See, e.g.,* Paragraphs 78-117, *supra*.

### Forced Labor: 18 U.S.C. § 1589

218.   Defendants, through RICO Enterprises I and II, intentionally committed and/or conspired to commit multiple predicate acts of enticement into modern-day slavery in violation of 18 U.S.C. § 1583 (during the time period from 2006 until the present). *See, e.g.,* Paragraphs 78-117, *supra*.

### Trafficking for the Purposes of Forced Labor and/or Involuntary Servitude: 18 U.S.C. § 1590

219.   As set forth in the preceding paragraphs, Defendants, through RICO Enterprises I and II, intentionally committed and/or conspired to commit multiple predicate acts of trafficking for the purposes of forced labor and/or involuntary servitude in violation of 18 U.S.C. § 1590 (during the time period from 2006 until the present). *See*

69

Paragraphs 78-117, *supra*.

Document Servitude

220.     Defendants, through RICO Enterprises I and II, intentionally committed and/or conspired to commit multiple predicate acts of document servitude in violation of 18 U.S.C. § 1592 (during the time period from 2006 until the present).  *See* Paragraph 117, *supra*.

**Repeated Racketeering Acts**

221.     Beginning in at least 2006 and continuing through the present, Defendants have repeatedly engaged in the racketeering activity described in this Claim.

222.     On information and belief, the RICO Enterprises described above are currently seeking new Filipino B-1/OCS and E-2 workers for employment with Defendant Grand Isle.  These new laborers may be subjected to similar racketeering activities.

223.     On information and belief, the racketeering activity committed by Defendants, though the RICO Enterprises, continues to this day.  Defendants remain engaged in activities to fraudulently recruit workers in the Philippines and then later exploit them in the United States.

224.     The racketeering activities described in this Second Amended Complaint are part of Defendants' regular business activities.

225.     Defendants' racketeering acts have a common purpose: to profit from the recruitment and eventual forced labor of Plaintiffs and other class members, and to recruit, transport, provide, and maintain a submissive and subservient Filipino B-1/OCS

and E-2 guest-worker labor force for Defendant Grand Isle.

226.    Defendants' acts have caused similar injuries to Plaintiffs and other class members, including, *inter alia*: lost work opportunities, lost or unpaid wages, and additional legal fees.

227.    As set forth in the preceding paragraphs, the racketeering acts have similar participants, namely: Defendants IPAMS, POMI, DNR (f/k/a D&R), Thunder, Dayao, Peralta, Malagapo, V People, Pregeant and Grand Isle.

228.    As set forth in the preceding paragraphs, Defendants, through the RICO Enterprises, directed their racketeering activities at similar victims, namely: Filipino workers who contacted IPAMS and POMI in search of work visas, economic opportunity, and stable employment in the United States.

229.    Defendants' acts also have similar methods of commission, including, for example, common recruitment tactics and the use of similar employment practices and policies with respect to Plaintiffs and other class members.

### Benefits Received by the Enterprise from the Alleged Pattern of Racketeering Activity

230.    The racketeering activity benefited the RICO Enterprises because each group of Defendants had a financial stake in the perpetration and perpetuation of the scheme.  Grand Isle received the benefit of specialized laborers who worked a minimum of 10 hours, six to seven days per week, at illegally low wages; DNR (f/k/a D&R) and V People benefited from contracts to provide such low cost labor to Grand Isle; IPAMS, POMI, V People  and DNR (f/ka D&R) benefited from contracts to continually recruit more low cost laborers to fulfill the Placement Agents' contracts with Grand Isle; and,

Dayao, Malagapo,  Peralta, and Pregeant benefited, *inter alia*, from their ownership interests in certain Defendant companies that also perpetrated and perpetuated the human-trafficking scheme.

## Injury

231.    As a direct and proximate result of Defendants' intentional acts discussed in this section, Plaintiffs and other class members have suffered injuries including, *inter alia*: lost and unpaid wages, lost employment opportunities, and other losses to real or personal property.

232.    Plaintiffs and other class members are therefore entitled to an award of damages in an amount to be determined at trial, including treble damages and attorneys' fees and costs associated with this action.

## FOURTH CLAIM FOR RELIEF
### VIOLATION OF THE CIVIL RIGHTS ACT OF 1866
### 42 U.S.C. § 1981
### (Brought By All Plaintiffs Against All Defendants)

233.    Plaintiffs assert this claim pursuant to 42 U.S.C. § 1981 for injunctive relief, declaratory relief, and damages against Defendants.

234.    The actions of Defendants, as set forth herein, violated Plaintiffs' and class members' rights to receive full and equal benefit from non-discriminatory employment relationships with Defendants.

235.    Specifically, as set forth in the preceding paragraphs, Defendants Grand Isle, DNR (f/k/a D&R), Thunder, Malagapo, and/or  Dayao, subjected Plaintiffs and class members to discriminatory and offensive conduct, including, but not limited to, limitations on their freedom and mandatory room and board arrangements at Grand Isle's

labor camps.  *See* Paragraphs 106-110, *supra*.

236.    These Defendants did not subject their non-Filipino, non-Asian Pacific Islander, and/or U.S. citizen employees to the same or similar conduct.  *See* Paragraphs 106-110, *supra*.

237.    As set forth in the preceding paragraphs, Defendants IPAMS, POMI, DNR (D&R), V People, Grand Isle, DNR (f/k/a D&R), Thunder, Malagapo, Dayao, Peralta, and Pregeant also imposed discriminatory job-related requirements and adverse terms and conditions of employment to which non-Filipino, non-Asian Pacific Islander, and/or U.S. citizen employees were not similarly subject.  *See* Paragraphs 106-110, *supra*.

238.    As set forth in the proceeding paragraphs, through the actions and statements of its personnel referring to and/or directed at Plaintiffs and other class members, Defendants Grand Isle, DNR (f/k/a D&R), Thunder, Malagapo, Dayao, and Pregeant maintained an objectively hostile and abusive work environment on account of Plaintiffs' and other class members' Asian Pacific Islander race, ancestry, and/or ethnicity.  *See* Paragraphs 106-110, *supra*.

239.    As set forth in the preceding paragraphs, Defendants' discriminatory and offensive treatment of  Plaintiffs and other class members was sufficiently  severe that it created a hostile work environment in violation of 42 U.S.C. § 1981.  *See* Paragraphs 106-110, *supra*.

240.    Plaintiffs and other class members reasonably perceived their work environment to be hostile, abusive, and discriminatory on the basis of their Asian Pacific Islander race, ancestry, and/or ethnicity.  *See* Paragraphs 106-110, *supra*.

241.    Defendants' hostile, abusive, and discriminatory treatment of Plaintiffs and other class members was unwelcome.

242.    Defendants knowingly, willfully, maliciously, intentionally, and without justification, acted to deprive Plaintiffs and other class members of their rights.

243.    As a result of Defendants' unlawful acts, Plaintiffs and other class members have suffered injury to their property and/or persons.

244.    Plaintiffs seek all appropriate relief, including declaratory and injunctive relief, attorneys' fees, costs of this action, damages, including compensatory and punitive damages, in an amount to be determined at trial.

**FIFTH CLAIM FOR RELIEF**
**VIOLATIONS OF THE FAIR LABOR STANDARDS ACT**
**29 U.S.C. §§ 203(m), 206, 207; 29 C.F.R. §§ 531.3, 531.35**
**(Brought By Plaintiffs Baricuatro, Franco, Gannod, F. Garcia, Gorom, Maligo, Payagan, Realin, Relota, Acierto, Ramos, Lamoste, Real, Alagdon, Cabuenas, Cuyag, Espiritu, Estoesta, Guevarra, Matusalin, Nalzaro, and Perez Against Grand Isle, DNR (f/k/a D&R), IPAMS, POMI, Malagapo, Dayao, Peralta, and Pregeant )**

245.    Plaintiffs assert this claim for damages pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA").

246.    As a threshold matter, Plaintiffs are informed, believe, and thereon allege that Grand Isle, DNR (f/k/a D&R), IPAMS, POMI, Malagapo, Dayao, Peralta, and Pregeant are employers and/or joint employers of Plaintiffs and the Collective Class pursuant to 29 U.S.C. § 203(d).  In particular, on information and belief, each Defendant in this case employs certain Plaintiffs' by virtue of Plaintiffs' respective employment contracts, and/or by virtue of: (1) possessing the power to hire and fire Plaintiffs; (2) supervising and controlling Plaintiffs' work schedules or conditions of employment; (3) determining the rate and method of payment of Plaintiffs' wages; and/or (4) maintaining

74

employment records relating to Plaintiffs. *Gray v. Powers*, 673 F.3d 352, 354-55 (5th Cir. 2012).

247.    As set forth in the preceding paragraphs, Defendants Grand Isle and DNR (f/k/a D&R) violated 29 U.S.C. § 203(m) by deducting excessive and unreasonable costs for living expenses and for tools and equipment from Plaintiffs' wages. *See, e.g.,* note 3 at Page 7; *see also, e.g.,* note 9 at Page 34; Paragraphs 93-105, *supra*. Grand Isle and DNR (f/k/a D&R) profited from such deductions. For example, Grand Isle, and DNR (f/k/a D&R) often deducted up to $2,000 to $3,500 per month from Plaintiffs' wages for living expenses, even though this exorbitant amount far exceeded the actual cost, or even the fair market value, of such expenses. *See* Paragraphs 93-105, *supra*. Grand Isle and DNR (f/k/a D&R) also charged Plaintiffs for the cost of work-related tools and equipment, even though these Defendants ultimately retained, and clearly benefitted from, these work-related tools and equipment. *See* Paragraphs 93-105, *supra*.

248.    In addition, or in the alternative, Defendants Grand Isle and DNR (f/k/a D&R) violated 29 U.S.C. § 206 by deducting costs for living expenses and for tools and equipment from Plaintiffs' wages so as to cause Plaintiffs' wages to at times fall below the federally mandated minimum wage rate. *See* Paragraphs 111-115, *supra*.

249.    In addition, or in the alternative, Defendants Grand Isle and DNR (f/k/a D&R) violated 29 U.S.C. § 207 by failing to compensate Plaintiffs for all hours worked, and by knowingly failing to compensate Plaintiffs at a rate of one and one-half times their regular hourly wage for hours worked in excess of 40 hours per week in violation of 29 U.S.C. § 207(a)(1). Defendants Grand Isle and DNR (f/k/a D&R), for example, did not

compensate Plaintiffs for travel time (*i.e.*, the time they were required to spend traveling to and from Defendants' job sites each day) even though Plaintiffs were required to perform certain work tasks before this travel time. *See* Paragraphs 111-115, *supra*. Defendants Grand Isle and DNR (f/k/a D&R) also did not compensate Plaintiffs for any time spent donning, doffing, and cleaning required protective equipment and tools. *See*, *e.g.,* note 12 at Page 44, *supra*.

250.    As alleged above, Defendants IPAMS, Thunder, Dayao, Malagapo, Peralta, and Pregeant each employed and/or jointly employed Plaintiffs during the relevant time period.  Even to the extent these Defendants did not personally control the payment of Plaintiffs' wages and expense deductions, they are nevertheless liable as Plaintiffs' employers and/or joint employers for the aforementioned violations of the FLSA.

251.    Defendants' violations of the FLSA were willful.

252.    As a consequence of Defendants' FLSA violations, Defendants are liable to Plaintiffs and all other similarly situated employees under 29 U.S.C. § 216(b) for any unpaid wages and unpaid overtime compensation, plus an additional equal amount as liquidated damages, court costs, reasonable attorneys' fees and expenses, and any other relief deemed appropriate by the Court.

### SIXTH CLAIM FOR RELIEF
### VIOLATION OF THE KLU KLUX KLAN ACT OF 1871
### 42 U.S.C. § 1985, the Thirteenth Amendment, and the Constitutional Right to Travel
### (Brought By All Plaintiffs Against All Defendants)

253.    Plaintiffs assert this claim against Defendants pursuant to 42 U.S.C. §

1985(3) for injunctive relief, declaratory relief, and damages.

254.     As set forth in the preceding paragraphs, Defendants conspired, agreed, planned, and coordinated for the purpose of depriving Plaintiffs equal protection of their rights under the Thirteenth Amendment to the United States Constitution and its implementing and enforcing statutes (including, *inter alia*, 18 U.S.C. §§ 1589-90) to be free from forced labor and trafficking in persons and to exercise their Constitutional right to travel.

255.     As set forth in the preceding paragraphs, Defendants acted in furtherance of their conspiracy for the purpose of depriving Plaintiffs of equal protection of their rights under the Thirteenth Amendment to the United States Constitution and its implementing and enforcing statues (*inter alia* 18 U.S.C. §§ 1589-90) to be free from trafficking in persons and to exercise their Constitutional right to travel.  *See* Paragraphs 78-115, *supra*.

256.     Defendants were motivated by racial, anti-Filipino, anti-Asian Pacific Islander, and/or anti-immigrant animus when they conspired to deprive Plaintiffs of their rights and/or acted in furtherance of a conspiracy to deprive Plaintiffs of their rights.  *See* Paragraphs 106-110, *supra*.

257.     Defendants knowingly, willfully, maliciously, intentionally, and without justification, planned and acted to deprive the Plaintiffs of their rights.  *See* Paragraphs 78-115, *supra*.

258.     As a result of Defendants' unlawful acts, Plaintiffs and other class members have suffered injury.

259.     Plaintiffs seek all appropriate relief, including declaratory and injunctive relief, attorneys' fees, costs of this action, and damages, including compensatory and punitive damages, in an amount to be determined at trial.

### SEVENTH CLAIM FOR RELIEF
### INTENTIONAL/FRAUDULENT AND/OR NEGLIGENT MISREPRESENTATION
### La. Civ. Code, Article 1953.
### (Brought By Plaintiffs Baricuatro, F. Garcia, Realin, Ramos, Lamoste, Real, Alagdon, Cabuenas, Cuyag, Espiritu, Guevarra, and Nalzaro Against Defendants IPAMS, POMI, DNR (f/k/a D&R), V People, Grand Isle, Malagapo, Dayao, and Peralta)

260.     Plaintiffs' claim for negligent misrepresentation is pursued only against those Defendants, if any, who are determined to not be Plaintiffs' employers.

261.     Louisiana law defines fraud as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other."  La. Civ. Code, Article 1953.

262.     To prevail on a fraud claim under Louisiana law, a plaintiff must demonstrate: (1) a misrepresentation, suppression, or omission of true information; (2) the intent to obtain an unjust advantage or to cause damage or inconvenience to another; and (3) the error induced by a fraudulent act must relate to a circumstance substantially influencing the victim's consent to (a cause of) the contract.

263.     As set forth in the preceding paragraphs, on information and belief, Defendants IPAMS, POMI, DNR (f/k/a D&R), V People, Grand Isle, Malagapo, Dayao, and Peralta, individually and/or through their agents, employees, and/or representatives, knowingly or negligently made materially false and untrue statements and representations to Plaintiffs and other class members regarding the nature, terms, and conditions of their

78

contract for immigration-based employment in the United States.  *See* Paragraphs 84-92, *supra*.

264.    On information and belief, these Defendants also knowingly or negligently failed to disclose material facts to Plaintiffs and other class members regarding the nature, terms, and conditions of their contract for immigration-based employment in the United States.   *See* Paragraphs 84-92, *supra*.

265.    Specifically, on information and belief, when recruiting Plaintiffs and when contracting for Plaintiffs' employment, Defendants IPAMS, POMI, DNR (f/k/a D&R), Malagapo, Dayao, and Peralta promised certain Plaintiffs that: (1) their employer(s) in the United States would provide them with adequate living arrangements, including food and housing free of charge;[14] and (2) they would eventually be sponsored for green cards or permanent residency.[15]   Many of Plaintiffs' employment contracts also contained assurances regarding, *inter alia*, basic monthly salary, required hours of work (both hours per day and days per week), overtime pay, and vacation leave with pay.  *See* Paragraphs 84-92, *supra*.

---

[14] Plaintiffs Acierto, Matusalim, and Cruzat confirmed that V People assured them that their living expenses would be paid by his employers; Plaintiff Baricuatro confirmed that Dayao told him the same; Plaintiff Cabuenas confirmed that POMI and V People assured him of the same; Plaintiff Cuyag  confirmed that POMI assured him of the same; Plaintiff Villa comfirmed that IPAMS and DNR (f/k/a D&R) assured him of the same; and Plaintiff Nalzaro confirmed that DNR (f/k/a D&R) assured him of the same). Plaintiffs reserve the right to amend this allegation after the benefit of discovery.

[15] Plaintiff Baricuatro confirmed that Dayao promised that he would eventually obtain a green card and/or become a United States citizen; Plaintiff Carreon confirmed that Defendant Peralta promised him the same; Plaintiff Chumacera confirmed that POMI, V People, Malagapo, and Dayao each promised him the same; Plaintiff Acierto confirmed that Defendant V People promised him the same; Plaintiff Franco confirmed that Defendant Dayao promised him the same; Plaintiffs Espiritu, F. Garcia, Maligo, Pagayan, and Realin confirmed that Pregeant promised them the same. Plaintiffs reserve the right to amend this allegation after the benefit of discovery.

266.    In reality, however, exorbitant living expenses and tool/equipment expenses were deducted from Plaintiffs' wages.  This as times caused Plaintiffs' wages to fall below those wages called for in their employment contracts and required by federal minimum wage law.  In addition, on information and belief, they were not sponsored by Grand Isle for permanent resident status.

267.    On information and belief, when Defendants IPAMS, POMI, DNR (f/k/a D&R), Malagapo, Dayao, and Peralta made these aforementioned representations to Plaintiffs, they knew that these representations were false.  That is, these Defendants knew that exorbitant expenses would be deducted from Plaintiffs' wages.  On information and belief, these Defendants also knew that such expense deductions would cause Plaintiffs to receive lower wages and overtime compensation than were promised to them in their employment contracts and than were required by federal minimum wage law.  In addition, these Defendants knew that Grand Isle had no intention of sponsoring Plaintiffs for permanent resident status.  *See, e.g.,* note 15 at page 80, *supra.*

268.    Based on these Defendants' false representations, Plaintiffs had every reason to rely, and did rely, on the promises made to them during their recruitment and in their employment contracts.

269.    On information and belief, Defendants IPAMS, POMI, DNR (f/k/a D&R), V People, Grand Isle, Malagapo, Dayao, and Peralta, individually and/or through their agents, employees, and/or representatives, intended that their false statements would induce Plaintiffs and other foreign workers to leave their homes and jobs in their home

countries and travel to the United States to work for Grand Isle.

270.    In reasonable reliance on Defendants IPAMS's, POMI's, DNR's (f/k/a D&R), V People's, Grand Isle's, Malagapo's, Dayao's, and Peralta's false and/or negligent representations, Plaintiffs and other class members entered into employment contracts that required them to leave their families and homes in the Philippines and travel to the United States to work for Grand Isle.

271.    As a direct and proximate result of these Defendants' knowing, willing, intentional, and/or negligent actions, Plaintiffs and other class members have been injured.  An example of injury they suffered is that they were paid at a rate significantly less than the rate of pay these Defendants promised them.

272.    Plaintiffs and other class members are entitled to recover compensatory and punitive damages in an amount to be proven at trial.

## EIGHTH CLAIM FOR RELIEF
### BREACH OF CONTRACT
**(Brought By All Plaintiffs Against Defendants Grand Isle, IPAMS, POMI, DNR (f/k/a D&R), V People, and Thunder)**

273.    In Louisiana, a claim for breach of contract requires proof of the existence of a contract and a breach of that contract by the defendant.

274.    As set forth in the preceding paragraphs, on information and belief, each Plaintiff in this case entered into an employment contract to work for Grand Isle in the United States, in particular in the State of Louisiana.  On information and belief, each of these contracts contained similar, standardized terms regarding, *inter alia*, basic monthly salary, required hours of work (both hours per day and days per week), overtime pay, and vacation leave with pay.  *See* Paragraphs 84-92, *supra*.

275.     In addition, Plaintiffs' employment contracts, which were provided to the United States Embassy, conformed with earlier promises to Plaintiffs, discussed above that housing and accommodations would be provided free of charge.  *See* Paragraphs 84-105, *supra*.

276.     Ultimately, Defendants Grand Isle, IPAMS, POMI, DNR (f/k/a D&R), V People, and Thunder failed to pay Plaintiffs the rates of pay promised to Plaintiffs in their employment contracts and failed to provide Plaintiffs the benefits promised to them.  *See* Paragraphs 111-115, *supra*.  This amounts to a material breach of Plaintiffs' employment contracts.  The expenses deducted from Plaintiffs' wages not only caused Plaintiffs' hourly wage rate and overtime rate to fall substantially below the wage rates expressly called for in the contracts, such deductions also caused Plaintiffs' rates of pay to be less than the mandated minimum wage.

277.     As a result of Defendants Grand Isle's, IPAMS', POMI's, DNR's (f/k/a D&R), V People's, and Thunder's breach, Plaintiffs and other class members have suffered damages.

278.     Plaintiffs and other class members are entitled to recover compensatory damages in an amount to be proven at trial.

**NINTH CLAIM FOR RELIEF**
**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
**La. Civ. Code, Articles 1983 & 1759**
**(Brought By All Plaintiffs Against Defendants Grand Isle, IPAMS, POMI, DNR**
**(f/k/a D&R), V People, and Thunder)**

279.     Louisiana law recognizes an implied covenant of good faith and fair dealing in every contract.  The Louisiana Civil Code requires contracts to "be performed

in good faith."  La. Civ. Code, Article 1983.  Similarly, "[g]ood faith shall govern the

conduct" of the parties to a contract.  La. Civ. Code, Article 1759.  Pursuant to these

provisions, a party to a contract has an implied obligation to put forth a good faith effort

to fulfill the conditions of the contract.  Under Louisiana law, the obligation of good faith

and fair dealing is breached where an agreement is violated with a dishonest or morally

questionable motive.

280.    As set forth in the preceding paragraphs, on information and belief, each

Plaintiff in this case entered into an employment contract to work for Grand Isle in the

United States, in particular in the State of Louisiana.  On information and belief, each of

these contracts contained similar, standardized terms regarding, *inter alia*, basic monthly

salary, required hours of work (both hours per day and days per week), overtime pay, and

vacation leave with pay.  *See* Paragraphs 84-92, *supra*.

281.    In addition, on information and belief, Plaintiffs' employment contracts,

which were provided to the United States Embassy, conformed with earlier promises to

Plaintiffs, discussed above, that housing and accommodations would be provided free of

charge.  That is, the contracts did not contain provisions regarding or authorizing the

deduction expenses from Plaintiffs' wages.  *See* Paragraphs 84-105, *supra*.

282.    Ultimately, Defendants Grand Isle, IPAMS, POMI, DNR (f/k/a D&R), V

People, and Thunder failed to pay Plaintiffs the rates of pay promised to Plaintiffs in their

employment contracts and failed to provide Plaintiffs the benefits promised to them.  *See*

Paragraphs 111-115, *supra*.  This amounts to a material breach of Plaintiffs' employment

contracts.  The expenses deducted from Plaintiffs' wages not only caused Plaintiffs'

hourly wage rate and overtime rate to fall substantially below the wage rates expressly

called for in the contracts, but such deductions also at times caused Plaintiffs' rates of pay

to be less than the mandated minimum wage.  *See* Paragraphs 111-115, *supra*.

283.    The circumstances under which Defendants Grand Isle, IPAMS, POMI,

DNR (f/k/a D&R), V People, and Thunder procured Plaintiffs' signatures on the

aforementioned contracts evidences a dishonest and morally questionable motive by these

Defendants.  *See* Paragraphs 84-92, *supra*; *see also, e.g.,* note 9 at Page 34; note 10 at

Page 35.  Furthermore, these Defendants' breach of the employment contract as described

above is evidence of their bad faith, dishonest, and morally questionable motives.

284.    Plaintiffs and other class members are entitled to recover all damages that

are a direct consequence of Defendants Grand Isle's, IPAMS', POMI's, DNR's (f/k/a

D&R), V People's, and Thunder's breach in an amount to be proven at trial.

## TENTH CLAIM FOR RELIEF
### FALSE IMPRISONMENT
**(Brought By Plaintiffs Baricuatro, F. Garcia, Realin, Ramos, Lamoste, Real,
Alagdon, Cabuenas, Cuyag, Espiritu, Guevarra, and Nalzaro Against Defendants
Grand Isle, DNR (f/k/a D&R), Thunder, Dayao, and Malagapo)**

285.    Plaintiffs bring this claim for damages resulting from being falsely

imprisoned by Defendants Grand Isle, DNR (f/k/a D&R), Thunder, Dayao and Malagapo.

286.    In Louisiana, the tort of false imprisonment requires proof of restraint

without color of legal authority.

287.    On information and belief, Plaintiffs and other class members were subject

to false imprisonment at the hands of Defendants Grand Isle, DNR (f/k/a D&R), Thunder,

Dayao and Malagapo.  Specifically, on information and belief, after 10:00 PM each day,

84

Grand Isle, DNR (f/k/a D&R), Thunder, Dayao and Malagapo intentionally confined Plaintiffs to the Galliano property by locking the door to the bunkhouse and by locking the front gate of the Galliano property.  On information and belief, if Plaintiffs violated the curfew, these Defendants threatened Plaintiffs with deportation.  *See* note 4 at Page 7, *supra*.

288.    In addition, on information and belief, even when the curfew was not in place, Defendants Grand Isle, DNR (f/k/a D&R), Thunder, Dayao and Malagapo refused to allow Plaintiffs to leave their custody.  *See* Paragraphs 93-105, *supra*.  On information and belief, Plaintiffs were only permitted to travel from their living quarters to work, and from work back to their living quarters.  Even then, Plaintiffs were escorted by one of at least one representative of Grand Isle, DNR (f/k/a D&R), Thunder, Dayao and Malagapo so as to prevent Plaintiffs from escaping.  *See* Paragraphs 93-105, *supra*.  On information and belief, approximately once per week, Plaintiffs were permitted to travel to the local Wal-Mart to purchase groceries, clothing, and other items, but only on the condition that they traveled to Wal-Mart in Grand Isle's vans and were escorted by at least one of these Defendants' representatives.  *See* Paragraphs 93-105, *supra*.

289.    On information and belief, if Plaintiffs attempted to escape, or if Plaintiffs questioned why they were not permitted to come and go as they please, Defendants Grand Isle, DNR (f/k/a D&R), Thunder, Dayao and Malagapo threatened to deport them.  *See* Paragraphs 93-105, *supra*.

290.    Defendants Grand Isle, DNR (f/k/a D&R), Thunder, Dayao and Malagapo therefore unlawfully and unreasonably detained Plaintiffs against their will, without their

consent, and without proper legal authority.

291.    Plaintiffs and other class members suffered injury as a result of these Defendants' actions.

292.    Defendants Grand Isle, DNR (f/k/a D&R), Thunder, Dayao and Malagapo are liable to Plaintiffs and other class members for damages, including compensatory and punitive damages.

## ELEVENTH CLAIM FOR RELIEF
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
**(Brought By Plaintiffs Baricuatro, F. Garcia, Realin, Ramos, Lamoste, Real, Alagdon, Cabuenas, Cuyag, Espiritu, Guevarra, and Nalzaro Against All Defendants)**

293.    Plaintiffs bring this claim against Defendants for damages resulting from Defendants' intentional infliction of emotional distress.

294.    To recover for intentional infliction of emotional distress in Louisiana, a plaintiff must establish: (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.

295.    The extreme and outrageous character of the defendant's conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests.  The distress suffered must be such that no reasonable person could be expected to endure it. Liability arises only where the mental suffering or anguish is extreme. Restatement (Second) of Torts, § 46, comments e and j, (1965).

296.    Here, the recruitment of Plaintiffs for the purpose of slavery, involuntary servitude, and/or forced labor, coupled with the false imprisonment of Plaintiffs as described above, rise to the level of extreme and outrageous conduct.  The other intolerable employment and living conditions that Plaintiffs were forced to endure, as described above, similarly rise to the level of extreme and outrageous conduct necessary to support this claim.  *See* Paragraphs 78-117, *supra*.

297.    Plaintiffs' suffered sever emotional distress as a result of Defendants' extreme and outrageous conduct.  While under Defendants' employ, Plaintiffs were in a constant state of trepidation and fear that Defendants would suddenly deport them back to the Philippines.  *See* note 4 at Page 7, *supra*.

298.    Defendants' conduct was intentional, willful, and/or wanton.  Defendants desired to cause Plaintiffs severe emotional distress, as that emotionally distressed state rendered Plaintiffs more subservient to Defendants' exploitative practices.

299.    Defendants are liable to Plaintiffs and other class members for damages, including compensatory and punitive damages.

**TWELFTH CLAIM FOR RELIEF**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**La. Civ. Code, Article 2315**
**(Brought By Plaintiffs Baricuatro, F. Garcia, Realin, Ramos, Lamoste, Real,**
**Alagdon, Cabuenas, Cuyag, Espiritu, Guevarra, and Nalzaro Against All Non-**
**Employer Defendants)**

300.    Plaintiffs bring this claim for damages resulting from Defendants' negligent infliction of emotional distress against those Defendants who are determined to not be employers of Plaintiffs.  Plaintiffs' claim for negligent infliction of emotional distress is pursued only against those Defendants who are determined to not be employers

of Plaintiffs, if any.

301.    The recruitment of Plaintiffs for the purpose of slavery, involuntary servitude and/or forced labor, coupled with the false imprisonment of Plaintiffs as described above, caused Plaintiffs to suffer emotional distress. *See* Paragraphs 78-117, *supra*.

302.    As recruiters of Plaintiffs into the intolerable conditions to which they were subjected, and/or as sponsors for Plaintiffs' visa, and/or as facilitators of employment and/or supervisors of Plaintiffs, the non-employer Defendants had a duty to refrain from the inhumane treatment of Plaintiffs and the abuse and exploitation described above.

303.    By abusing and exploiting Plaintiffs in the ways described above, the non-employer Defendants violated the duties they owed to Plaintiffs. *See* Paragraphs 78-117, *supra*. The non-employer Defendants knew or should have known that the conduct to which they subjected Plaintiffs would have caused Plaintiffs to suffer emotional distress.

304.    The non-employer Defendants' conduct was committed despite the likelihood that Plaintiffs would suffer genuine and serious mental distress and, in fact, Plaintiffs did suffer genuine and serious mental distress as a result of being exploited and abused in the ways described above.

305.    The non-employer Defendants are therefore liable to Plaintiffs and other class members for damages, including compensatory and punitive damages.

## VIII.        PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request the following relief;

a.  Certifying Plaintiffs' claims for Relief in this action as class claims

   pursuant to Rule 23(b)(2) and/or (b)(3) and/or (c)(4) of the Federal Rules

   of Civil Procedure;

b.  Designating the Named Plaintiffs as class representatives pursuant to Fed.

   R. Civ. P. 23, and designating Plaintiffs' counsel as Counsel for the Class;

c.  Conditionally certifying the claims set forth in Plaintiffs' Fourth Claim for

   Relief as a collective action pursuant to 29 U.S.C. § 216(b).

d.  Declaratory and injunctive relief;

e.  Compensatory damages;

f.  Punitive damages;

g.  Treble damages as authorized by RICO, 18 U.S.C. § 1964(c);

h.  Liquidated damages as authorized by the FLSA;

i.  An award of prevailing party costs, including attorney fees, as provided by

   law;

j.  Interest;

k.  Such relief as the Court deems just and appropriate.

                            Respectfully submitted,

                             /s/  Joseph C. Peiffer
                            Joseph C. Peiffer (LA Bar No. 26459)
                            Loretta G. Mince (LA Bar No. 25796)
                            Alysson L. Mills (LA Bar No. 32904)
                            Jeanette A. Donnelly (LA Bar No. 33806)
                            FISHMAN HAYGOOD PHELPS
                            WALMSLEY WILLIS & SWANSON,
                            L.L.P.
                            201 St. Charles Avenue, Suite 4600
                            New Orleans, Louisiana 70170

Telephone: (504) 586-5252
Facsimile: (504) 586-5250
jpeiffer@fishmanhaygood.com
lmince@fishmanhaygood.com
amills@fishmanhaygood.com
jdonnelly@fishmanhaygood.com

Todd M. Schneider (*pro hac vice*)
Carolyn H. Cottrell (*pro hac vice*)
Peter B. Schneider (*pro hac vice*)
Lee B. Szor (*pro hac vice*)
SCHNEIDER WALLACE
COTTRELL BRAYTON KONECKY LLP
180 Montgomery Street, Suite 2000
San Francisco, California 94104
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
tschneider@schneiderwallace.com
ccottrell@schneiderwallace.com
pschneider@schneiderwallace.com
lszor@schneiderwallace.com

Ellaine A. Carr (*pro hac vice*)
ELLAINE CARR & ASSOCIATES, PLLC
2434 Pass Road, Suite A
Biloxi, Mississippi 39531
Telephone: (228) 273-4410
Facsimile: (866) 929-9201
ecarr@ellaineecarrlaw.com

*Attorneys for Plaintiffs*

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury as to all claims so triable.

Respectfully submitted,

  /s/  Joseph C. Peiffer
Joseph C. Peiffer (LA Bar No. 26459)
Loretta G. Mince (LA Bar No. 25796)
Alysson L. Mills (LA Bar No. 32904)
Jeanette A. Donnelly (LA Bar No. 33806)
FISHMAN HAYGOOD PHELPS
WALMSLEY WILLIS & SWANSON,
L.L.P.
201 St. Charles Avenue, Suite 4600
New Orleans, Louisiana 70170
Telephone: (504) 586-5252
Facsimile: (504) 586-5250
jpeiffer@fishmanhaygood.com
lmince@fishmanhaygood.com
amills@fishmanhaygood.com
jdonnelly@fishmanhaygood.com

Todd M. Schneider (*pro hac vice*)
Carolyn H. Cottrell (*pro hac vice*)
Peter B. Schneider (*pro hac vice*)
Lee B. Szor (*pro hac vice*)
SCHNEIDER WALLACE
COTTRELL BRAYTON KONECKY LLP
180 Montgomery Street, Suite 2000
San Francisco, California 94104
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
tschneider@schneiderwallace.com
ccottrell@schneiderwallace.com
pschneider@schneiderwallace.com
lszor@schneiderwallace.com

Ellaine A. Carr (*pro hac vice*)
ELLAINE CARR & ASSOCIATES, PLLC
2434 Pass Road, Suite A
Biloxi, Mississippi 39531
Telephone: (228) 273-4410
Facsimile: (866) 929-9201
ecarr@ellaineecarrlaw.com

*Attorneys for Plaintiffs*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on September 7, 2012, I electronically filed the foregoing Second Amended Class and Collective Action Complaint with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants.

  /s Joseph C. Peiffer