UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ISIDRO BARICUATRO, ET AL | CIVIL ACTION |
| VERSUS | NO. 11-2777 |
| INDUSTRIAL PERSONNEL AND<br>MANAGEMENT SERVICES, INC., ET AL | SECTION "N" (2) |

**ORDER AND REASONS**

Before the Court is the "Plaintiffs' Motion to Proceed as a Collective Action and Facilitate Notice under 19 U.S.C. § 216(b)" (Rec. Doc. 136). The defendants have filed opposition memoranda. *See* Rec. Docs. 186, 188; *see also* Rec. Docs. 189 and 208 (adopting opposition memoranda filed by co-defendants). Plaintiffs have filed reply memoranda. *See* Rec. Docs. 204, 206.

**I. BACKGROUND:**

The plaintiffs are Filipino workers (including welders and pipe fitters) who allege that they were fraudulently recruited in the Philippines, given E-2 or B-1/OCS visas, and then brought to Louisiana, where they were exploited in the oil and gas industry and housed in deplorable conditions. The plaintiffs allege that the defendants: (1) subjected them to forced labor in violation of the Trafficking Victims Protection Act of 2003 (18 U.S.C. §§ 1589-90); (2) violated the Racketeer Influenced and Corrupt Organization Act ("RICO") (18 U.S.C. §§ 1961-68); (3) violated the plaintiffs' civil rights (42 U.S.C. § 1981); (4) violated the Fair Labor Standards Act ("FLSA") (19 U.S.C. §§ 203(m), 206 & 207); (5) violated the Klu Klux Klan Act

of 1871 (42 U.S.C. § 1985) and the Thirteenth Amendment; (6) committed the torts of fraud, negligent misrepresentation, false imprisonment, and intentional and negligent infliction of emotional distress under Louisiana law; and (7) breached contracts and/or covenants of good faith and fair dealing. *See* Rec. Doc. 172. The plaintiffs also assert these claims on behalf of others similarly situated, as a putative class action under FRCP 23 and a putative collective action under the FLSA. At issue in the instant motion is whether to conditionally certify the matter to proceed as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b) and issue court-approved notice.

## II. LAW AND ANALYSIS:

### A. Standard for Conditional § 216(b) Certification and Court-Approved Notice:

"The FLSA affords workers the right to sue collectively on behalf of themselves and others 'similarly situated' for violations of the Act's minimum wage provisions and overtime protections. 29 U.S.C. § 216(b)." *Lima v. International Catastrophe Solutions, Inc.*, 493 F. Supp. 2d 793, 797 (E.D. La. 2007) (Fallon, J.). FLSA collective actions differ from Rule 23 class actions in that they require potential class members to affirmatively "opt-in" to the action, rather than including the potential member automatically and then permitting them to expressly opt out. "District courts are provided with discretionary power to implement the collective action procedure through the sending of notice to potential plaintiffs." *Id.*

In determining whether a group of "similarly situated" employees exists such that notice should be given, courts in this District follow the two-stage *Lusardi*[1] approach, which was

---

[1] *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987).

detailed in *Mooney v. Aramco Services, Co.,* 54 F.3d 1207, 1213-14 (5th Cir.1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003):[2]

> Under *Lusardi*, the trial court approaches the "similarly situated" inquiry via a two-step analysis. The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision–- usually based only on the pleadings and any affidavits which have been submitted– whether notice of the action should be given to potential class members.
>
> Because the court has minimal evidence, this determination is made using a fairly lenient standard,[8] and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.
>
> The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives– *i.e.* the original plaintiffs– proceed to trial on their individual claims. ...
>
> > [8] At the notice stage, "courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan ...."

*Mooney*, 54 F.3d at 1213-14 & n.8.

---

[2] *See, e.g., Lima,* 493 F.R.D. at 798 (Fallon, J.); *Lang v. DIRECTV, Inc.*, 2011 WL 6934607 *7 (E.D. La. 2011) (Brown, J., following Vance, J.); *Lackey v. SDT Waste & Debris Serv., LLC,* 2011 WL 6329909 *2 (E.D. La. 2011) (Milazzo, J.); *Smith v. Offshore Specialty Fabricators, Inc.*, 2009 WL 2046159 *2 (E.D. La. 2009) (Barbier, J.); *Fernandes Da Silva v. M2/Royal Constr. of La., LLC*, 2009 WL 3565949 *3 (E.D. La. 2009) (Lemmon, J.); *Melson v. Directech Southwest, Inc.*, 2008 WL 2598988 *3 (E.D. La. 2008) (Feldman, J.); *Williams v. Bally's Louisiana, Inc.*, 2006 WL 1285904 *2 (E.D. La. 2006) (Africk, J.).

"At the notice stage, the plaintiff bears the burden of making a preliminary factual showing that at least a few similarly situated individuals exist." *Lima*, 493 F.R.D. at 798. "The plaintiff may satisfy his or her burden through submission of evidence in the form of pleadings, affidavits and other supporting documentation." *Id.* "A plaintiff need only demonstrate a reasonable basis for the allegation that a class of similarly situated persons may exist." *Id.* (quotations and citations omitted).

### B. The Plaintiffs' Showing and the Defendants' Objections as to Certification:

Here, the plaintiffs assert the following FLSA claims on behalf of themselves and other similarly situated employees:

> (1) "Defendants Grand Isle and DNR (f/k/a D&R) violated 29 U.S.C. § 203(m) by deducting excessive and unreasonable costs for living expenses and for tools and equipment from Plaintiffs' wages. ... For example, Grand Isle, and DNR (f/k/a D&R) often deducted up to $2,000 to $3,500 per month from Plaintiffs' wages for living expenses, even though this exorbitant amount far exceeded the actual cost, or even the fair market value, of such expenses [and] also charged Plaintiffs for the cost of work-related tools and equipment, even though these Defendants ultimately retained, and clearly benefitted from, these work-related tools and equipment." *See* 2nd Amended Compl. (Rec. Doc. 172) at ¶¶ 97-98, 101-104, 111-115, 247.

> (2) "Defendants Grand Isle and DNR (f/k/a D&R) violated 29 U.S.C. § 206 by deducting costs for living expenses and for tools and equipment from Plaintiffs' wages so as to cause Plaintiffs' wages to at times fall below the federally mandated minimum wage rate. *See id.* at ¶¶ 111-115, 248.

> (3) "Defendants Grand Isle and DNR (f/k/a D&R) violated 29 U.S.C. § 207 by failing to compensate Plaintiffs for all hours worked, and by knowingly failing to compensate Plaintiffs at a rate of one and one-half times their regular hourly wage for hours worked in excess of 40 hours per week in violation of 29 U.S.C. § 207(a)(1). Defendants Grand Isle and DNR (f/k/a D&R), for example, did not compensate Plaintiffs for travel time (i.e., the time they were required to spend traveling to and from Defendants' job sites each day) even though Plaintiffs were required to perform certain work tasks before this travel time [and] did not

       compensate Plaintiffs for any time spent donning, doffing, and cleaning required
       protective equipment and tools.  *See id.* at ¶¶ 111-115, 249.

The plaintiffs have also submitted the declarations of twelve plaintiffs, each of whom attests to specific facts supporting each of the FLSA allegations above.  *See* 136-3 (Exhibits A through L).  Moreover, the declarants have averred that, based on their observations – including observations of co-workers' pay-stubs, their co-workers were treated in the same way.[3]

       Given the plaintiffs' submissions and their light burden at the notice stage, the Court finds that the plaintiffs have demonstrated a reasonable basis for their assertion that similarly situated persons exist who may have similar FLSA claims against certain of the defendants.  However, the Court finds merit in two of the defendants' objections, which warrant narrowing the plaintiffs' proposed definition of the collective.

       First, the Court agrees with the defendants that the plaintiffs have failed to put forth any evidence or detailed allegations that would support a reasonable inference that similarly situated persons are or were employed by the defendants outside Louisiana.  Thus, the collective will be limited to Louisiana.   Second, the plaintiffs have failed to make even a slight showing indicating that there exists a class of similarly-situated potential opt-ins with FLSA claims against any of the following defendants:   (1) Industrial Personnel and Management Services, Inc. ("IPAMS"); (2) Nilfil Peralta ("Peralta"); (3) Thunder Enterprises, Inc. ("Thunder"); (4) Mark Pregeant, Jr. ("Pregeant"); (4) Randolf Malagapo ("Malagapo"); (5) Danilo Dayao ("Dayao"); (6) V

---

[3]  *See, e.g.*, Decl. of Alberto Arcilla (Rec. Doc. 136-3), Exh. A at ¶ 22.

Manpower Philippines, Inc., formerly known as V People Manpower Philippines, Inc. ("V People"); and (7) Pacific Ocean Manning, Inc. ("POMI").

Whether to keep employees of defendant DNR Offshore and Crewing Services, Inc. ("DNR") within the class definition is a closer call. In each of the twelve declarations, the declarant avers that he worked for Grand Isle Shipyard, Inc. ("Grand Isle") and D&R (presumably D&R Resources, LLC ("D&R")) in Galliano, Louisiana and/or Lafitte, Louisiana. *See* 136-3 (Exhibits A through L). None of the declarants mentions DNR. However, the plaintiffs assert in their Complaint that "Grand Isle and DNR (f/k/a D&R)" participated in the actions underlying each of the plaintiffs' FLSA claims. *See* 2nd Amended Compl. (Rec. Doc. 172) at ¶¶ 247-249. They further allege that D&R recently changed its name to DNR. *Id.* at ¶ 57. Although DNR claims in its opposition that it is not the successor to D&R, discovery has not yet been conducted. *See* Rec. Doc. 186 at 15 and Exhibit 8. Given the lenient standard for certification at this stage, the Court finds that the plaintiffs' allegations have established a sufficient basis for conditional certification of a class that includes current and former employees DNR, as well as those of Grand Isle and D&R. If it becomes evident through discovery that no claims lie against DNR, then it may bring a motion for de-certification at the appropriate time.[4]

---

[4] If DNR has evidence (beyond a self-serving affidavit) that it is not related to D&R, then it would be in the interest of all parties that DNR disclose such evidence to plaintiffs' counsel forthwith so that they may make an informed decision regarding whether to proceed with the collective action against DNR, so as to avoid unnecessary complication and/or confusion.

Accordingly, the Court conditionally certifies the following collective of similarly situated persons: "All individuals who are currently employed or formerly have been employed by Grand Isle Shipyard, Inc., D&R Resources, LLC, or DNR Offshore and Crewing Services, Inc. in the State of Louisiana, under E-2 and/or B-1/OCS visas, since November 8, 2008."

Many of the defendants' remaining objections to certification have been resolved by this narrowing of the class definition.  To the extent they have not been resolved, the Court finds that they go to the merits and are not an appropriate basis for denying certification at this stage.  If they are borne out through discovery, then they may form the basis of a later motion for de-certification.

**C. Issues Relating to Notice:**

Because the Court has altered the definition of the collective proposed by the plaintiffs, the proposed notice plan must be modified, including all proposed notices and consent-to-sue forms.  Therefore, the defendants' objections to the proposed notice plan are denied without prejudice.  The Court expects counsel to work closely together in preparing a joint proposed notice plan, including details of when and where the notices shall be posted and/or broadcast.  An objection to an opponent's proposal will not be well received unless it is supported by the overwhelming weight of authority and concerns a matter of substantial prejudice.  The proposed plan should also address the issue of whether notices written solely in English will be meaningful in light of allegations in the Second Amended Complaint that certain plaintiffs are unable to read English proficiently.  *See* Rec. Doc. 172 ¶86.

### III. **CONCLUSION:**

Accordingly, for the foregoing reasons;

**IT IS ORDERED** that the "Plaintiffs' Motion to Proceed as a Collective Action and Facilitate Notice under 19 U.S.C. § 216(b)" (Rec. Doc. 136) is hereby **GRANTED IN PART** and **DENIED IN PART**, as set forth herein**.**

**IT IS FURTHER ORDERED** that the plaintiffs and defendants Grand Isle, D&R, and DNR submit within seven (7) days a joint proposed notice plan, as described herein.

New Orleans, Louisiana, this 9th day of November, 2012.

_____
**KURT D. ENGELHARDT**
**UNITED STATES DISTRICT JUDGE**