UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

ISIDRO BARICUATRO, ET AL                          CIVIL ACTION

VERSUS                                            NO.  11-2777

INDUSTRIAL PERSONNEL AND                          SECTION "N"  (2)
MANAGEMENT SERVICES, INC., ET AL

## ORDER AND REASONS

Before the Court is a "Motion to Dismiss for Improper Venue under 12(b)(3) or,

Alternatively, Motion to Compel Arbitration and Stay Proceedings Pending Arbitration" **(Rec.**

**Doc. 214),** filed by defendants V Manpower Philippines ("V People") and Pacific Ocean

Manning Inc. ("POMI").

## I.  BACKGROUND:

The plaintiffs are Filipino workers (including welders and pipe fitters) who allege that

they were fraudulently recruited in the Philippines, given E-2 or B-1/OCS visas, and then

brought to Louisiana, where they were exploited in the oil and gas industry and housed in

deplorable conditions.   They have filed suit against three Louisiana companies (Grand Isle

Shipyard, Inc.; Thunder Enterprises, Inc.; and D&R Resources, LLC) and four individuals

connected to one or more of these companies:   Mark Pregeant; Danilo N. Dayao; Nilfil Peralta;

and Randolf Malgapo.    In addition, they have sued four Philippines companies alleged to have

recruited and/or obtained visas for certain of the plaintiffs:   DNR Offshore and Crewing

Services, Inc. ("DNR"); Pacific Ocean Manning, Inc. ("POMI"); V Manpower Philippines, Inc.,

f/k/a V People Manpower Philippines, Inc. ("V People"); and Industrial Personnel and

Management Services, Inc. ("IPAMS").   *See* Rec. Docs. 1, 24, 172, 235, 311.

The plaintiffs allege that the defendants:   (1) subjected them to forced labor in violation

of the Trafficking Victims Protection Act of 2003 (18 U.S.C. §§ 1589-90); (2) violated the

Racketeer Influenced and Corrupt Organization Act ("RICO") (18 U.S.C. §§ 1961- 68); (3)

violated the plaintiffs' civil rights (42 U.S.C. § 1981); (4) violated the Fair Labor Standards Act

("FLSA") (19 U.S.C. §§ 203(m), 206 & 207); (5) violated the Klu Klux Klan Act of 1871 (42

U.S.C. § 1985) and the Thirteenth Amendment; (6) committed the torts of fraud, negligent

misrepresentation, false imprisonment, and intentional and negligent infliction of emotional

distress under Louisiana law; and (7) breached contracts and/or covenants of good faith and fair

dealing.  Rec. Doc. 24; *see also* 2d Amended Complaint (Rec. Doc. 172).   The plaintiffs also

assert these claims on behalf of others similarly situated, as a putative class action under FRCP

23 and a putative collective action under the FLSA.   *See* Rec. Docs. 1, 24, 172, 235.

## II. LAW AND ANALYSIS:

On November 8, 2012, defendants POMI and V People filed the instant motion to

dismiss for improper venue or, alternatively, to compel arbitration.[1]  The movants maintain that

they are entitled to arbitrate the claims against them pursuant to a dispute resolution clause

contained the Standard Terms and Conditions Governing the Employment of Filipino Seafarers

on Board Ocean Going Vessels (the "Seafarer Standard Terms") of the Philippine Overseas

Employment Administration ("POEA").   The clause provides:

---

[1]  Memoranda in support of and in opposition to the motion are at Rec. Docs. 214, 246, 253, 259, 264, 266, 281, 283, 286 and 290.

**In cases of claims and disputes arising from this employment**, the parties covered by a collective bargaining agreement shall submit the claim or dispute to the original and exclusive jurisdiction of the voluntary arbitrator or panel of voluntary arbitrators. If the parties are not covered by a collective bargaining agreement, **the parties may at their option, submit the claim or dispute to either** the original and exclusive jurisdiction of **the National Labor Relations Commission (NLRC)**, pursuant to Republic Act of 1995 **or to** the original and exclusive jurisdiction of **the voluntary arbitrator or panel or [sic] arbitrators**.  If there is no provision as to the voluntary arbitrators to be appointed by the parties, the same shall be appointed from the accredited voluntary arbitrators of the National Conciliation and Mediation Board of the Department of Labor and Employment.

The Philippine Overseas Employment Administration (POEA) shall exercise original and exclusive jurisdiction to hear and decide disciplinary action on cases, which are administrative in character, involving or arising out of violations of recruitment laws, rules and regulations involving employers, principals, contracting partners and Filipino seafarers.

*See* Rec. Doc. 214-4 at § 29 (emphasis added).   Movants argue that at least twenty-one of the plaintiffs who contracted with POMI and/or V People did so pursuant to employment contracts that incorporated the Seafarer Standard Terms, including the above-quoted dispute resolution clause.  *See, e.g.*, Rec. Doc. 214-1 at 2-3.   Consequently, they argue, the claims of these twenty-one plaintiffs should be dismissed for improper venue pursuant to Rule 12(b)(3) or, alternatively, stayed pending arbitration.[2]

### A.    Did the Movants Waive Their Rights To Arbitration, If Any, By Invoking the Judicial Process?

Plaintiffs argue that even if the movants were entitled otherwise to seek arbitration, which the plaintiffs dispute, they would nevertheless be barred from doing so because they have

---

[2]  Because the movants failed to raise the Rule 12(b)(3) motion in either of their earlier filed Rule 12(b) motions to dismiss, they are barred from doing so now.  *See* Fed. R. Civ. P. 12(g)(2).  Thus, if successful in establishing that they are entitled to arbitration, the movants' remedy will be a stay rather than dismissal.

3

waived any such rights through their purposeful invocation of the judicial process in this litigation.  "There is a strong presumption against finding a waiver of arbitration, and the party claiming that the right to arbitrate has been waived bears a heavy burden."  *In re Mirant Corp.*, 613 F.3d 584, 589 (5th Cir. 2010) (citation and internal quotation omitted).  "Waiver will be found when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party."  *Id.* (citation and internal quotation omitted).  "To invoke the judicial process, a 'party must, at the very least, engage in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration.' "  *Id.* at 589 (quoting *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 329 (5th Cir.1999)).  "Prejudice in the context of arbitration waiver refers to delay, expense, and damage to a party's legal position."  *Id.* at 591 (quoting *Nicholas v. KBR, Inc.*, 565 F.3d 904, 910 (5th Cir. 2009)).  The Fifth Circuit has stated that "[t]hree factors are particularly relevant to the prejudice determination:   (1) whether discovery occurred relating to arbitrable claims; (2) the time and expense incurred in defending against a motion for summary judgment; and (3) a party's failure to timely assert its right to arbitrate."  *Petroleum Pipe Americas Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476, 480 (5th Cir. 2009) (quoting *Republic Ins. Co. v. PAICO Receivables, LLC,* 383 F.3d 341, 346 (5th Cir. 2004)) (internal quotation omitted).

Plaintiffs argue that the movants' actions amount to waiver.  In particular, they point to the movants' two Rule 12(b) motions to dismiss and the movants' opposition to the plaintiffs' motion for conditional certification of the FLSA collective action.[3]  *See* Rec. Docs. 81, 190, 208.

---

[3]  In response to the plaintiffs' motion to certify the collective action, the movants initially filed a five-page response that addressed Rule 23 certification (an issue that was not before the Court at the time).  *See* Rec. Doc. 191.  However, shortly thereafter, at plaintiffs'

At oral argument, the Court made the following statements regarding waiver:

> [T]he closer call in this case is whether the alternative motion to compel the arbitration has been waived.  I think there are good equitable arguments on both sides.  There's no doubt that the movants in this case have substantially invoked the judicial process to the prejudice of the plaintiffs.  They've filed two separate motions to dismiss under Rule 12 seeking a decision on the merits, including asking the Court to dismiss based on the affirmative defense [of] prescription. They did not seek in either of those motions to enforce a right to arbitrate.  It's clear to the Court that the movants made the decision to not invoke the right to arbitrate in the first instance, but rather to take their chance first with the Court in an attempt to dismiss the allegations on the merits, as the *Mirant* court describes[,] keeping the arbitration option as a backup plan in case that effort failed.  In this case[,] nearly a year into the litigation, there is now a seeking of arbitration.  Thus, those facts would be similar to *In re Mirant* wherein the Circuit upheld the direct court's finding of waiver. However, in the first motion to dismiss — and this goes to the question that I asked counsel — in the first motion to dismiss [] and/or for more definite statement which appears as record document 81, the movants in the motion here today stated in the first paragraph that they were, quote, expressly reserving all of their rights, defenses and objections including but not limited to their right to proceed through arbitration without waiving same thereof.  This is an express reservation.  This would bring the facts closer to those set forth in *Key Trade USA*, 404 F.3d 891, Fifth Circuit opinion from 2005 in which the Circuit struck down finding of a waiver.
>
> Granted, in *Key Trade*, the defendant had filed an answer asserting its right to arbitrate and simultaneously with its motion on the merits filed a motion to compel the arbitration.  The movants here have not yet filed an answer and did not seek to enforce the alleged arbitration agreement either before or simultaneously with their motions seeking dismissal on the merits.  Nevertheless, *Key Trade* states expressly that a finding of waiver is not favored in the Circuit and that there is in fact a presumption against it.  Given that the movants expressly reserved their right to arbitrate, the facts here simply do not overcome this presumption despite the movants' purposeful use of the Court to litigate the claims against it.

*See* Transcript, Dec. 12, 2012 (Rec. Doc. 272) at pp.12-14.

---

request, the movants withdrew the response and simply adopted the arguments already advanced by other defendants in opposition to certification of the FLSA collective action.  *See* Rec. Doc. 208.

After oral argument, the plaintiffs submitted a supplemental memorandum in which they argue that the Court's oral statements reflect erroneous reasoning in two respects: (1) in relying on *Keytrade*,[4] which plaintiffs maintain is factually dissimilar; and (2) in taking into account the movants' express reservation of the right to arbitrate (asserted in their first motion to dismiss). Plaintiffs, citing *Mirant*, argue that such express reservations can have no effect and are in fact "impermissible under Fifth Circuit law." *See* Rec. Doc. 286 at 3-5. The Court disagrees on both points.

**1.   The Court's Reliance on the *Keytrade* Opinion:**

The plaintiffs misapprehend the Court's reliance on *Keytrade*.   The Court has looked to the *Keytrade* decision not because it has found the facts there to be indistinguishable from those here.  Clearly, they are not.  Rather, the Court finds the decision to be instructive because the opinion in that case illustrates the importance of the Fifth Circuit's presumption against finding waiver in weighing the individual facts of a particular case.  Waiver is a fact-intensive inquiry, and the facts here are unique, differing from those of both *Mirant* and *Keytrade*.

In *Mirant*, the court found that the defendant had waived its right to arbitrate by filing its second and third motions to dismiss, which asserted the affirmative defense of waiver and release.  *Mirant*, 613 F.3d at 589.  The *Mirant* court found that this distinguished the defendant's motions from "a mere perfunctory motion to dismiss" because affirmative defenses such as release "admit the initial sufficiency and completeness of the claim while asserting other grounds

---

[4]  *Keytrade USA, Inc. v. Ain Temouchent M/V*, 404 F.3d 891 (5th Cir. 2005).

for avoiding the normal consequences of that concession." *Id.* (citation and internal quotation omitted).   Rather than merely asserting the legal insufficiency of the plaintiff's allegations, by asserting the affirmative defense of release, the defendant was "seeking to prove its own allegations to the district court." *Id.*   Thus, the *Mirant* court rejected the defendant's argument that a Rule 12(b) motion can never support a finding of waiver, observing that "'motions to dismiss are not homogeneous'" and finding that such "a bright-line rule is inappropriate for deciding whether a party has waived its right to arbitration." *Id.* (quoting *Hooper v. Advance Am. Cash Advance Ctrs. of Mos, Inc.*, 589 F.3d 917, 922 (8th Cir. 2009)).   Instead, "[t]he question of what constitutes a waiver of the right of arbitration depends on the facts of each case." *Id.* (quoting *Tenneco Resins, Inc. v. Davy Int'l*, AG, 770 F.2d 416, 420 (5th Cir.1985)). Under the particular facts of *Mirant*, the Fifth Circuit agreed with the district court that the nature of the defendant's filings overcame the presumption against finding waiver.

Here, in contrast, the movants' first motion to dismiss was directed primarily to the legal insufficiency of the plaintiffs' discrimination, unjust enrichment, and negligent infliction of emotional distress claims.  *See* Rec. Doc. 81-1 at 3-4.  The only affirmative defense asserted was that of prescription.  *See id.* at 6-8.  Unlike the affirmative defense of release asserted in *Mirant*, the movants here took this defense straight from the plaintiffs' complaint, accepting the employment termination dates alleged by the plaintiffs and arguing that certain claims of certain plaintiffs were prescribed on their face.  *Id.*  Thus, unlike the *Mirant* defendant, the movants did not seek to prove their own allegations to the court.   Moreover, the plaintiffs' claim of prejudice is undermined with regard to the affirmative defense by the fact that the plaintiffs conceded the

7

correctness of the movants' prescription argument.[5]  *See* Rec. Doc. 110 at 11-12.   The Court

granted the motion only as to the unjust enrichment claim (which under Louisiana law cannot lie

where legal remedies are available) and the claims that plaintiffs conceded were prescribed.

The movants' second motion to dismiss was truly a "perfunctory" filing, containing not a

single citation to law of any kind, other than one footnote citation to the Rule 12(b)(6) standard

enunciated in *Twombly*.[6]  *Id.*  As in their first motion, the movants' second motion to dismiss

simply challenged the legal sufficiency of the plaintiffs' allegations and asserted the affirmative

defense of prescription based upon the allegations in the complaint.  *See* Rec. Doc. 190-1.  As in

the case of the first motion, the plaintiffs conceded the correctness of the prescription argument.[7]

---

[5]  With regard to prescription, plaintiffs stated:

> Plaintiffs do not dispute Defendants' contention that the claims of certain (but not all) named Plaintiffs are barred by the three-year limitations period applicable to Plaintiffs' FLSA claims.  Nor do Plaintiffs dispute Defendants' assertion that the claims of certain (but not all) named Plaintiffs are precluded by the one-year limitations period applicable to Plaintiffs' claims for intentional and/or negligent infliction of emotional distress, negligent misrepresentation, and false imprisonment. These prescription issues are easily remedied by allowing Plaintiffs to amend their First Amended Complaint to ensure that the claims at issue are pursued by only those named Plaintiffs whose claims are not prescribed.

Rec. Doc. 110 at 11-12 (citations omitted).

[6]  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

[7]  With regard to prescription, plaintiffs stated:

> Plaintiffs agree that, based on the information currently available to them, claims arising from the tortious conduct of POMI and V People discovered prior to November 8, 2010 may be time-barred.  However, absent the benefit of discovery, these claims should be dismissed as to V People and POMI without prejudice.

*See* Rec. Doc.  207 at 12.

*See* Rec. Doc. 207 at 12.   The Court denied the motion in its entirety as untimely and further

stated that it would have been denied on the merits even if it had not been untimely, with

exception of the section 1981 claims (which plaintiffs conceded had not been alleged against the

movants) and the state tort claims that plaintiffs had conceded were prescribed.  *See* Rec. Doc.

210 at 10-13.  Thus, no prejudice was suffered from this second motion to dismiss.[8]

All of these facts weigh against a finding of waiver, as do the facts discussed in the

section below.   Balanced on the other side is the Court's opinion, shared with counsel at oral

argument, that the movants made a strategic decision to hold off filing their motion to compel

arbitration so as to take their chance first with the Court in an attempt to dismiss the allegations.

Such tactical maneuvers are not viewed with favor.   Thus, as indicated at oral argument, the

Court finds the facts for and against waiver in this case to be very close, nearly equal.   In such a

case, the strong presumption against waiver expressed in *Keytrade* becomes of particular

importance.

### 2.  Consideration of the Movants' Express Reservation of the Right to Arbitrate:

The plaintiffs argue that this Court errs in giving any weight whatsoever to the express

reservation of the right to arbitrate asserted by the movants in their first appearance, the first

---

[8]  The Court recognizes that prejudice is not limited to damage caused to one's legal position and may include expense and delay.  *Mirant*, 613 F.3d at 591.  However, plaintiffs have presented no evidence of expenses incurred in this regard, and the delay of six weeks (between filing the second motion to dismiss and filing the motion to compel arbitration) is insignificant in light of the scope and complexity of this litigation.  Indeed, the movants' motion added virtually nothing to the delay, given that other defendants filed second motions to dismiss that were more substantial and complex than that filed by the movants.

motion to dismiss.[9]   Relying on *Mirant*, the plaintiffs argue that such reservations are "impermissible under Fifth Circuit law" and are utterly without effect.   The plaintiffs considerably overstate the *Mirant* court's pronouncements regarding the consideration to be given express reservations of arbitration rights in the determination of waiver.  Plaintiffs quote the following language from *Mirant*:   "In this case, Castex's actions did not constitute a timely demand for arbitration.  A party cannot keep its right to demand arbitration in reserve indefinitely while it pursues a decision on the merits before the district court."  *Mirant*, 613 F.3d at 591.  However, the sentence prior to this statement contains facts that shed considerable light on what the Circuit meant by the terms "timely" and "indefinitely."   The previous sentence states:   "As noted above, Castex waited <u>eighteen months</u> before moving to compel arbitration while it attempted to obtain a dismissal with prejudice from the district court."  *Id.* (emphasis added).

Here, in contrast, the movants were served on May 13, 2012,[10] they filed their first motion to dismiss (containing an express reservation of the right to arbitrate) on June 25, 2012,[11]

---

[9]   The first sentence of the motion states:

Defendants, V Manpower Philippines, Inc., Pacific Ocean Manning Inc. and V People, Inc., and, pursuant to Rules and 12(b)(6) and 12(e) of the Federal Rules of Civil Procedure, file this Motion to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted and Motion for More Definite Statement, **expressly reserving  all of their rights**, defenses and objections, **including** but not limited to **their right to proceed through arbitration**, and without waiving same thereof.

*See* Rec. Doc. 81 at 1 (emphasis added).

[10]   Rec. Docs. 53, 54.

[11]   Rec. Doc. 81.

and they filed the instant motion to compel arbitration on November 8, 2012.[12]   Thus, they

waited less than five months between their first appearance (wherein they expressly reserved

their right to seek arbitration) and their motion to compel arbitration.  Given the scope and stage

of this litigation,[13] five months is not a significant delay.[14]  The only significant intervening

---

[12]  Rec. Doc. 214.

[13]  This case is large and complex.  It encompasses dozens of plaintiffs and eleven
defendants.  It contains an FLSA collective action, which was conditionally certified after the
movants' arbitration motion was filed and is now in the notice phase, and a putative Rule 23 class
action for which the motion to certify is not due until April 2013.  *See* Rec. Docs. 218, 239, 249.
More than one year into the litigation, the parties still have not completed the pleading stage.  The
plaintiffs continue to amend their complaint to add new plaintiffs.  *See* Rec. Doc. 311 (4th
Amended Complaint, filed Feb. 19, 2013). The only discovery permitted heretofore has been
limited to Rule 23 class certification.  *See* Rec. Doc. 249.  No merits discovery has begun.  In this
context, the prejudice to the plaintiffs caused by a five-month delay is minimal.

[14]  The Fifth Circuit has recognized that the scope and complexity of the litigation bears
upon the determination of prejudice:

> [Nicholas] judicially pursued her claims for over ten months without mentioning the
> Agreement's arbitration clause or her desire for arbitration.   In this relatively
> straightforward case, that delay virtually guaranteed that the district court would not rule
> on Nicholas's motion to compel until the parties had completed discovery and KBR had
> begun preparing its motion for summary judgment.   Although KBR did not put on
> evidence in terms of dollars and cents of its litigation costs in the district court, the
> record supports the district court's finding that KBR's litigation activities were significant
> in the context of this dispute:  KBR removed the case to federal court based on ERISA
> preemption principles; successfully opposed Nicholas's motion to remand; answered
> Nicholas's complaints; propounded discovery requests; and deposed Nicholas.  After
> Nicholas filed her motion to compel arbitration but before the district court ruled on it,
> KBR participated in Nicholas's deposition of a third-party witness. While these litigation
> activities in the context of a larger, more complex case might be characterized as
> minimal, it was not unreasonable for the district court to find that they carry particular
> significance given the limited scope and relatively straightforward nature of Nicholas's
> denial-of-benefits claims.  Indeed, by sitting on her rights for over ten months, Nicholas
> forced KBR to conduct the bulk of activity necessary to defend against her claims. Short
> of actually trying the case, it is unclear what additional litigation costs KBR could have
> incurred in this dispute.

*See Nicholas v. KBR, Inc.*, 565 F.3d 904, 910-11 (5th Cir. 2009) (footnote, citations, and internal
quotations omitted).

action between these two events was the second motion to dismiss, which like the first motion to

dismiss, was directly largely to the sufficiency of the plaintiffs' allegations.[15]   Moreover, unlike

the other defendants, who fought multiple battles over protective orders[16] – both defensively and

offensively – and filed substantial pleadings in opposition to certification of the FLSA collective

action,[17] the movants' participation in the litigation has been largely limited to its two Rule 12

motions to dismiss.

        Under these facts, the Court finds that it is appropriate to weigh the movants' express

reservation of the right to arbitrate as part of the overall inquiry regarding waiver.   Although

clearly not entitled to the same weight as a demand for arbitration,[18] it was asserted in the

movants' first filing with the Court.   Thus, particularly given the short delay between this filing

and the motion to compel, the Court does not find it to be utterly without effect, as plaintiffs

contend.   Nor does the Court find such reservations to be "impermissible under Fifth Circuit

law," as plaintiffs maintain.

---

        [15]   *See* discussion *supra* at 7-9.   The movants also filed an opposition to the plaintiffs
motion for contempt.   *See* Rec. Doc. 147.   However, this four-page document was a purely
defensive move and simply pointed out that the plaintiffs' motion was based on allegations of
wrongdoing by other unrelated defendants and asserted no such conduct on the part of the
movants.   Such a pleading cannot be said to invoke the judicial process.   As discussed *supra* at
note 3, the movants filed a response to the plaintiffs' motion to certify collective action.
However, this response simply adopted the arguments of others and thus did not add to the
plaintiffs' burden.   *See* Rec. Doc. 208.

        [16]   *See, e.g.,* Rec. Docs. 63, 71, 75, 88, 93, 99, 100, 102, 115, 117, 118 and 119.

        [17]   *See, e.g.,* Rec. Docs. 136, 144, 173, 184, 186, 187, 188, 189, 202, 204, 206, 218, 239.

        [18]   *See, e.g., Keytrade,* 404 F.3d at 897 ("That burden [of overcoming the presumption
against a finding of waiver] falls even more heavily when the party seeking arbitration has
included a demand for arbitration in its answer.") (internal quotations omitted).

Although it is the Court's opinion that the movants made a tactical decision to hold the arbitration motion in abeyance for five months pending the Court's ruling on the Rule 12(b) motions, the Court finds this to be outweighed by the Court's findings that:  (1) the movants' five-month delay in seeking arbitration was minimal given the scope of this large and complex litigation; (2) the movants' participation in the litigation comprised only two Rule 12 motions, which were largely limited to challenging the sufficiency of the plaintiffs' pleadings and did not seek to establish the movants' own allegations; (3) the prejudice to the plaintiffs was de minimus given the scope of this litigation;[19] and (4) the movants expressly reserved their right to arbitration in the first sentence of their first filing with the Court.[20]  Considering all the facts as a

---

[19] Although plaintiffs state that they have spent hundreds of hours litigating this case, they have submitted no supporting materials in this regard.  Moreover, based upon the Court's own experience in the litigation, and the relative inactivity of the movants in comparison to the other defendants, the Court finds it highly unlikely that more than a small fraction of the plaintiffs' attorney time was devoted to matters directly and solely involving the movants.

[20] The facts here are strikingly different from those in the cases cited by plaintiffs.  *See* Rec. Doc. 286 at 6-7; *Abbasid, Inc. v. Bank of America, N.A*, 395 Fed.Appx. 123, 124 (5th Cir. 2010) (plaintiff waived right to arbitrate by filing suit and conducting discovery for more than one year before seeking to arbitrate); *Nicholas v. KBR, Inc.*, 565 F.3d 904, 908-910 (5th Cir. 2009) (plaintiff waived right to arbitrate where she filed suit on arbitrable claims and pursued litigation for over 10 months before seeking to arbitrate); *Petroleum Pipe Americas Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476, 480-81 (5th Cir. 2009) (defendant waived right by removing case to federal court, filing counterclaims, and waiting one year to assert arbitration for the first time); *Unity Communications Corp. v. Cingular Wireless*, 256 Fed.Appx. 679, 681-82 (5th Cir. 2007) (defendant litigated for 3 years, including moving for summary judgment and taking interlocutory appeal, before seeking to arbitrate); *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 343-48 (5th Cir. 2004) (plaintiff waived right to arbitrate where it completed full-fledged discovery on all issues, filed motion for summary judgment and motions in limine, and then sought to compel arbitration for the first time just days before trial was to start); *Miller Brewing Company v. Fort Worth Distributing Co., Inc.*, 781 F.2d 494, 497-98 (5th Cir. 1986) (plaintiff waived right to arbitrate where it filed suit, sent arbitration demand letter 8 months later, and then left the demand dormant for 3 ½ years while pursuing legal remedies in state and federal court, including taking appeals); *Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d 1156, 1160-61 (5th Cir. 1986) (defendant delayed 17 months and sought arbitration only 3 weeks before final

whole, the Court concludes that the presumption against a finding of waiver has not been overcome.

**B.**   **Standard of Inquiry under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards:**

The Federal Arbitration Act ("FAA")[21] governs the enforcement, validity, and interpretation of arbitration clauses in commercial contracts.  Chapter Two of the FAA[22] implements the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), which governs arbitration clauses in international commercial contracts.  For courts deciding whether to compel arbitration pursuant to a foreign arbitration clause, "[t]he Convention contemplates a very limited inquiry."  *Sedco v. Petroleos Mexicanos Mexican Nat'l Oil (Pemex)*, 767 F.2d 1140, 1144 (5th Cir. 1985).   This inquiry requires the court to answer four questions:  (1) Is there an agreement in writing to arbitrate the dispute?  (2) Does the agreement provide for arbitration in a territory of a Convention signatory? (3) Does the agreement arise from a commercial legal relationship? and (4) Is a party to the agreement not an American citizen?[23]  *Id.* at 1144-45*; Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 903 (5th

---

pretrial order was due, after filing a motion for summary judgment and conducting substantial discovery).

[21]   9 U.S.C. § 1 *et seq.*

[22]   9 U.S.C. §§ 201-2018.

[23]   Under certain circumstances, the Convention may require arbitration even where all parties to the contract are American citizens.  *See* 9 U.S.C. § 202; *Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 339 (5th Cir. 2004).

Cir.), *cert. denied*, 546 U.S. 826 (2005); *Francisco v. Stolt Achievement MT*, 293 F.3d 270, 273 (5th Cir.), *cert. denied*, 537 U.S. 1030 (2002).   If these four requirements are met, the court must stay the action and make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement "unless it finds that the said agreement is null and void, inoperative or incapable of being performed." *Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 339 (5th Cir. 2004) (quoting *Sedco*, 767 F.2d at 1146 (quoting Convention, Article II(3))); *see also* 9 U.S.C. §§ 3, 4, 208.

There is no dispute that the Republic of the Philippines is a signatory to the Convention and that the plaintiffs are citizens of the Philippines.  Moreover, the Fifth Circuit has held that a contract of employment is a "commercial legal relationship" for purposes of the Convention. *See Francisco*, 293 F.3d at 274-75.  Thus, the second, third, and fourth considerations under the Convention are satisfied.  It is the satisfaction of the first factor — the existence of an agreement in writing to arbitrate the dispute — that is less clear.

### C.    Is There an Agreement in Writing to Arbitrate the Dispute?

"[I]t is axiomatic that arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  *American Heritage Life Ins. Co. v. Lang*. 321 F.3d 533, 537 (5th Cir. 2003) (quoting *Hill v. GE Power Systems*, 282 F.3d 343, 347 (5th Cir.2002)) (internal quotation omitted); *Will-DrillResources, Inc. v. Samson Resources Co.*, 352 F.3d 211, (5th Cir. 2003) ("arbitration is a matter contract which cannot be forced upon a party").  Moreover, "the 'federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties' or to 'the determination of who is bound' by the arbitration agreement." *American Heritage,* 321 F.3d at

537-38 (quoting *Fleetwood Enters. Inc. v. Gaskamp*, 280 F.3d 1069, 1073-74 (5th Cir.2002)) (internal quotation omitted).  Instead, the court "determines whether there is a valid agreement to arbitrate and who is bound by it based on 'ordinary contract principles.' " *Id.* at 538.  "[O]rdinary contract principles require a 'meeting of the minds' between the parties in order for agreements to be valid."  *Id.*

None of the one-page employment contracts signed by the plaintiffs contain an arbitration clause.  *See* Rec. Docs. 214-2, 214-3.   Instead, the arbitration clause cited by the movants is found at section 29 of the Seafarer Standard Terms, which is a separate document. *See* discussion *supra* at 2-3.  In determining whether the plaintiffs agreed to be bound by this clause, it becomes necessary to distinguish among the twenty-one plaintiffs at issue here.   For two of these plaintiffs — Ranel Lamoste and Eduardo Real — the movants have submitted a copy of the Seafarer Standard Terms, which appears to have been attached to the plaintiff's employment contract and which has been signed by the plaintiff.  *See* Rec. Doc. 214-2 at page 19 of 19; 214-3 at pages 1-8, 23 of 24.  For the remaining nineteen plaintiffs, the movants have submitted no evidence that they agreed to be bound by the Standard Terms.

### 1.  Ranel Lamoste and Eduardo Real:

With regard to Ranel Lamoste and Eduardo Real, the Court finds that the movants have presented evidence of an agreement in writing to arbitrate that would encompass at least certain of the claims asserted against the movants in this litigation.  Unless such agreements are shown to be null and void, the Convention requires that they be enforced.  *See Lim*, 404 F.3d at 902-08; *Francisco*, 293 F.3d at 272-78.  Therefore, as to these two plaintiffs, the only remaining issues are:  (1) the plaintiffs' arguments of fraud and/or fraud in the inducement; and (2) the scope of the arbitration clause.  Both of these issues are discussed further below.

## 2.  <u>The Nineteen Plaintiffs Who Did Not Sign the Standard Terms</u>:

As to the other nineteen plaintiffs, the movants have presented no evidence that the plaintiffs agreed to be bound by Section 29 or any other part of the Seafarer Standard Terms. Instead, with regard to these nineteen plaintiffs, the movants' must rely on their argument that the contracts signed by the plaintiffs incorporate the Seafarer Standard Terms, including the dispute resolution clause contained therein.  *See, e.g.*, Rec. Doc. 214-1 at 2.

At oral argument, the Court asked counsel for movants to point specifically to the contract language that incorporates the Standard Terms.   In response, counsel pointed to paragraph 3, which is the only language in the contracts that refers to the Seafarers Standard Terms.  It states:

> Any alterations or changes, in any part of this Contract shall be evaluated, verified, processed and approved by the Philippine Oversease [sic] Employment Administration (POEA).  Upon approval, the same shall be deemed an integral part of the Standard Terms and Conditions Governing the Employment of Filipino Seafarers Board [sic] Ocean-Going Vessels.

*See* Rec. Docs. 214-2 and 214-3.   This clause, by its own terms, is concerned with alternations to the contract.  No straightforward reading of this clause would yield an understanding, even to a proficient reader of English, that the parties were thereby incorporating another body of terms — specifically, the Seafarer Standard Terms — into the terms of the written contract signed by the parties.  The movants point to no other language in the contracts that they contend should be construed as incorporating the Seafarer Standard Terms.

In response to the Court's order requiring post-argument briefing on the issue of incorporation by reference,[24] the plaintiffs candidly point out one other clause, contained in

---

[24]  *See* Rec. Doc. 262 ("Counsel shall file... a short memorandum...addressing the following issues: 1) By what specific language are the seafarers' Standard Terms...incorporated

paragraph 2 of the contracts, which arguably could be relied upon to support incorporation.

Paragraph 2 states:  "The herein terms and conditions in accordance with Department Order No.

4 and Memorandum Circular No. 9 both Series of 2000, shall be strictly and faithfully

observed."  *See, e.g.,* 214-2 at 1, ¶2 (emphasis added).   The Court agrees with plaintiffs that this

paragraph cannot reasonably be read as incorporating the Seafarer Standard Terms.   Paragraph 2

immediately follows paragraph 1, which states that "the Employee shall be employed on board

under the following terms and conditions:" and then proceeds to enumerate the duration of

employment, rate of pay, overtime policy, vacation policy, and other specific terms of the

employment.  *Id.* at ¶1 (emphasis added).  Thus, no plain reading of paragraph 2 would yield an

understanding that it operated to incorporate terms from outside the four corners of the contract.

Rather, given a straightforward reading, paragraph 2's reference to "the herein terms and

conditions" most logically refers to the "terms and conditions" referenced and enumerated in the

paragraph preceding it.[25]  Thus, no party has cited any language in the written contracts that, as a

matter of ordinary contract principles, reasonably could be read as incorporating the Seafarer

Standard Terms into the contracts.   No party looking at the employment contract alone would be

put on notice that by signing it, he would thereby be agreeing to arbitrate his disputes.

---

into the employment contracts signed by the plaintiffs?").

[25]  The plaintiffs attach the POEA's Memorandum Circular No. 9, Series of 2000.  *See* Rec. Doc. 283-1.   Although the Circular discusses the Amended Seafarer Standard Terms, it contains nothing that could be read as deeming that the Standard Terms are incorporated into every contract executed on the standard seafarer form.  To the contrary, it states that the Standard Terms "are the minimum requirements acceptable to the POEA for the employment of Filipino seafarers on board ocean-going vessels," and that the parties may improve upon such minimum terms."  *Id.*  No party has submitted POEA Department Order No. 4, Series of 2000.

Unable to point to a single clause in the contracts that supports their claim of incorporation by reference, the movants argue that this Court should nevertheless rule that there is such incorporation because "[n]ot to be 'cheeky,' but the defendants are unaware of a circumstance [sic] a court questioned the incorporation of the POEA terms and conditions into the POEA contract."  Rec. Doc. 281 at 8.   If the cases cited by the movants supported their argument of incorporation, then the movants would have needed no disclaimer.  However, the audacity of their argument becomes evident when one examines the cases cited in support of the argument.  Not one of them supports the movants' argument of incorporation by reference.

First, the issue of whether as a matter of contract interpretation the employment contract incorporated the Seafarer Standard Terms was not a disputed issue in any of the cases cited. Indeed, the lack of dispute on this issue is noted in more than one of the cases.  *See, e.g., Aggarao v. Mitsui O.S.K. Lines, Ltd.* 741 F. Supp. 2d 733, 738 (D. Md. 2010) ("Mr. Aggarao does not dispute that the POEA Contract he signed on June 2, 2008 contains a mandatory arbitration clause."); *Amizola v. Dolphin Shipowner, S.A.*, Civil Action No. 04-2256 (E.D. La.), Rec. Doc. 12 at 6 of 25 (plaintiff conceding that the employment contract contains the "forum selection clause" in section 29 of the Seafarer Standard Terms).  Of the cases cited, the issue of incorporation was disputed only in *Bautista v. Star Cruises,* 396 F.3d 1289 (11th Cir. 2005), and there the plaintiffs argument was not a textual one grounded in the contract language, but rather was based on jurisprudence requiring that, to be enforceable under the Convention, an arbitration agreement must be signed.  *Id.* at 1300.  The Eleventh Circuit rejected the *Bautista* plaintiffs argument on grounds that the plaintiffs in that case had actually "signed the Standard Terms, the document containing the arbitration provision."  *Id.*  Plaintiffs in the other cited cases challenged

19

the enforceability of their clauses on multiple other grounds (*e.g.*, the applicability of the Convention to seaman's wage claims).  However, in none of the cases did the court grapple with the disputed textual issue presented here.

Second, more importantly and perhaps explaining why incorporation was not disputed in these cases, the relevant contract language differs in significant respects from that at issue here. Although the movants represent that the courts in the cases cited were "presented with the standard POEA contract of employment at issue"[26] — implying that the courts in those cases were presented with the same standard contract at issue in this case, such is not the case.   For example, in *De Joseph v. Odfjell Tankers (USA), Inc.*, 196 F. Supp. 2d 476 (S.D. Tex. 2002), the contract stated expressly that the Seafarer Standard Terms would be followed.  *See id.* at 477 ("The contract also states in Paragraph 1 that '[t]he terms and conditions of the revised Employment Contract governing the employment of all seafarers approved per Department Order No. 33 and Memorandum Circular No. 55 both Series of 1996 shall be strictly and faithfully observed.' ").   The contract language at issue in *In re Eternity Shipping, Ltd.*, 444 F. Supp. 2d 347 (D. Md. 2006), is nearly identical to that in *De Joseph* and makes clear that the Seafarer Standard Terms will be observed by the parties.  *Eternity,* 444 F. Supp. 2d at 375 ("The [Standard Terms] shall be strictly and faithfully deserved [sic].") (both brackets in original).[27] Likewise, in *Marinechance Shipping, Ltd. v. Sebastian,* 143 F.3d 216 (5th Cir.), *cert. denied*, 525

---

[26]  Rec. Doc. 281 at 8.

[27]  Although the *Eternity* court used brackets for brevity, the actual contract in that case makes clear that the document referenced is the Seafarer Standard Terms.  *See In re Eternity Shipping, Ltd.*, Civil Action 01-250 (D. Md.) at Rec. Doc. 74-2, Employment Contract of plaintiff's decedent ("The terms and conditions of the revised Employment Contract for seafarers governing the employment of all Filipino seafarers approved per Department Order No. 33 and Memorandum Circular No. 55 series of 1996 shall be strictly and faithfully deserved [sic]").

U.S. 1055 (1998), the contract stated expressly that the Seafarer Standard Terms would be followed. *See id.* at 220 ("The Employment Contract also states that: '[t]he terms and conditions of the revised Employment Contract for seafarers governing the employment of Filipino seafarers approved by the POEA ... shall be strictly and faithfully observed.' ").[28]

The contracts here contain no such language. Rather than referring expressly to the Seafarer Standard Terms, the comparable language in the instant contracts states that "[t[he herein terms and conditions in accordance with Department Order No. 4 and Memorandum Circular No. 9 both Series of 2000, shall be strictly and faithfully observed." *See, e.g.,* 214-2 at 1, ¶2 (emphasis added). The former makes clear that the parties are incorporating terms from a source outside the four corners of the contract. The latter does not, as discussed above.[29]

Third, the forum selection clauses at issue in *De Joseph* and *Marinechance* were not merely incorporated by reference but were contained within the four corners of the employment contract itself. *See De Joseph*, 196 F. Supp. 2d at 477 ("Paragraph 4 of the POEA employment contract stipulates: All claims, complaints or controversies relative to the implementation of this overseas employment contract shall be resolved through the established Grievance Machinery in the Revised Employment Contract for Seafarers. If result of the procedure is unsatisfactory to

---

[28] The contract language in *Amizola v. Dolphin Shipowner, S.A.*, 354 F. Supp. 2d 689 (E.D. La. 2004), was likely very similar to that in *De Joseph*, *Eternity*, and *Marinechance*. Although copies of the contract are no longer available in the record, the defendant in *Amizola* asserted that "Paragraph 2 of the contract expressly incorporated the Standard Terms and Conditions," and the plaintiff conceded that the employment contract contained the "forum selection clause" in section 29 of the Seafarer Standard Terms. *See Amizola v. Dolphin Shipowner, S.A.*, Civil Action No. 04-2256 (E.D. La.), Rec. Doc. 6 at 11; Rec. Doc. 12 at 6.

[29] *See* discussion *supra* at 19-20.

any of the parties, it may be appealed to the management of the company or with the Philippine

Labor Attache or consular office overseas. This procedure shall be without prejudice to any

action that the parties may take before the appropriate authority."); *Marinechance,* 143 F.3d at

219 ("That [employment] contract provides that:  All claims, complaints or controversies relative

to the implementation and interpretation of this overseas employment contract shall be

exclusively resolved through the established grievance machinery in the Revised Employment

Contract for Seafarers, the adjudication procedures of Philippine Overseas Employment

Administration and the Philippine Courts of Justice, in that order.").  In *Cruz v. Chesapeake*

*Shipping Inc.*, 738 F. Supp. 809 (D. Del. 1990), also cited by the defendants, the case did not

address incorporation of outside terms into an employment contract, but rather, a collective

bargaining agreement that contained within its four corners a forum selection clause giving

POEA exclusive jurisdiction over employment disputes.  *Id.* at 814-15.

Fourth, like Lamoste and Real in this case, the plaintiffs in several of the cited cases had

actually signed a copy of the Seafarer Standard Terms, in addition to signing the employment

contract.  *See Francisco v. Stolt Achievement MT*, 2001 WL 290172 *1 (E.D. La. 2001)

("Plaintiff signed both the employment contract and the incorporated Standard Terms and

Conditions."); *Aggarao*, 675 F.3d at 361 (the 'Standard Terms...'..., which Aggarao also

signed"); *Amizola v. Dolphin Shipowner, S.A.*, Civil Action No. 04-2256 (E.D. La.), Rec. Doc. 6

at 11 of 27.   It may be that this was done in other of the cited cases, as well, but simply was not

noted because the issue of incorporation was not disputed.   In *Bautista,* 396 F.3d 1289, relied on

heavily by the movants, each of the plaintiffs had signed a copy of the Seafarer Standard Terms,

and the Eleventh Circuit relied expressly and exclusively upon this fact in rejecting the

plaintiffs' argument that the Standard Terms had not been effectively incorporated into the

employment contracts.  *Id.* at 1293, 1300.  Here, in contrast, nineteen of the plaintiffs did not

sign the Standard Terms.

 Fifth, the plaintiffs in each of the cases cited were undisputedly "seafarers," as that term

is defined by the POEA.  *Francisco*, 293 F.3d at 271 (crew member aboard the *M/T Stolt*

*Achievement*); *Marinechance,* 143 F.3d at 217 (seaman aboard the *M/V Ellispontos*); *Aggarao*,

675 F.3d at 360 (seaman aboard the *M/V Asian Spirit*); *Bautista,* 396 F.3d at 1291 (crew

members aboard the *S/S Norway*); *Eternity*, 444 F. Supp. 2d at 349 (crew member aboard the

*M/V Leon I*); *Amizola*, 354 F. Supp. 2d at 691 (second officer aboard the *M/V Ilenao*); *De*

*Joseph*, 196 F. Supp. 2d at 477 (seaman aboard the *M/V Bow Fagus*); *Cruz v. Chesapeake*

*Shipping Inc.*, 738 F. Supp. at 814 (crew members aboard eleven oil tankers).  This is in direct

contrast to most of nineteen of the plaintiffs at issue (the same nineteen who did not sign the

Seafarer Standard Terms).

 The plaintiffs have submitted evidence, uncontroverted by the movants, that fourteen of

the plaintiffs have never worked offshore or on board a vessel during their tenure with the

defendants.[30]  *See* Rec. Docs. 246-2, 246-3.  As to five of the plaintiffs, the plaintiffs have

submitted no evidence of where the plaintiff has worked, but the defendant has submitted no

---

[30]  These fourteen plaintiffs are:  1)  Danilo Acierto, 2) Alberto Arcilla, 3) Zosimo Barroga, 4) Randy Cabuenos, 5) Rogelio Calago, 6) Bonifancio Carreon, 7) Armando Chumacera, 8) Teofilo Erwin Garcia, 9) Benito Llagan, 10) Noel Masikip, 11) Butch Era Perez, 12) Dante Perez, 13) Josue Rabadan, and 14) Marcelo Relota.  *See* Rec. Docs. 246-2, 246-3.

evidence that the plaintiff qualifies as a "seafarer."[31]   Thus, as to the nineteen plaintiffs at issue

here — the nineteen who did not sign the Seafarer Standard Terms — there is no evidence that

any of them is a "seafarer."[32]  This distinction is particularly important in regard to the argument,

discussed *infra*, that the Seafarer Standard Terms are deemed as a matter of Philippine law to be

incorporated into the employment contracts.[33]

In light of these facts, the plaintiffs in the cases cited by the movants (with the exception

of *Bautista*, discussed above[34]) did not dispute that their employment contracts contained an

arbitration (or forum selection) clause.   Consequently, those courts were not called upon to

decide the question presented here.   Given the language of the specific contracts presented in

this case, the Court is simply unable to find as a matter of ordinary contract principles that the

employment contracts themselves contain an arbitration clause, whether by incorporation or

otherwise.  Even if both parties to the contracts were sophisticated in business and proficient in

---

[31]  These five plaintiffs are: 1) Camilo Alagdon, 2) Bienvenido Cruzat, 3) Teodoro Dominguez, 4) Ramil Guevarra, and 5) Roseller Manuel.

[32]  Although the movants have presented no evidence in this regard, plaintiffs concede that Ranel Lamoste and Eduardo Real (the same two plaintiffs who signed the Seafarer Standard Terms) have worked offshore on various spars and platforms during their work for the defendants.  *See* Rec. Docs. 246 at 17, 246-4.  As discussed *infra*, it is unclear whether such work would qualify Lamoste and Real as "seafarers" within the meaning of the POEA rules.

[33]  Unlike the Seafarer Standard Terms, the standard form contract for land-based workers does not require arbitration.  *See* Rec. Doc. 246-6 at ¶ 15.   To the contrary, it appears to expressly permit workers to settle employment related disputes in the host country "at the option of the complaining party."  *Id.*

[34]  In *Bautista,* each of the plaintiffs had signed a copy of the Seafarer Standard Terms, and the Eleventh Circuit relied expressly upon this fact in rejecting the plaintiffs' argument that the arbitration clause had not been effectively incorporated into the employment contracts.  *See* 396 F.3d at 1293, 1300.

reading English, there is simply nothing in the plain language of the contracts that discloses an intent to arbitrate or to incorporate such terms from outside the four corners of the contract. The fact that the plaintiffs are workers who are not proficient in English only reinforces this finding. Thus, as to the nineteen plaintiffs who did not sign the Seafarer Standard Terms,[35] the Court finds that the movants have failed to establish the existence of an agreement in writing to arbitrate.

This does not end the Court's inquiry, however, for the movants now assert (for the first time at oral argument) that even if the plaintiffs did not agree in writing to be bound by the Seafarer Standard Terms or otherwise consent to arbitrate as a matter of ordinary contract principles, arbitration is nevertheless mandated as a matter of Philippine law.

### D.   Is Arbitration Mandated as a Matter of Philippine Law Notwithstanding the Absence of an Agreement in Writing to Arbitrate the Dispute?

At oral argument, movants argued that arbitration is required here as a matter of Philippine law notwithstanding the language of the contract.[36] As a consequence, the Court

---

[35]  These nineteen plaintiffs are:  1)  Danilo Acierto, 2) Camilo Alagdon, 3) Alberto Arcilla, 4) Zosimo Barroga, 5) Randy Cabuenos, 6) Rogelio Calago, 7) Bonifancio Carreon, 8) Armando Chumacera, 9) Bienvenido Cruzat, 10) Teodoro Dominguez, 11) Teofilo Erwin Garcia, 12) Ramil Guevarra, 13) Benito Llagan, 14) Roseller Manuel, 15) Noel Masikip, 16) Butch Era Perez, 17) Dante Perez, 18) Josue Rabadan, and 19) Marcelo Relota.

[36]  See Transcript (Rec. Doc. 272 at 26-27):

MR. NICHAMOFF: .... Your Honor, it's not an adhesion clause.  It's law.  I mean, this is propounded by the government of the Philippines.  It's, for the same reason that the gentlemen that we saw earlier in the conditions they were in, they were there because of law, not because —

THE COURT:   When you say it's the law in the Philippines, are you suggesting to me that there is a statutory provision that says:  Look, we are now going to make it possible for skilled — various skills of Filipino workers to travel to the

ordered post-argument briefing on several issues, including the following:   "Is arbitration

mandated by the statutory law of the Philippines such that plaintiffs are bound to arbitrate

regardless of whether they are found to have consented to arbitration via contract?"   *See* Rec.

Doc. 262.

In response, movants argue that the seafarer standard form of contract used here was

mandatory under POEA rules, and that the POEA rules provide that issues related to the standard

contracts "shall be submitted to Voluntary Arbitration for resolution."[37]   *See* Rec. Doc. 281 at 9-

---

> United States and perhaps elsewhere under some type of treaty or some type of an
> arrangement, and those who do will do so subject to the following provisions.  Is
> that what you're telling me?
>
> MR. NICHAMOFF:  Yes.  It's a labor code.  And for the Phillipines cited in my
> brief and also Exhibit O to plaintiffs' response which is the governing POEA
> rules and regulations governing the employment of land-based overseas.  But the
> labor code's there, and the labor code says that:  Seamen — it says seamen —  are
> going to be subject to special provisions —
>
> THE COURT:   But, if that's the argument, then maybe we should not be
> concerned with incorporated by reference.
>
> MR. NICHAMOFF:  That's correct. That's exactly right.

[37]  At oral argument, the movants asserted that the Fifth Circuit's decision in *Lim*
supported their argument in this regard, because the *Lim* court cited Philippine statutory law in
that case.  Rec. Doc. 272 at 27-28 ("*Lim* didn't just look at the contract, they actually looked —
the court actually looked at the labor code of the Philippines. And they said that's actually in the
contract, too.").  However, the *Lim* court cited the Philippine Migrant Workers Act not in the
context of determining whether the plaintiffs were subject to section 29 of the Seafarer Standard
Terms (either by virtue of agreement or otherwise), but rather in response to the plaintiffs'
arguments in that case that FLSA claims are by their nature incapable of resolution by foreign
arbitration.  *See Lim*, 404 F.3d at 907-08.   Looking to the Migrant Workers Act, the court found
that the NLRC (the party charged in section 29 with arbitrating seafarer's employment claims) is
empowered to hear and decide "claims arising...by virtue of *any law* or contract involving
Filipino workers for overseas deployment."  *Id.* at 908 (emphasis in original).  Therefore, if the
*Lim* plaintiffs' FLSA claims were viable, the court found, the NLRC would be able to decide
them.  *Id.*  Obviously, this application of Philippine statutory law is wholly inapposite here.

10.   However, the POEA rules cited by the movants in support of this argument do not support their contentions.  First, the POEA rule cited by the movants does not make the standard form mandatory, but rather describes the standard forms as "*minimum* separate and distinct standard employment contracts....which shall be the *minimum* requirement in every individual contract approved by the [POEA]."  *See* Rec. Doc. 264-1 at pages 17-18, Part IV, Rule I.  "Parties to the individual employment contract are allowed to stipulate and mutually agree to other terms and conditions more than the minimum standards; provided that the stipulation[s] are mutually beneficial to both parties and are not contrary to law, public policy and morals."  *Id.*  Second, the POEA rule quoted by the movants as requiring arbitration is expressly limited to "disputes involving seafarers and their employers–principals with Collective Bargaining Agreements." *See* POEA Rules and Regulations Governing the Recruitment and Employment of Seafarers, Rec. Doc. 264-1 at page 42, Part VII, Rule I.  The rule states:

> Unresolved disputes involving seafarers and their employers–principals with Collective Bargaining Agreements, arising from the interpretation or implementation of the Standard Employment Contract, the Shipping Article, Collective Bargaining Agreement and the interpretation, enforcement of company personnel policies at the worksite and other employer-employee relations cases involving Filipino seafarers, on the one hand, and the employers, principals and contracting partners, on the other hand, including but not limited to contractual, disciplinary action and other tort cases, shall be submitted to voluntary arbitration for resolution.

*Id.*  Disputes between parties who have no existing Collective Bargaining Agreement are governed by the following paragraph, which states:

---

Notably, the movants do not reassert this argument in their supplemental brief.  *See* Rec. Doc. 281 at 9-10.  The Court also notes that, as in the cases cited by movants in support of their incorporation argument, incorporation of the Standard Terms was not a disputed issue in *Lim.*  It was also undisputed that each of the *Lim* plaintiffs was a "seafarer" assigned to work aboard a particular vessel.  404 F.3d at 900.

> Where the parties, although they have no existing collective bargaining agreement, agrees [sic] to adopt voluntary arbitration as an option to settle their conflicts, the POEA shall assists [sic] them in submitting their respective cases to voluntary arbitration.

*Id.*   No party has suggested that the defendants and plaintiffs here are parties to a collective bargaining agreement.  Certainly no party has submitted evidence of any such agreement.  Thus, the applicable POEA provision would appear to be the second paragraph of Part VII, Rule I, which in no way requires arbitration, but rather leaves to the parties the choice of whether to adopt arbitration to settle their disputes.  *Id.*

The movants also have submitted an *amicus curiae* brief submitted by the Philippines' government in the *Bautista* case and urge this Court to accept this as the official position of the POEA on the issues before this Court.[38]  *See* Rec. Doc. 281-1.  Such reliance would be inappropriate for several reasons.  First, the facts in *Bautista* differed substantially from those here.  Each of the *Bautista* plaintiffs had signed a copy of the Seafarer Standard Terms and there was no dispute that the plaintiffs there (crew members aboard a vessel) qualified as "seafarers" under POEA rules.[39]  Second, the brief itself notes that "the district court had before it several affidavits of Philippine officials and practitioners, which confirm the proper operation of the *Standard Terms*."  Rec. Doc. 281-1 at 6 of 8.  The movants have submitted no such affidavits here.  This Court would welcome the opinions of the POEA in this matter, whether submitted as

---

[38]  The brief asks the *Bautista* court to defer to the Seafarer Standard Terms as a matter of international comity.  *See* Rec. Doc. 281-1.

[39]  *See* discussion *supra* at 24.

*amicus curiae*, witness, or affiant.  However, the Court simply cannot accept the *Bautista* brief

as an expression of what the POEA's position might be in this case, particularly given that the

plaintiffs have submitted a letter from the POEA Administrator, which states that the relevant

provisions Philippine law, including the Seafarer Standard Terms, "do <u>not</u> preclude the

enforcement of laws in an appropriate foreign jurisdiction."  *See* Rec. Doc 290-3 (emphasis

added).

      Finally, the movants cite a Philippine judicial decision, which states that the Seafarer

Standard Terms are "deemed written in the seafarer's contract."  *Nisda v. Sea Serve Maritime*

*Agency* (July 23, 2009), attached as Rec. Doc. 281-2 at page 9 of 18; *see also id.* at page 2 of 18

("Deemed incorporated in petitioner Nisda's [employment contract] is a set of standard

provisions established and implemented by the POEA, called the Amended Standard Terms and

Conditions Governing the Employment of Filipino Seafarers on Board Ocean-Going Vessels.").

Because the movants have submitted no expert testimony on the matter, the Court is unable to

determine what legal effect should be given the court opinion cited.[40]   However, even if the

Court accepts this decision as a pronouncement of Philippine law and therefore accepts that the

Seafarer Standard Terms are "deemed written" into every seafarer's contract, it does not

---

[40]  For example, does the Republic of Philippines have a common law or civil law
system?  Are court decisions a source of law, or are they binding only on the parties to the case?
Is the opinion cited a decision by the highest court?  Has it been reversed, overturned, or
abrogated in any way?  The movants have failed to establish these basic aspects of Philippine
law.

necessarily follow therefrom that the Seafarer Standard Terms are deemed incorporated in the employment contracts of the nineteen plaintiffs at issue here.

The POEA defines a "Seafarer" as follows:   "any person who is employed or engaged in any capacity on board a seagoing ship navigating the foreign seas other than a government ship used for military or non-commercial purposes.  The definition shall include fishermen, cruise ship personnel and those serving on foreign maritime mobile offshore and drilling units."  POEA Rules and Regulations Governing the Recruitment and Employment of Seafarers, Rec. Doc. 264-1 at page 42, Part I, Rule II; *see also* Letter of POEA Administrator (Jan. 11, 2013) at Rec. Doc. 290-3.  The movants have submitted no evidence that any of the nineteen plaintiffs at issue worked on board a vessel or mobile offshore drilling unit.  Indeed, as to fourteen of the plaintiffs, there is substantial evidence that they are not "seafarers," but rather are land-based workers who have never worked aboard a vessel or offshore during their entire tenure with the defendants.[41] *See* Rec. Docs. 246-2, 246-3.   Even as to Ranel Lamoste and Eduardo Real (the two plaintiffs who signed the Seafarer Standard Terms), who have submitted declarations attesting that they have worked offshore on various spars and platforms during their tenure with for the defendants, it is not clear from the record that they qualify as "seafarers" under the POEA rules.[42]  *See* Rec.

---

[41]  *See* discussion *supra* at 24-25.

[42]  Both Lamoste and Real attest that they worked "at whatever offshore platform as needed on a 'project by project' basis."  Rec. Doc. 246-4.  They state that they worked on "several 'spars' or oil platforms."  *Id.*  From the POEA rules and the Administrator's letter, it appears that, similar to United States jurisprudence, Philippine law distinguishes between "mobile" drilling units and drilling platforms.  *See* Rec. Docs. 264-1 at Part I, Rule II, No. 38; 290-1.  In the Fifth Circuit, certain "spars" have been determined to be fixed such that they do not qualify as a vessel for purposes of the Jones Act.  *See Mendez v. Anadarko Petroleum Corp.*,

Doc. 246-4.

This distinction is important, for "seafarers" are treated differently from other overseas workers under Philippine law.  Unlike the Seafarer Standard Terms, the standard form contract for other workers' does not require arbitration.  *See* Employment Contract for Various Skills, Rec. Doc. 246-6 at ¶ 15.   To the contrary, it appears to expressly permit workers to settle employment related disputes in the host country "at the option of the complaining party."[43]  *Id.* The *Nisda* opinion cited by the movants notes this distinction:

> As with all other kinds of worker, the terms and conditions of a seafarer's employment is governed by the provisions of the contract he signs at the time he is hired.  But underlike that of others, deemed written in the seafarer's contract is a set of standard provisions set and implemented by the POEA, called the Standard Terms and Conditions Governing the Employment of Filipino Seafarers on Board Ocean-Going Vessels, which are considered to be the minimum requirements acceptable to the government for the employment of Filipino seafarers on board foreign ocean-going vessels.

---

466 Fed. Appx. 316, 317-19 (5th Cir. 2012), *cert. denied*,  133 S.Ct. 979 (2013); *Fields v. Pool Offshore, Inc.*, 182 F.3d 353, 356-59 (5th Cir. 1999), *cert. denied*, 528 U.S. 1155 (2000). Because the movants have submitted no evidence of Philippine law in this regard, it is unclear whether Lamoste's and Real's work assignments would qualify them as "seafarers."

[43]  The contract provides:

Settlement of disputes:   All claims and complaints relative to the employment contract of the employee shall be settled in accordance with the Company policies, rules and regulations.   In the case the employee contests the decision of the employer, the matter shall be settled amicably with the participation of the Labor Attaché or any authorized representative of the Philippine Embassy /Consulate nearest competent or appropriate government body in host country or in the Philippines if permissible by host country laws at the option of the complaining party.

Rec. Doc. 246-6 at ¶ 15.

*Nisda,* Rec. Doc. 281-2 at page 9 of 18 (emphasis added).

It may be that Philippine law does deem the Seafarer Standard Terms to be part of every contract executed on the seafarer standard form notwithstanding that the plain language of the contract does not reveal this to be so and without regard to whether the employee executing the contract is in fact hired to work as a seafarer.   However, the movants have failed to demonstrate that such is the law of the Philippines.  Certainly they have offered nothing indicating that Philippine law would deem the Seafarer Standard Terms to be incorporated by mere operation of such law into the employment contract of a land-based worker who signs a contract on the standard form designed for seafarers but who never works as a seafarer.   Thus, the Court remains unconvinced that Philippine law *requires* arbitration of the claims here absent an agreement in writing to do so.[44]   For this reason, with respect to the nineteen plaintiffs who did not sign the Seafarer Standard Terms, the motion to compel arbitration is denied without prejudice to the movants' right to reurge their motion with proper support in this regard.

    **E.**    **Fraud and Fraud in the Inducement:**

Even under the Convention, a written arbitration agreement will not be enforced if the arbitration clause itself is the product of fraud.  *See Sedco*, 767 F.2d at 1148 ("[a]bsent allegations of fraud in the inducement of the arbitration clause itself, arbitration must proceed when an arbitration clause on its face appears broad enough to encompass the party's claims");

---

[44]   Accordingly, the Court need not decide whether a stay in favor of arbitration would be permissible under such circumstances.  *See Marinechance*, 143 F.3d at 221 (distinguishing *Randall v. Arabian American Oil Co.,* 778 F.2d 1146 (5th Cir. 1985)).

*Fruedensprung*, 379 F.3d at 341 ("Under the FAA, a written arbitration agreement is prima facie valid and must be enforced unless the opposing party... allege[s] and prove[s] that the arbitration clause itself was a product of fraud, coercion, or such grounds as exist at law or in equity for the revocation of the contract." (internal quotations omitted).   Plaintiffs argue that the arbitration agreements are void for fraud and/or fraud in the inducement.   Because the Court has found that no written arbitration agreement exists as to nineteen of the plaintiffs, the Court need not consider the plaintiffs' argument of fraud as to these plaintiffs.   Thus, this inquiry is relevant only to plaintiffs Ranel Lamoste and Eduardo Real, who each signed a copy of the Seafarer Standard Terms.

### 1.   **Fraud in the Inducement:**

Ignorance by one party of the terms of an agreement may form a basis for nullity if it was induced by the other party.   *American Heritage*, 321 F.3d at 538.   Inducement may be found if the party misrepresented facts, acted in less than good faith, or had notice of the other party's ignorance.   *Id.*  Plaintiffs argue that they were ignorant of the arbitration agreement in the Seafarer Standard Terms because:  (1) they had no opportunity to review the document; (2) the copy provided to them was in illegibly fine print; and (3) they do not read English proficiently. They argue that the movants knew the plaintiffs were unable to read section 29 (the arbitration clause) and therefore had notice of the plaintiffs' ignorance.[45]

---

[45]   The Court assumes without deciding that plaintiffs' arguments of fraud and fraud in the inducement are appropriate for determination by the Court and not reserved to the arbitrators. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402-04 (1967).  Plaintiffs arguments do not go to the contract as a whole.  Yet, neither are they limited to the arbitration

As to plaintiffs Lamoste and Real, the argument fails in several respects.  First, the plaintiffs have submitted no evidence that Lamoste or Real had any trouble reading the Seafarer Standard Terms in general or section 29 in particular.  The declarations of these two plaintiffs do not state that they had no opportunity to review the document before signing it or that the copy provided to them was in illegibly fine print.  *See* Rec. Doc. 246-4.  The only statements contained in these two declarations that relate at all to fraud in the inducement are statements that Lamoste and Real do not read English proficiently.  *Id.*  However, the declarations do not state that either Lamoste or Real was ignorant of the arbitration clause.  *Id.*  Indeed, the declarations of these two plaintiffs do not mention the Seafarer Standard Terms or the arbitration clause in any way.  *Id.*  Thus, the plaintiffs' showing does not even raise a *prima facie* case of fraud in the inducement.

### 2.  **Fraud:**

Plaintiffs also argue that the arbitration agreements here are void due to fraud because the movants intentionally misclassified plaintiffs as "seafarers" in order to implicate section 29 of the Seafarer Standard Terms and thereby force the plaintiffs to arbitrate their claims in the Philippines.   As discussed *supra*, seafarers are treated differently from other overseas workers under Philippine law.   Among other differences, the standard contract terms for non-seafarers do not include an arbitration clause.[46]  As discussed above, there is substantial evidence that several

---

clause.  Rather, they question the validity or applicability of the Seafarer Standard Terms, which include the arbitration clause as well as a multitude of other provisions.

[46]  *See* discussion *supra* at pages 31-33.

of the plaintiffs are not "seafarers," but rather are land-based workers who have never worked aboard a vessel or mobile offshore drilling unit during their entire tenure with the defendants. *See* Rec. Docs. 246-2, 246-3.  It is not clear that even Lamoste and Real qualify as "seafarers." They have submitted declarations attesting that they have worked offshore on various "spars" and platforms during their tenure with for the defendants, "at whatever offshore platform as needed on a 'project by project' basis."  Rec. Doc. 246-4.   Yet, because the showing by both sides has been so poor on the substance of Philippine law, it is not clear whether such spars and platforms would qualify as mobile offshore drilling units under the POEA definition of "seafarer."   *See* discussion *supra* at note 42.

   This unanswered question, however, does not make out a case for fraud.  Although plaintiffs have not even briefed the requirements of fraud under federal common law, fraud generally requires at a minimum:   (1) misrepresentation of a material fact; (2) made with intent to deceive; and (3) justifiable reliance on the misrepresentation by the deceived party.  *See, e.g., Veridyne Corp. v. United States,* 105 Fed. Cl. 769, 795 (Fed. Cl. 2012).[47]   Plaintiffs have presented no evidence or even specific allegations that the movants made any misrepresentation to Lamoste or Real, much less that they did so with the intent to deceive.  They simply argue that the plaintiffs *in globo* were "misclassified" as seafarers and that the only logical reason for the movants to have done so was to benefit from the arbitration clause contained in the Seafarer

---

[47]   Under certain circumstances, fraud can render a contract void *ab initio*; under others, it only renders the contract voidable.  *Veridyne,* 105 Fed. Cl. at 795.

Standard Terms.  Particularly given that Lamoste and Real were issued B-1/OCS visas[48] and

assigned to work offshore, such surmisal falls far short of making out a *prima facie* case of fraud.

Accordingly, the Court finds that the plaintiffs have failed to establish fraud, fraud in the

inducement, or any other infirmity that would prevent the enforcement of the arbitration

agreements entered into between the movants and plaintiffs Ranel Lamoste and Eduardo Real.

Therefore, the instant motion will be granted as to these two plaintiffs.   The only questions

remaining are the scope of the arbitration clause and the scope of the stay.

     **F.**    **Scope of the Arbitration Clause:**

Although the arbitration clause in Section 29 is of the "narrow type"[49] — reaching only

claims "arising from" the employment, rather than all claims "relating to" or "connected with"

the employment[50] — it clearly encompasses at least some of the plaintiffs' claims.   Relying on

*Jones v. Halliburton Co.*, 583 F.3d 228, 240-41 (5th Cir. 2009) and *Doe v. Princess Cruise Lines,*

*Ltd.*, 657 F.3d 1204 (11th Cir. 2011), the plaintiffs argue that only the FLSA and breach of

---

[48] *See* Rec. Doc. 264 at 2-3.  Although no party has briefed the issue, the website for the United States Embassy in Manila contains the following explanation of OCS visas: "B-1/OCS visas are issued to crewmembers of international vessels operating on the Outer Continental Shelf or Gulf of Mexico for more than 29 days."   http://manila.usembassy.gov/wwwhnv02.html (last visited Feb. 26, 2013).

[49] Section 29 states in pertinent part:  "In cases of <u>claims and disputes arising from this employment</u>, ... the parties may at their option, submit the claim or dispute to either the original and exclusive jurisdiction of the National Labor Relations Commission (NLRC)... or to the original and exclusive jurisdiction of the voluntary arbitrator or panel or [sic] arbitrators."  Rec. Doc. 214-4 at § 29 (emphasis added).  The Fifth Circuit has read this to require arbitration of "all claims and disputes arising from the employment...regardless of whether there is a collective bargaining agreement and regardless of whether the parties opt to proceed before the NLRC." *See Francisco*, 293 F.3d at 271 n.1.

[50] *See Pennzoil Exploration and Prod.Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998).

contract claims "arise from" the employment.[51]  *See* Rec. Doc. 246 at 22-24.  They argue that

their other claims (*e.g.*, human trafficking, civil rights violations, RICO violations, and

intentional infliction of emotional distress) do not.

However, the claims at issue in *Jones* and *Doe* differ materially from those here.  Both

*Jones* and *Doe* involved the rape of an off-duty employee by off-duty co-workers following an

after-hours social gathering in employer-provided housing.   As the *Jones* court noted, "in most

circumstances, a sexual assault is independent of an employment relationship."  *Jones*, 583 F.3d

at 236.  Here, in contrast, the bulk of plaintiffs' claims appear to go to the very nature of the

employment relationship.  *See* Rec. Docs. 1, 24, 172, 235, 311.   Plaintiffs argue in sweeping

terms that their claims (other than FLSA and breach of contract) do not arise from their

employment, but they fail to discuss any particular claim or explain why it falls outside the scope

of the arbitration clause.[52]

Although several of the plaintiffs' claims are statutory, Courts have found most of these

claims to be subject to arbitration.[53]  The Court has found no case law addressing the question of

whether claims under the Trafficking Victims Protection Act of 2003 (18 U.S.C. §§ 1589-90)

and/or the Klu Klux Klan Act of 1871 (42 U.S.C. § 1985) are capable of settlement by

---

[51]  The Fifth Circuit has held that FLSA claims are subject to arbitration under section 29.
*See Lim*, 404 F.3d at 907-08.

[52]  One could argue that the false imprisonment claim is based on conduct outside the
employment relationship, as it relates to alleged physical restraint in a bunkhouse after work
hours.  However, this claim is not asserted against the two defendants at issue here.

[53]  *See, e.g.*, *Alford v. Dean Witter Reynolds, Inc*., 939 F.2d 229, 230 (5th Cir.1991)
(employment discrimination claims based on race and gender subject to arbitration); *Lim*, 404
F.3d at 907-08 (FSLA claims subject to arbitration); *Shearson/American Exp., Inc. v. McMahon*,
482 U.S. 220 (1987) (RICO claims subject to arbitration).

arbitration.[54]   However, the plaintiffs have failed to present any argument suggesting to the contrary.   Accordingly, because these claims arise out of the plaintiffs' employment, this question must remain for the arbitrators to decide.

> **G.**     **Scope of the Stay**:

Having determined that Lamoste's and Real's claims against the movants fall within the arbitration clause and are subject to the arbitration, the Court will enter a stay that shall apply only to those particular claims.   The claims of all other plaintiffs will proceed in their normal course, as will the claims of Lamoste and Real against all other defendants.   *See Girard v. Drexel Burnham Lambert, Inc*., 805 F.2d 607, 611 (5th Cir. 1986) (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985)).

**III. CONCLUSION**:

Accordingly, for the foregoing reasons;

**IT IS ORDERED** that:

1)  The "Motion to Dismiss for Improper Venue under 12(b)(3) or, Alternatively, Motion to Compel Arbitration and Stay Proceedings Pending Arbitration" **(Rec. Doc. 214),** filed by defendants V People and POMI, is hereby **GRANTED IN PART**, in that it is granted with respect to the claims of Ranel Lamoste and Eduardo Real against V People and POMI, and **DENIED IN PART**, in that it is denied with respect to the claims of the following plaintiffs:  1) Danilo Acierto, 2) Camilo Alagdon, 3) Alberto Arcilla, 4) Zosimo Barroga, 5) Randy Cabuenos, 6) Rogelio Calago, 7) Bonifancio Carreon, 8) Armando Chumacera, 9) Bienvenido Cruzat, 10)

---

[54]  *See Lim*, 404 F.3d at 907-08 (setting forth the test for demonstrating that a statutory claim is not subject to arbitration).

Teodoro Dominguez, 11) Teofilo Erwin Garcia, 12) Ramil Guevarra, 13) Benito Llagan, 14)

Roseller Manuel, 15) Noel Masikip, 16) Butch Era Perez, 17) Dante Perez, 18) Josue Rabadan,

and 19) Marcelo Relota.   This denial shall be without prejudice to the right of the movants to

reurge the motion, properly supported on the issue of Philippine law.

       2)   Ranel Lamoste and Eduardo Real are hereby directed to arbitrate their claims

against V People and POMI in accordance with their agreement.

       3)   The claims of Ranel Lamoste and Eduardo Real against V People and POMI

are hereby **STAYED** pending the completion of arbitration of such claims.  All other claims,

including those of Ranel Lamoste and Eduardo Real against other defendants, shall proceed in

this Court.

       New Orleans, Louisiana, this 27th day of February, 2013.

 

**KURT D. ENGELHARDT**
**UNITED STATES DISTRICT JUDGE**