UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ISIDRO BARICUATRO, JR. ET AL.                    CIVIL ACTION

VERSUS                                           NO. 11-2777

INDUSTRIAL PERSONNEL AND                         SECTION "N" (2)
MANAGEMENT SERVICES, INC. ET AL.

## ORDER AND REASONS ON MOTION

The court previously granted in part defendant Industrial Personnel and
Management Services, Inc.'s ("Industrial") Motion to Compel Discovery, Record Doc.
No. 404, and ordered plaintiffs to provide a full and complete log of materials they are
withholding from discovery on privilege or work product grounds, as required by Fed.
R. Civ. P. 26(b)(5).  Record Doc. No. 422.  Defendant's motion was deferred in part
insofar as it seeks to compel production of materials responsive to Requests for
Production Nos. 1 through 5 (materials submitted by plaintiffs and/or their counsel to
various governmental agencies of the Phillippines and the United States). The motion
was denied insofar as these materials relate to the Black Elk explosion, which forms no
part of the claims or defenses asserted in this lawsuit.  Plaintiffs' relevance objections
were sustained and defendant's motion was denied as to responsive materials concerning
the Black Elk explosion, which plaintiffs need not produce.  Determination of the motion
was deferred as to plaintiffs' work product objections asserted in response to Requests
for Production Nos. 1 through 5.

As ordered, plaintiffs provided the court and the parties with privilege logs asserting their work product objections and with declarations under penalty of perjury of their attorneys Ellaine A. Carr and Jeanette A. Donnelly, Record Doc. Nos. 435 and 436, respectively, in support of their contentions that the withheld documents were prepared in anticipation of litigation or for trial preparation or otherwise constitute protected work product. Plaintiffs provided the withheld documents, which consist entirely of e-mail correspondence, to the court for my in camera review. They argued in their original memorandum in opposition to the instant motion that work product protection was <u>not</u> waived when their counsel communicated with representatives of two Philippines government agencies and three United States government agencies because the communications were intended to assist those agencies in anticipation or in aid of possible litigation or criminal investigations against common adversaries, namely, the defendants in this action.

Industrial filed a timely memorandum in response to plaintiffs' declarations and privilege logs. Record Doc. No. 443. Defendant argues that Carr's and Donnelly's declarations are conclusory and fail to carry their evidentiary burden to establish that the withheld documents are work product. Industrial asserts that communications <u>from</u> the government agency representatives to plaintiffs or their counsel cannot be considered the work product of plaintiffs' attorneys. Defendant further contends that, even if some of the documents authored by plaintiffs' counsel are work product, the protection was

waived when the attorneys voluntarily disclosed information to representatives of the Philippines and United States governments.  Industrial also argues that waiver occurred when (1) the Philippines Overseas Employment Agency produced to defendants in this case some documents containing communications from plaintiffs' counsel, see Exhibits 3 and 9, Record Doc. Nos. 374-2 and 374-5, attached to defendant DNR Offshore and Crewing Services, Inc.'s supplemental memorandum in support of its motion to compel arbitration, and (2) plaintiffs produced to defendants some documents that they had submitted to the United States Department of Homeland Security ("Homeland Security"). See Defendant's Exhs. 1 through 12, Record Doc. Nos. 439-5, 460-3.

Having reviewed the record, the documents submitted for in camera review, the submissions of the parties and the applicable law, and for the following reasons, IT IS ORDERED that the deferred portion of defendant's motion is GRANTED IN SUBSTANTIAL PART AND DENIED IN VERY LIMITED PART, as follows.

Initially, I find that the following documents produced for in camera review are related to the Black Elk explosion, are irrelevant to the claims and defenses in this action and need not be produced to defendant:

| BATES NUMBER(S) | DATE(S) | FROM | TO |
|---|---|---|---|
| CARR-00070 | 12/20/12 | Ellaine Carr | Hans Cacdac, and Cacdac's reply |
| CARR-00083 | 12/20/12 | Carr | Cacdac |
| CARR-00089-98 | 01/21/13 | Carr | Luzviminda Padilla |
| CARR-00099-108 | 06/04/13 | Padilla | Carr |

3

A.    The Parameters of the Work Product Doctrine

Plaintiffs, as the parties resisting discovery, bear the burden of proof to demonstrate the existence of any privilege in the materials, including application of the work product doctrine.  United States v. Newell, 315 F.3d 510, 525 (5th Cir. 2002); In re Santa Fe Int'l Corp., 272 F.3d 705, 710 (5th Cir. 2001); Hodges, Grant & Kaufman v. United States, 768 F.2d 719, 721 (5th Cir. 1985); Ingraham v. Planet Beach Franchising Corp., No. 07-3555, 2009 WL 1076717, at *1 (E.D. La. Apr. 17, 2009); Kiln Underwriting Ltd. v. Jesuit High Sch., No. 06-04350, 2008 WL 108787, at *4-5 (E.D. La. Jan. 9, 2008) (citing Hodges, 768 F.2d at 721); United States v. Impastato, No. 05-325, 2007 WL 2463310, at *2 (E.D. La. Aug. 28, 2007) (citing United States v. Harrelson, 754 F.2d 1153, 1167 (5th Cir. 1985); United States v. Kelly, 569 F.2d 928, 938 (5th Cir. 1978)).  This is an evidentiary burden, which plaintiffs have tried to meet with the declarations of their attorneys, Carr and Donnelly.

Work product protection from discovery extends to "documents and tangible things that are prepared in anticipation of litigation or for trial by or for [a] party or its representative (including the . . . party's attorney . . . or agent)," Fed. R. Civ. P. 26(b)(3)(A), but does not extend to the "underlying relevant facts."  Blockbuster Entm't Corp. v. McComb Video, Inc., 145 F.R.D. 402, 403 (M.D. La. 1992) (citing United States v. El Paso Co., 682 F.2d 530, 542 (5th Cir. 1982); Hill Tower, Inc. v. Dep't of

4

Navy, 718 F. Supp. 562, 566 (N.D. Tex. 1988)); accord 8 C.A. Wright, A.R. Miller &

R.L. Marcus, Federal Practice and Procedure § 2024, at 494 (3d ed. 2010).

The work product "privilege can apply where litigation is not imminent, as long

as the primary motivating purpose behind the creation of the document was to aid in

possible future litigation." Udoewa v. Plus4 Credit Union, 457 F. App'x 391, 393 (5th

Cir. 2012) (quoting In re Kaiser Alum. & Chem. Co., 214 F.3d 586, 593 (5th Cir. 2000))

(internal quotation omitted) (emphasis added).

"The mere fact that a document is prepared when litigation is foreseeable does not

mean the document was prepared in anticipation of litigation . . . ." Arkwright Mut. Ins.

Co. v. Nat'l Union Fire Ins. Co., 19 F.3d 1432, 1994 WL 58999, at *3 (6th Cir. 1994)

(citing Nat'l Union Fire Ins. Co. v. Murray Sheet Metal Co., 967 F.2d 980, 984 (4th Cir.

1992)).   Even "[e]stablishing that a document was prepared after litigation was

commenced is insufficient to prove that the document was prepared in anticipation of

litigation. . . .  What is crucial is that 'the primary motivating purpose behind the creation

of the document was to aid in possible future litigation.'"  Robinson v. Tex. Auto.

Dealers Ass'n, 214 F.R.D. 432, 449 (E.D. Tex. 2003) (quoting In re Kaiser Alum., 214

F.3d at 593) (emphasis added), rev'd on other grounds, 2003 WL 21911333 (5th Cir. July

25, 2003); accord Global Oil Tools, Inc. v. Barnhill, No. 12-1507, 2013 WL 1344622,

at *6 (E.D. La. Apr. 3, 2013); Guzzino v. Felterman, 174 F.R.D. 59, 63 (W.D. La. 1997);

Blockbuster, 145 F.R.D. at 404.

In addition, "[t]he law is settled that 'excluded from the work product doctrine are materials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation.'" Guzzino, 174 F.R.D. at 62 (quoting United States v. El Paso Co., 682 F.3d 530, 542 (5th Cir. 1982) (citing Fed. R. Civ. P. 26(b)(3) advisory committee notes)); accord 8 C.A. Wright, A.R. Miller & R.L. Marcus, Federal Practice and Procedure § 2024, at 503 (3d ed. 2010); see also Hill Tower, Inc., 718 F. Supp. at 565 ("The mere fact this report deals with facts, opinions, and recommendations that later may be the focus of litigation does not establish that there was the expectation of litigation when this document was drafted.") (citing Senate of P.R. v. U.S. Dep't of Justice, 823 F.2d 574, 586 (D.C. Cir. 1987); Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 865 (D.C. Cir. 1980)).

Thus, "[i]f the document would have been created regardless of whether the litigation was also expected to ensue, the document is deemed to be created in the ordinary course of business and not in anticipation of litigation." Global Oil Tools, 2013 WL 1344622, at *6 (citing S. Scrap Mat'l Co. v. Fleming, 2003 WL 21474516, at *6 (E.D. La. June 18, 2003); Piatkowski v. Abdon Callais Offshore, L.L.C., No. 99-3759, 2000 WL 1145825, at *1 (E.D. La. Aug, 11, 2000)).

If the party claiming the protection of the work product doctrine carries its burden to establish that the materials were created in anticipation of litigation and are work product, the party who seeks the discovery then must bear its own evidentiary burden to

show both that it has substantial need for the materials to prepare its case and that it cannot, without undue hardship, obtain the substantial equivalent of the materials by other means. Hunkin v. Cooper/T. Smith Stevedoring Co., No. 08-456, 2010 WL 93856, at *2 (W.D. La. Jan. 7, 2010) (citing Fed. R. Civ. P. 26(b)(3); In re Int'l Sys. & Controls Corp. Secs. Litig., 693 F.2d 1235, 1240 (5th Cir. 1982); Hodges, 768 F.2d at 721); accord Ferko v. Nat'l Ass'n For Stock Car Auto Racing, Inc., 219 F.R.D. 396, 400 (E.D. Tex. 2003) (citing same cases).

Even if the discovering party is able to meet that burden, opinion work product merits special protection from discovery pursuant to Rule 26(b)(3)(B). "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." United States v. Nobles, 422 U.S. 225, 238-39 (1975).

> Nonetheless, when a party is ordered to produce its work product because the discovering party has made the showing mandated by Rule 26(b)(3)(A)(i) and (ii), Rule 26(b)(3)(B) requires the court to "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Thus, tangible materials that contain the mental impressions, conclusions, opinions or legal theories of a party's attorney or representative, otherwise known as "opinion work product," are afforded a high degree of protection.

In re Katrina Canal Breaches Consol. Litig., No. 05-4182, 2010 WL 2522968, at *1 (E.D. La. June 14, 2010) (additional quotation omitted) (citing Upjohn Co. v. United States, 449 U.S. 383, 395-96 (1981); Dunn v. State Farm Fire & Cas. Co., 927 F.2d 869, 875

(5th Cir. 1991); <u>Int'l Sys. & Controls Corp. Sec. Litig.</u>, 693 F.2d at 1240; <u>Bonneau v. F & S Marine, Inc.</u>, No. 09-3336, 2010 WL 1254552, at *2 (E.D. La. Mar. 25, 2010); <u>Bross v. Chevron U.S.A. Inc.</u>, No. 06-1523, 2009 WL 854446, at *5 (W.D. La. Mar. 25, 2009); <u>Blockbuster</u>, 145 F.R.D. at 403-04) (additional citations omitted).

     B.   <u>Waiver of Work Product Protection</u>

Plaintiffs contend that their attorneys did not waive the protection of the work product doctrine when counsel communicated with the Philippines and United States government agencies.  Industrial has not seen the documents, but argues that communications <u>from</u> the government representatives to plaintiffs' counsel cannot be considered the work product of plaintiffs' attorneys.  Defendant further contends that, even if some of the documents authored by plaintiffs' counsel are work product, the protection was waived when the attorneys voluntarily disclosed information to representatives of the Philippines and United States governments.

"The work product doctrine does not exist to protect a confidential relationship but to promote the adversary system by 'safeguarding the fruits of an attorney's trial preparations from the discovery attempts of an opponent.'" <u>Id.</u> at 404 (quoting <u>Shields v. Sturm, Ruger & Co.</u>, 864 F.2d 379, 382 (5th Cir. 1989)).  For this reason, "'the mere voluntary disclosure to a third person is insufficient in itself to waive the work product privilege.'" <u>In re Grand Jury Proceedings</u>, 43 F.3d 966, 970 (5th Cir. 1994) (quoting <u>Shields</u>, 864 F.2d at 382).

> Voluntary disclosure waives the attorney-client privilege because it is inconsistent with the confidential attorney-client relationship. Voluntary disclosure does not necessarily waive work-product protection, however, because it does not necessarily undercut the adversary process. Nevertheless, disclosing work product to a third party can waive protection if "such disclosure, under the circumstances, is inconsistent with the maintenance of secrecy from the disclosing party's adversary." Under this standard, the voluntary disclosure of attorney work product to an adversary or a conduit to an adversary waives work-product protection for that material.

United States v. Deloitte LLP, 610 F.3d 129, 139-40 (D.C. Cir. 2010) (citing United States v. Am. Tel. & Tel. Co., 642 F.2d 1285, 1299 (D.C. Cir. 1980)) (quoting Rockwell Int'l Corp. v. U.S. Dep't of Justice, 235 F.3d 598, 605 (D.C. Cir. 2001)) (emphasis added); accord Secs. & Exch. Comm'n v. Brady, 238 F.R.D. 429, 444 (N.D. Tex. 2006); Varel v. Banc One Capital Partners, Inc., No. CA3:93-CV-1614-R, 1997 WL 86457, at *2 (N.D. Tex. Feb. 25, 1997) (citing Edwards v. Whitaker, 868 F. Supp. 226, 229-30 (M.D. Tenn. 1994); McMorgan & Co. v. First Cal. Mortg. Co., 931 F. Supp. 703, 709 (N.D. Cal. 1996); First Pac. Networks, Inc. v. Atl. Mut. Ins. Co., 163 F.R.D. 574, 582 (N.D. Cal. 1995); Hartford Fire Ins. Co. v. Pure Air on the Lake Ltd., 154 F.R.D. 202, 211 (N.D. Ind. 1993); 8 C.A. Wright & A.R. Miller, Federal Practice and Procedure § 2024 (1970)).

In this case, the waiver question arises in the context of communications by plaintiffs' attorneys with United States and Philippines government agencies. The relevant case law on this issue was recently and cogently summarized as follows:

9

The issue of whether a waiver has occurred has frequently arisen when disclosure of work product is made to a governmental authority–usually a law enforcement agency.   A waiver will be found if the governmental agency was an adversary, a "potential adversary" or even just "stood in an adversarial position" with respect to the disclosing party.  See, e.g., In re Steinhardt, 9 F.3d at 234; In re Columbia/HCA Healthcare Corp. Billing Practices Litig., 293 F.3d 289, 306 (6th Cir. 2002); United States v. Mass. Inst. of Tech., 129 F.3d 681, 687 (1st Cir. 1997) ("MIT"); In re Leslie Fay Companies, Inc., Sec. Litig., 152 F.R.D. 42, 45 (S.D.N.Y. 1993). In other instances, the issue is decided based on whether the disclosure to the governmental agency would "materially" or "substantially" increase the likelihood that the disclosing party's adversary would obtain the information–regardless of whether the governmental agency was itself in an adversarial position to the disclosing party.  See, e.g., U.S. Info. Sys., 2002 WL 31296430, at *4; Sidari v. Orleans County, [No. 95-CV-7250,] 2000 WL 33407343, at *8 (W.D.N.Y. Oct. 3, 2000).

The doctrine has been softened by those courts recognizing that when material is disclosed to the government under an express agreement that it be kept confidential, the disclosure will not waive later assertions of work product protection.  See, e.g., Maruzen Co., Ltd. v. HSBC USA, Inc., 2002 WL 1628782, at *2 (S.D.N.Y. July 23, 2002) (citing cases); cf. In re Steinhardt, 9 F.3d at 236 ("Establishing a [per se waiver rule] would fail to anticipate . . . situations in which the [government agency] and the disclosing party have entered into an explicit agreement") (dictum); but see In re Columbia/HCA, 293 F.3d at 306 (finding waiver even where confidentiality agreement existed) (citing Westinghouse Elec. Corp. v. Republic of Philippines, 951 F.2d 1414, 1431 (3d Cir. 1991)).  In addition, courts have also found no waiver when the disclosure of information to the government was to assist in litigation against a common opponent.  See, e.g., AT & T, 642 F.2d at 1299-1300; In re Visa Check/Mastermoney Antitrust Litig., 190 F.R.D. at 314.

Bank of Am., N.A. v. Terra Nova Ins. Co., 212 F.R.D. 166, 170-71 (S.D.N.Y. 2002).

Although the parties focus their arguments on whether plaintiffs waived the work product protection by communicating with the agency representatives, none of the cases cited by either side or that my research has located applies to the documents produced

for my in camera review.  Here, the withheld documents (with the exception of a few attachments) consist of e-mails between plaintiffs' attorneys and third parties.

In all of the cases dealing with the question of waiver by production to a government agency, regardless of the outcome, the documents at issue consisted of pre-existing reports, documents or tape recordings, not correspondence between a party's attorney and a third-party government agent that revealed the attorney's strategy, thoughts or requests regarding the instant litigation.  See In re Columbia/HCA Healthcare Corp. Billing Practices Litig., 293 F.3d 289, 291-92 (6th Cir. 2002) (Columbia/HCA, either in response to or anticipation of a Department of Justice investigation, conducted internal audits of its Medicare patient records and eventually provided the audits to the DOJ during negotiations to settle the fraud investigation.  After the settlement, private insurance companies and private individuals sued Columbia/HCA and sought production of the audits.); In re Steinhardt Partners, L.P., 9 F.3d 230, 232 (2d Cir. 1993) (During an investigation, the SEC asked Steinhardt's counsel to submit a memorandum addressing the facts, issues and relevant legal theories, which counsel voluntarily did.  Plaintiffs in a subsequently filed class action against Steinhardt sought production of the memorandum.); Bank of Am., 212 F.R.D. at 168 (Plaintiffs sought documents created by defendant's counsel and its financial consultant during an internal investigation conducted before this lawsuit began.  The consultant revealed his findings to the New York State Insurance Department and the United States Attorney, and defendant

11

produced the documents created during the investigation to the United States pursuant

to a grand jury subpoena.); In re Bank One Sec. Litig., 209 F.R.D. 418,  421-22 (N.D. Ill.

2002) (Plaintiffs seek documents created by Bank One and its auditor in response to an

investigation by the Office of the Comptroller of the Currency, which were submitted to

the OCC prior to the commencement of litigation.); Secs. & Exch. Comm'n v. Vitesse

Semiconductor Corp., 771 F. Supp. 2d 310, 312 (S.D.N.Y. 2006) (Before the SEC filed

the lawsuit, it notified a distributor of defendant that it was investigating defendant, and

subpoenaed the distributor for documents related to defendant.  The distributor hired a

law firm, which hired a forensic accountant, to investigate the distributor's relationship

with the defendant.  The law firm provided a final report of its findings to the distributor

and the distributor gave the report to the SEC.  Defendants seek production of the report

and its underlying documents from the non-party distributor, its law firm and

accountant.); Sidari, 2000 WL 33407343, at *6 (Defendants seek two tape recordings of

potential witnesses and a transcript of one of the recordings that plaintiff and his attorney

created and then voluntarily provided to an FBI agent and the United States Attorney.);

In re Visa Check/MasterMoney Antitrust Litig., 190 F.R.D. at 312 (The Department of

Justice intervened to seek access to plaintiffs' counsels' analyses of millions of

documents that defendants produced in both this litigation and the government's antitrust

action against defendants.  Plaintiffs' counsel are willing to provide the analyses,

provided that doing so will not waive their work product protection.); Global Oil Tools,

Inc. v. Barnhill, No. 12-1507, 2013 WL 1344622, at *3 (E.D. La. Apr. 3, 2013) (Before filing suit, plaintiff hired a forensic accountant to generate an accounting report of suspicious transactions by its former president, the defendant in this case).

C.     The Declarations and Privilege Logs

There are three privilege logs regarding documents sent and received by Carr or by another attorney in her office, Mark Seghers, to (1) Luzviminda Padilla, Philippines Labor Attaché of the Philippines Embassy in Washington, D.C., consisting of documents stamped with Bates Nos. CARR-0086 through 00108; (2) Hans Cacdac, Administrator of the Overseas Employment Agency ("Overseas Agency"), consisting of documents stamped with Bates Nos. CARR-00064 through 00085; and (3) Special Agent Amanda Smith of the United States Department of Homeland Security ("Homeland Security"), consisting of documents stamped with Bates Nos. CARR-00001 through 00063.[1]  There is one privilege log regarding documents sent and received by Donnelly, which are stamped with Bates No. FH-DONN-00001 through 00083.

Carr states in her declaration that she first "met the Plaintiffs who initiated this case in the last quarter of 2010."  Record Doc. No. 436 at ¶ 3.  She declares that she

---

[1]There are some errors in the privilege logs.  All of the documents listed on the Carr/Smith privilege log as having dates of 7/9/12 through 7/27/12 are actually dated in August (the eighth month), not July, of 2012.  All of the documents have been stamped with Bates Numbers, but none of the logs contain those numbers or even an accurate description of the content of each document, which makes it difficult to correlate particular documents with their log entries.  After attempting to correlate all of the documents with their respective logs, there are two documents in the Donnelly documents that I cannot locate on the log, and there are eight entries on the log that I cannot match with any document.

referred plaintiffs on an unspecified date to the law offices of Ronald L. Wilson and David A. Dalia, who filed the initial complaint on November 8, 2011. Id. at ¶ 5.

Carr's declaration is notable for what she does not say. She does not state that she was retained to advise plaintiffs regarding or had any specific role in preparing for or participating in the instant litigation, until she traveled to the Philippines in May 2012 to communicate with Cacdac specifically regarding issues of jurisdiction and arbitration in this case and enrolled as counsel of record on May 29, 2012. Record Doc. No. 436 at ¶¶ 8, 9. My review of the documents submitted for in camera review indicates that Carr's primary function before that date was to handle issues regarding the immigration status of workers who had left the employ of defendant Grand Isle Shipyard, including arranging for them to receive "deferred action," "continued presence" and "T visas."

Plaintiffs' counsel Donnelly states in her declaration that she first learned of plaintiffs' claims in late March 2012, when plaintiffs fired Wilson and Dalia and hired her firm Fishman Haygood et al. "and Ellaine Carr & Associates, P.L.L.C., to represent them in this matter." Record Doc. No. 435 at ¶ 4 (emphasis added). Donnelly's declaration thus indicates, as do the documents I have reviewed, that prior to March 2012, Carr's role was not primarily involved with this litigation.

Donnelly declares that she enrolled as counsel of record on May 29, 2012 and that she did not learn until mid-May 2012 that both Dorothy "Dee" Taylor, an Assistant United States Attorney, and Homeland Security Agent Smith were investigating

14

defendants' conduct as alleged by plaintiffs in the instant case to evaluate whether defendants may have violated any criminal laws and/or administrative regulations. She states that she learned on August 8, 2012 that Smith and Taylor were conducting an interdepartmental investigation of defendants.

Donnelly says she learned on November 20, 2012, after the Black Elk explosion, that Naixa Franquiz of the United States Department of Labor had also begun investigating whether defendants' conduct had violated any criminal laws and/or administrative regulations, and that Franquiz was also participating in an interdepartmental investigation with the Homeland Security and Justice Departments. Donnelly states that she shared information with all three agencies "to assist the federal government's investigation in anticipation of possible criminal litigation against Defendants, our common adversaries." Record Doc. No. 435 at ¶ 11 (emphasis added).

Donnelly further avers that, unrelated to the pending government investigations, she contacted the Office of Chief Counsel at the IRS in February 2013 and spoke to Joe Ineich, Senior Counsel in that office in New Orleans, "seeking legal advice regarding Plaintiffs' tax fraud allegations in the civil action." Id. at ¶¶ 12, 13. She states that she met with him in March 2013 and "shared information with him regarding Plaintiffs' tax fraud allegations, and sought his advice in preparation for and anticipation of Plaintiffs' civil litigation." Id. at ¶ 13. Soon after that meeting, she "learned that the IRS was initiating an investigation into Defendants' conduct as alleged by Plaintiffs in this civil

litigation and evaluating whether Defendants' conduct violated any federal tax laws."
She later learned that the IRS had begun working with Smith and Taylor in an
interdepartmental investigation.  <u>Id.</u> at ¶ 14.

In light of Carr's conclusory and vague declaration and my in camera review of
the withheld documents, I find that plaintiffs have failed to carry their burden to show
that any documents sent or received by Carr or Seghers before March 2012 were
<u>primarily</u> motivated by or prepared in anticipation of litigation.  Indeed, plaintiffs'
evidence fails even to establish <u>when</u> litigation was reasonably anticipated.  I find that
litigation was not reasonably anticipated until one month before the filing of the
complaint on November 8, 2011, which is the only concrete date in the evidentiary
record.  Thus, none of the withheld documents dated before October 8, 2011 can be work
product.

Plaintiffs have cited no law, and my research has located none, to support their
contention that the e-mails <u>from</u> any government agent to Seghers, Carr or Donnelly are
work product.  Because these documents are <u>not</u> plaintiffs' work product, plaintiffs
cannot claim the protection of the work product doctrine for any of them.

C.   <u>Carr's Documents</u>

1.   <u>Plaintiffs' Attorneys' Communications to Padilla</u>

Even if plaintiffs could establish that they reasonably anticipated litigation before
October 8, 2011, I find that <u>none</u> of Carr's and Seghers's e-mails <u>to</u> Padilla are work

product.  Nothing in the written exchanges between these attorneys and Padilla supports Carr's conclusory declaration that she communicated with Padilla "to request assistance for the plaintiffs in the United States and request documents in anticipation of this civil litigation" in December 2010.  Record Doc. No. 436 at ¶ 4.

Accordingly, I find that plaintiffs have failed to carry their evidentiary burden to establish that the documents numbered CARR-00086 through 00088 are work product. I find that these documents are <u>not</u> work product and must be produced to Industrial, <u>except</u> that the third, fourth and fifth sentences of Padilla's reply on March 28, 2011, CARR-00087 (beginning with "But I" through "correct?"), which refer to non-parties, are irrelevant to this litigation and must be redacted before production.  I have previously found that the remainder of the Padilla documents are irrelevant to this litigation.

### 2.   Carr's Communications with Cacdac

Carr declares that she traveled to the Philippines in May 2012 to communicate with Cacdac to seek clarification of the Overseas Agency's position regarding issues of jurisdiction and arbitration that had been raised by defendants in this case.  She states that plaintiffs "entered into the record of this case the letter that Mr. Cacdac wrote on Plaintiffs' behalf with respect to the arbitration issue."  Record Doc. No. 436 at ¶¶ 9, 13.

The e-mails between Carr and Cacdac dated December 20 through December 22, 2012 (CARR-00067-69, 00071-72, 0079-82 and 00084-85) and February 27, 2013 (CARR-00066 and 0075-77) confirm that she requested from him "a Declaration

17

clarifying these issues" as described in the attached letter from Carr's co-counsel in this action, Joseph Peiffer; that she included a draft declaration for him to review and revise as he saw fit; and that she reported the court's eventual ruling to him.  (Neither Peiffer's letter nor the draft declaration was produced to me in camera.)  Cacdac's letter to Carr dated January 11, 2013 regarding the Overseas Agency's clarification of its Rules and Regulations Governing the Employment of Land-Based Overseas Workers was filed in the record in support of plaintiffs' opposition to defendants' motion to compel arbitration.  Record Doc. No. 290-3 at pp. 2-3.  Thus, it is clear that these e-mails from Carr to Cacdac were primarily motivated by litigation purposes.

Cacdac's responses reveal that, although he was receptive to Carr's request, he was acting in the interest of the Overseas Agency, not as an "agent" of plaintiffs or their attorneys for purposes of Fed. R. Civ. P. 26(b)(3).  Plaintiffs do not contend that he was their agent for this purpose.  As previously stated, Cacdac's communications to Carr are not plaintiffs' work product and are not protected from discovery.

Plaintiffs appear to contend that they did not waive their work product protection in Carr's communications to Cacdac because they shared common litigation interests with the Overseas Agency against defendants.  See Bank of Am., 212 F.R.D. at 171 (citing Am. Tel. & Tel. Co., 642 F.2d at 1299-1300; In re Visa Check/MasterMoney Antitrust Litig., 190 F.R.D. at 314) ("courts have also found no waiver when the disclosure of information to the government was to assist in litigation against a common

opponent"); <u>In re Visa Check/MasterMoney Antitrust Litig.</u>, 190 F.R.D. at 314 ("Plaintiffs' counsel's sharing its analyses of discovery materials with the Government, which is litigating and investigating sufficiently related claims against the same defendants, would not substantially increase the likelihood of [defendants'] obtaining the documents" and therefore did not waive work product protection.).

First, as indicated by the case law reviewed above, the question of waiver does not even arise in this context because Carr's correspondence to third-party Cacdac, although motivated by litigation purposes, is not work product of the sort protected by the work product doctrine. Her communications with him are essentially no different than those of an attorney seeking any kind of evidence from a non-party, non-agent for use in a lawsuit. Carr's correspondence to Cacdac is not the type of document, such as an audit report or confidential, in-house document, that the waiver case law has considered as work product.

Second, even if Carr's e-mails to Cacdac are considered work product, nothing in her conclusory declaration or in the documents produced to me establishes any common litigation interests between the Overseas Agency and plaintiffs in <u>this</u> lawsuit. The only proceeding initiated by the Overseas Agency that is mentioned in plaintiffs' memorandum in opposition to Industrial's motion to compel is an administrative action arising out of the Black Elk explosion, which is <u>not</u> at issue in the instant case. Unlike the two cases that plaintiffs cite, nothing in the correspondence suggests that the

Overseas Agency was pursuing any action against defendants that might be co-extensive with plaintiff's allegations in this case.  See Bank of Am., 212 F.R.D. at 168 (defendant's confidential, pre-existing documents were produced to the United States pursuant to a grand jury subpoena during an investigation); In re Visa Check/MasterMoney Antitrust Litig., 190 F.R.D. at 311, 314 (two agencies of the United States had investigated Visa and MasterCard and the Justice Department's antitrust suit against them was pending, in which "the Government is litigating and investigating sufficiently related claims against the same defendants").

In addition, there is no evidence that Cacdac and Carr had any confidentiality agreement regarding their communications.  This means that plaintiffs had no assurance that Cacdac, whose responsibility is to act in the interest of his agency, might not reveal Carr's communications to defendants at some point when it suited his agency's interests and thus act as "a conduit to an adversary," which weakens plaintiffs' claim that they did not waive their work product privilege in Carr's e-mails.  Deloitte LLP, 610 F.3d at 140. To the extent that any of Carr's e-mails to Cacdac reveal her thoughts, strategy or opinions regarding the instant litigation, she voluntarily transmitted that information to a third party and cannot now claim the protection of the work product doctrine.

> Even more than attorney-client privilege waiver, waiver of the protections afforded by the work product doctrine is a tactical litigation decision.  Attorney and client both know the material in question was prepared in anticipation of litigation; the subsequent decision on whether or not to "show your hand" is quintessential litigation strategy.  Like

attorney-client privilege, there is no reason to transform the work product doctrine into another "brush on the attorney's palette," used as a sword rather than a shield.

In re Columbia/HCA Healthcare Corp. Billing Practices Litig., 293 F.3d 289, 306-07 (6th Cir. 2002) (quoting Steinhardt, 9 F.3d at 235).

Therefore, if any of Carr's communications with Cacdac in CARR-000667-69, 00075-77, 00071-72, 00079-82 and 00084-85 qualify as work product, I find that the protection was waived.

I further find that plaintiffs' evidence fails to establish that the remainder of Carr's e-mails to Cacdac are work product. The other documents are merely transmittal letters of attached news reports. Therefore, the remainder of the documents are not protected from discovery.

Accordingly, defendant's motion is granted and plaintiffs must produce to Industrial all of the documents listed on the Cacdac privilege log, with the exception of the irrelevant documents related to the Black Elk explosion that I have previously identified.

### 3.   Carr's Communications with Smith

Carr declares that, after she interviewed some of the plaintiffs and evaluated their documents in late 2010, she contacted Homeland Security on an unspecified date "to request an investigation of their situation as a possible labor trafficking case" and that Smith "was assigned as the investigator." Record Doc. No. 436 at ¶ 3. In the documents

listed on Carr's privilege log regarding Smith (consisting of CARR-00001 through 00063), the first written communication from Seghers to Smith is dated January 25, 2011. Bates No. CARR-00041. This e-mail indicates that the initial contact between Seghers and Smith occurred around this date.

Carr also states that she learned in early March 2013 that the IRS had begun working with Smith and was investigating whether defendants had violated any tax laws. She says she shared information with Smith and an IRS representative "to assist the federal government's investigation in anticipation of possible criminal litigation against Defendants, our common adversaries." Record Doc. No. 436 at ¶ 12.

As previously stated, Smith's e-mails to Seghers[2] and Carr are not plaintiffs' work product and are not protected from discovery.

Again, even if plaintiffs reasonably anticipated litigation before October 8, 2011, I find that plaintiffs have failed to establish that any of Carr's e-mails to Smith were created with the primary motivating purpose to aid in possible future litigation. Despite Carr's conclusory declaration, I find that the primary motivating purpose for all of her e-mails to Smith was to handle issues regarding the immigration status of workers who had left the employ of Grand Isle Shipyard. The e-mails reflect that Carr worked with Smith to arrange for the workers to receive "deferred action," "continued presence," "T

---

[2]Seghers only sent a couple of e-mails to Smith before he left the firm and Carr took over the handling of the Grand Isle Shipyard workers' issues. CARR-00037.

visas," biometrics appointments and work authorization cards. Any relation to the instant litigation or a United States labor trafficking investigation is tangential at most.

Accordingly, defendant's motion is granted and plaintiffs must produce all of the documents listed on the Carr/Smith privilege log.

D.   Donnelly's Documents

All of the communications sent and received by Donnelly, which are stamped with Bates No. FH-DONN-00001 through 00083, are listed on a single privilege log. Just as with the Carr documents, I find that none of the e-mails sent to Donnelly by Homeland Security Agent Smith, Assistant United States Attorney Taylor, or Labor Department employee Franquiz are plaintiffs' work product.

As to the e-mails from Donnelly and her co-counsel at Fishman Haygood to these agents, all of the documents were created on or after May 16, 2012, well after this litigation began. Plaintiffs argue that they did not waive their work product privilege by sending these e-mails because they had common litigation interests with the agencies that were investigating defendants' conduct to evaluate whether defendants might have violated any criminal laws and/or administrative regulations.

For the same reasons as stated above, the question of waiver does not arise in this context because Donnelly's correspondence to third-parties Taylor, Smith and Franquiz is not protected by the work product doctrine. Her communications with these agents reveal counsel's thought processes, but they are not the type of document, such as an

audit report or confidential, in-house document, that the waiver case law has considered as work product.

If the e-mails are work product, I find that plaintiffs waived the privilege when counsel voluntarily revealed otherwise protected information to government agents, <u>not</u> with the primary motivating purpose of aiding in their civil litigation, but with the primary purpose of provoking or assisting in the government's criminal or administrative investigations.

> The present case falls clearly into a third category, in which waiver results from the voluntary submission of material to a government agency to incite it to attack the informant's adversary.
>
> \* \* \*
>
> In the present case, the plaintiff and the government authorities were neither adversaries nor allies when the documents were submitted.  As in many such cases, plaintiff sought to persuade uncommitted agencies to initiate actions which would disadvantage its competitor and perhaps provide plaintiff with the advantages of collateral estoppel from a governmentally-litigated favorable judgment, or at least useful evidence from a governmental authority's investigation.

<u>Sidari</u>, 2000 WL 33407343, at \*9 (quoting <u>Info. Res. v. Dun & Bradstreet Corp.</u>, 999 F. Supp. 591, 593 (S.D.N.Y. 1998)).

Again, there is no evidence of any confidentiality agreement between Donnelly's firm and any of the government agencies.

But work product immunity is lost when a party simply makes a voluntary submission of material to a government agency to incite it to attack the informant's adversary. Information Resources, 999 F. Supp. at 593.

> A well-travelled route to achieving relief in civil litigation has been to persuade the government to take action against a party and thereby gain, if possible, the advantage of collateral estoppel in later civil litigation against that party. The party who travels that route should not be protected from disclosure of its statements.

Three Crown Limited Partnership v. Salomon Brothers, Inc., No. 92 Civ. 3142, 1993 WL 277182, at *2 (S.D.N.Y. July 21, 1993). In such circumstances the party asserting work product and the government agency are not allies: they have not agreed on a common strategy, much less commenced joint or even parallel litigation. See . . . D'Ippolito v. Cities Service Co., 39 F.R.D. 610, 610 (S.D.N.Y. 1965) ("The government is not a party to this lawsuit, and the disclosure of the document cannot be termed as an interchange of information between counsel on the same side of the litigation."). Moreover, disclosure in this context increases the probability that the work product will be obtained by the informant's adversary. If the disclosing party's lobbying effort is successful and the government initiates a prosecution, then the work product could be disclosed in a public trial. See Sidari v. Orleans County, No. 95-CV-7250, 2000 WL 33407343, at *8 (W.D.N.Y. Oct. 3, 2000) (work product immunity waived for tape provided to F.B.I. with expectation that it would be used at trial); Litton Systems, Inc. v. A.T. & T. Co., No. 76 Civ. 2512, 1979 WL 1612, at *2 (S.D.N.Y. March 30, 1979) (work product protection waived by disclosing witness interview reports to district attorney where witnesses could be expected to testify if criminal proceedings commenced.) Even short of trial, a prosecutor may well disclose information when it would be advantageous to law enforcement.

U.S. Info. Sys., Inc. v. Int'l Bhd. of Elec. Workers, No. 00Civ.4763(RMB)(JCF), 2002 WL 31296430, at *4-5 (S.D.N.Y. Oct 11, 2002).

I agree with the reasoning of these courts and find that plaintiffs have waived any work product protection in the Donnelly documents. Accordingly, defendant's motion

is granted in that plaintiffs must produce all of the documents listed on the Donnelly privilege log.

CONCLUSION

For the foregoing reasons, IT IS ORDERED that the deferred portion of defendant's motion is GRANTED IN SUBSTANTIAL PART AND DENIED IN VERY LIMITED PART.   IT IS FURTHER ORDERED that plaintiffs must produce to defendants all non-protected documents, as described above, no later than July 22, 2013.

New Orleans, Louisiana, this ____5th____ day of July, 2013.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE