UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ISIDRO BARICUATRO, JR. ET AL. | CIVIL ACTION |
| VERSUS | NO. 11-2777 |
| INDUSTRIAL PERSONNEL AND<br>MANAGEMENT SERVICES, INC. ET AL. | SECTION "N" (2) |

## ORDER AND REASONS ON MOTIONS

This is a contentiously and sometimes vituperatively conducted putative class action by foreign workers asserting a variety of causes of action arising from their employment at a Louisiana shipyard. The following two motions are currently pending before me:

(1) Motion of Defendants, DNR Offshore & Crewing Servs., Inc., Industrial Personnel and Management Services, Inc. and Nilfil Peralta, for Contempt and/or Sanctions, Record Doc. No. 416; and

(2) Motion of Defendants, Grand Isle Shipyard, Inc., Thunder Enterprises, Inc. and Mark Pregeant, Jr., to Hold Plaintiff Erwin Realin in Contempt and Impose Sanctions, Record Doc. No. 419.

Defendants D&R Resources, LLC, Randolf Malapago and Danilo N. Dayao have filed a supporting memorandum supporting adopting the motions and arguments of their co-defendants. Record Doc. No. 420. Plaintiffs filed a timely opposition memorandum. Record Doc. No. 441. Both sides have attached voluminous evidentiary materials to their submissions, including transcripts of Realin's deposition, its errata sheet in which he makes substantive changes to what he said orally, and sworn written declarations.

The basic premise of the defense motions is that Realin has committed perjury in his sworn deposition testimony and/or written declarations/affidavits filed with the court under oath or penalty of perjury and that, as a result, he should be held in contempt and/or some or all of his claims should be dismissed as a sanction. In addition or alternatively, defendants seek awards of attorneys fees and costs incurred in connection with Realin's deposition and filing these motions. Having considered the written submissions of the parties, the evidence attached to the motion papers, the record of the case as a whole and the applicable law,

**IT IS ORDERED** that the motions are GRANTED IN PART and DENIED IN PART. I decline to make contempt findings or to recommend to the presiding district judge dismissal or any of the other claim dispositive sanctions sought by defendants in these motions, principally because I cannot conclude with certainty on this record that plaintiff Realin has willfully committed perjury or has exhibited stubborn resistance to authority in this case. The defense motions, however, clearly catalogue a variety of falsehoods in Realin's sworn testimony and/or written declarations requiring imposition of lesser, more appropriate sanctions.

As to the request for a contempt finding, the United States Court of Appeals for the Fifth Circuit has stated that "[f]ederal courts have the inherent power to punish for contempt. Roadway Express, Inc. v. Piper, 447 U.S. 752, 764 (1980). The availability of that power promotes 'the due and orderly administration of justice' and safeguards the court's authority. Id. (quoting Cooke v. United States, 267 U.S. 517, 539 (1925)). 'Because inherent powers

are shielded from direct democratic controls,' [however,] the Supreme Court instructs that 'they must be exercised with restraint and discretion.' Id. Rather than stemming from a 'broad reservoir,' they are 'implied power[s,] squeezed from the need to make the court function.' Crowe v. Smith, 151 F.3d 217, 226 (5th Cir. 1998)." Hornbeck Offshore Services, L.L.C. v. Salazar, 713 F.3d 787, 792 (5th Cir. 2013) (emphasis added).

Similarly, the dispositive and draconian remedy of dismissal as a sanction is reserved exclusively for clear records of contumacious and continuing litigation misconduct or delay, ordinarily involving failure to comply with multiple court orders. See Doe v. Am. Airlines, 283 F. App'x 289, 291 (5th Cir. 2008); Davis v. Auto Club Family Ins. Co., No. 07-8545, 2008 WL 5110619, at *1 (E.D. La. Dec. 2, 2008) (Vance, J.) (citing Fed. Deposit Ins. Corp. v. Conner, 20 F.3d 1376, 1381 (5th Cir. 1994); Equal Emp't Opportunity Comm'n v. Gen. Dynamics Corp., 999 F.2d 113, 119 (5th Cir. 1993); Batson v. Neal Spelce Assocs., Inc., 765 F.2d 511, 515 (5th Cir. 1985)). "[I]t is not a party's negligence – regardless of how careless, inconsiderate, or understandably exasperating – that makes conduct contumacious; instead, it is 'the stubborn resistance to authority' which justifies a dismissal with prejudice." McNeal v. Papasan, 842 F.2d 787, 792 (5th Cir. 1988)(quoted in Brown v. Oil States Skagit Smatco, 664 F.3d 71, 77 (5th Cir. 2011). Because "dismissal with prejudice 'is a severe sanction that deprives a litigant of the opportunity to pursue his claim,'" it is appropriate only where the

misconduct meets the egregiousness standard noted above, where "'lesser sanctions would not serve the best interests of justice'" and "when the objectionable conduct is that of the client, and not the attorney." Brown, 664 F.3d at 77 (quoting Woodson v. Surgitek, Inc., 57 F.3d 14086, 1418 (5th Cir. 1995) and Sturgeon v. Airborne Freight Corp., 778 F.2d 1154, 1159 (5th Cir. 1985)). A party's perjury, with no attempt to offer the truth after contradictory testimony is revealed, is one example of contumacious conduct sufficient to support dismissal as a sanction. Brown, 664 F.3d at 75, 78. However, the court must always consider lesser sanctions before imposing the ultimate penalty of dismissal. Id. at 77.

In this case, I cannot make the clear and certain finding of intentional perjury of the type made by the court in Brown. Certainly, there is ample fodder in the lengthy deposition testimony, its errata sheet and sworn declarations of Realin for the fact-finder ultimately to conclude that his internally inconsistent, sometimes self-contradictory, often confusing and sometimes evasive testimony is not credible and should be given no weight, particularly when the materials include clear falsities. Other factors, however, lead me to stop short of concluding that his overall testimony was so willfully and intentionally false as to material matters in the way required to support a perjury finding, United States v. Dunnigan, 507 U.S. 87, 93, 113 S. Ct. 1111, 1116 (1993); 18 U.S.C.

1621, that significant portions could not be characterized as merely mistaken or misapprehended by Realin or misguided under the influence of some of his lawyers.

For example, although Realin, a Filipino, speaks, reads and understands some English, it is not his first or native language. It was necessary for the parties to have a Tagalog-to-English interpreter sworn in to translate the deposition questions and his answers. Record Doc. No. 441-3 at p. 4 (Realin deposition transcript at p. 8). Language problems resulting in possible misunderstanding of both questions and answers occurred throughout the deposition. See, e.g., id. at pp. 5-6, 8 and 33, deposition transcript at pp.12-13, 22-23, 121-23 (colloquy of counsel and related examination concerning Realin's misunderstanding of "maybe a poorly-asked question" and other inquiries, the need to clarify translator's job "simply to repeat word for word everything" without "trying to explain things to the witness," and the participants' "frustration" concerning "understanding" and "normal conversation . . . shortcuts"); p. 34, deposition transcript at p. 125 lines 13-19 (examiner's misunderstanding of answer explained by translator); p. 57, deposition transcript p. 217 (translator pointing out Realin's mistaken understanding of the meaning of a declaration provision); pp. 6, 76, deposition transcript pp. 14, 294, 296 (translator's need to have questions repeated); p. 71, deposition transcript p. 276 (dispute over completeness of answer translation); p. 79, deposition transcript pp. 307 (difficulty with examiner's use of the English word "substandard,"

5

about which translator explains "[t]here isn't really a word, a specific word that would describe substandard" in Tagalog).

In addition, the Fifth Circuit precedent outlined briefly above requires that the court consider the role of Realin's lawyers, some of whom have already demonstrated to the court that they have significant, and sometimes misguided, influence over the conduct and activities of plaintiffs in this case. Record Doc. Nos. 351 at pp. 6, 8 and 381. Realin's sworn written declarations or affidavits, when compared to his deposition testimony, form a significant basis for defendants' perjury accusations. Realin testified that he is a person who sometimes signs documents without fully reading or understanding them, id. at p. 84, deposition transcript pp. 219-20, or at least without any recollection of whether he did or did not. Id. at p. 59, deposition transcript p. 228. My impression from his deposition testimony is that Realin is a person of limited sophistication in matters of business contracts and law. He can reasonably be expected to be fully susceptible to direction by his counsel. As to one of his sworn written declarations, he testified that two of his lawyers, who are identified in the testimony as Peter Schneider and Ellaine Carr, gave it to him to sign and that he did not remember if any of them read it to him or translated it into Tagalog for him. Id. at p. 74, deposition transcript pp. 286-87. Under these circumstances, I cannot conclude that the differences between what Realin swore to in his written declarations and what he testified about in

his oral deposition are solely attributable to Realin, as opposed to these two of his lawyers.

Unlike the plaintiff and his lawyer in Brown, who failed to appear at a court hearing that had been scheduled to address what ultimately became the court's perjury finding, I cannot conclude that Brown's deposition testimony constituted "no attempt to offer the 'truth' after [examining defense counsel] revealed his contradictory testimony." See Brown, 664 F.3d at 75, 80 (discussing claim of denial of evidentiary hearing). As the motion papers point out, Realin admitted on several occasions during his deposition that parts of his declaration statements were inaccurate, incomplete, misunderstood, even untrue; and he attempted during his deposition testimony – albeit unconvincingly at times – to correct or explain those problems.

Thus, on one hand, I cannot conclude on this record that the various inconsistencies, contradictions and admitted inaccuracies chronicled in these motion papers and their attachments were mostly intentional falsehoods about material facts rising to the level of perjury attributable solely to Realin's willful and intentional disregard for the solemnity of the oath and stubborn resistance to authority, as opposed to Realin's mistake, misunderstanding, misapprehension or misguided willingness to sign whatever his counsel drafted for his signature. A contempt citation and/or dismissal of

all or some of Realin's claims are not appropriate sanctions under these circumstances, and the motions are denied insofar as they seek these unduly harsh penalties.

On the other hand, the defense motions identify many more than a mere few clear falsehoods in Realin's deposition testimony and/or sworn written statements that no manner of explanation, language difficulty, cultural difference or lawyer influence can excuse. As to these instances, chronicled in detail in Record Doc. Nos. 416-3 and 419-3, which fall short of contemptuous perjury but which nevertheless demand consequence, lesser sanctions are appropriate. Accordingly, the motions are granted in part as follows:

> (1) **IT IS ORDERED** that plaintiffs – though not defendants – are hereby prohibited from using or introducing Realin's live oral or deposition testimony, affidavits or written declarations, or any documentary or other tangible evidence reflecting or relating to Realin individually (hereafter collectively "Realin evidence") at any hearing or trial or in any motion or other proceeding in this case in connection with (a) the claims of any plaintiffs other than Realin, and/or (b) any class-wide issue. Instead, Realin evidence may be used only by Realin himself solely in connection with Realin's own individual claims, and no others.
>
> (2) **IT IS FURTHER ORDERED** that the following Realin evidence already submitted by plaintiffs in support of their pending motion to certify class action, Record Doc. No. 401, is hereby STRICKEN and will not be considered in support of the motion: Paragraphs 12 and 41 of the Declaration of Peter B. Schneider, Record Doc. No. 401-5, and its attached Exhibit 10, Record Doc. No. 401-9 at p. 77 (Realin paystub dated January 31, 2008, Exhibit P-22 to A. Hernandez deposition) and Exhibit 39, Record Doc. No. 401-13 at p. 6 (Realin GIS Employee Documentation Form dated March 14, 2008, Exhibit P-93 to L. Lumba deposition); first full sentence of email dated June 2, 2011, Record Doc. No. 401-9 at p. 69 ("We were saddened by the news on Mr. Realin."); email dated June 1, 2011, Record

Doc. No. 401-9 at p. 70 ("I have received a report last Sunday that Mr. Erwin Realin [etc.] . . . .").

(3) **IT IS FURTHER ORDERED** that the following Realin evidence already submitted by plaintiffs in response to defendants' motion for partial summary judgment, Record Doc. No. 406, is hereby STRICKEN and will not be considered in opposition to defendants' motion: Realin's deposition testimony quoted at Record Doc. No. 425-1 at p. 4, fn. 9; pp. 5-6 and p. 7; fn. 16.

The motions are also granted in part and denied in part insofar as they seek monetary sanctions. I will not impose all of the monetary sanctions of the sort requested by defendants; specifically, an award of attorneys' fees and costs, both for his deposition and the fees of the Tagalog language translator, and for all expenses incurred in connection with these motions. I have made no finding of perjury or fraud upon the court. The principal relief sought by defendants – contempt and/or dismissal – has been denied. Given the nature of this testimony and the importance of challenging through strenuous cross-examination the credibility of plaintiffs, especially Realin, and their recitation of the seriously disputed facts in this contentious case, the thoroughgoing and extensive deposition questioning conducted by defense counsel was both necessary and effective. The deposition would have been what it was regardless of Realin's oral answers to particular questions. I cannot conclude that anything Realin said during his deposition unduly lengthened it or increased unnecessarily defendants' attorneys' fees or costs. Accordingly, no attorneys' fees or costs incurred by defendants in the deposition itself will be awarded.

On the other hand, while the harsh sanctions principally sought by defendants in these motions are unjustified and have been denied, the multitude of inconsistencies, inaccuracies, contradictions and misstatements of Realin, needed to be brought to the court's attention by way of these motions. The motions were partially successful in that the lesser non-monetary sanctions set out above have been imposed. For these reasons, the motion is granted in part in that the court will award defendants one-half of their reasonable attorneys fees and costs expended in their preparation and filing of these motions. Because of the role of some of Realin's counsel outlined above, these monetary sanctions will be imposed against Realin, Schneider and Carr.

**IT IS ORDERED** that, no later than **July 19, 2013**, defendants must file and serve a motion to fix the amount of this award, supported by affidavits and other evidentiary materials as required by Local Rule 54.2, so that the court may set the amount of this award. Plaintiffs may file their written opposition to defendants' motion no later than **July 30, 2013**. Thereafter, the court will set the amount of recoverable fees and costs on the record, without oral argument.

New Orleans, Louisiana, this ___5th___ day of July, 2013.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

**CLERK TO NOTIFY:**
**HON. KURT D. ENGELHARDT**