UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

ISIDRO BARICUATRO, ET AL                                    CIVIL ACTION

VERSUS                                                      NO. 11-2777

INDUSTRIAL PERSONNEL AND                                    SECTION "N"  (2)
MANAGEMENT SERVICES, INC., ET AL

## ORDER AND REASONS

Before the Court are the following motions: (1) a Motion for Partial Summary Judgment on Plaintiffs' Purported Tax Refund Claim, filed by D&R Resources, LLC, Danilo Dayao, and Randolf Malagapo **(Rec. Doc. 583)**; (2) a Motion for Partial Summary Judgment on Plaintiffs' Purported Tax Refund Claim, filed by Grand Isle Shipyard, Inc. **(Rec. Doc. 586)**; (3) a Motion for Partial Summary Judgment on Plaintiffs' Misrepresentation Claims **(Rec. Doc. 585)**; (4) a Motion for Partial Summary Judgment on Plaintiffs' Breach of Contract and Implied Duty of Good Faith and Fair Dealing Claims **(Rec. Doc. 628)**; (5) Defendant's Motion for Partial Summary Judgment on Section 1981 Claim **(Rec. Doc. 609)**; and (6) a Motion for Partial Summary Judgment on Damages **(Rec. Doc. 635)**.

## I. BACKGROUND:

The plaintiffs are skilled Filipino workers who were recruited in the Philippines, given E-2 or B-1/OCS visas, and then brought to Louisiana, where they worked in the oil and gas

industry. *See* Rec. Docs. 1, 24, 172, 235, 311. Claims against seven defendants[1] have been dismissed. *See* Rec. Docs. 543, 544, 545, 546, 564, 566, 567, 571, 577 and 578. The remaining defendants are: (1) Grand Isle Shipyard, Inc. ("GIS"); (2) D&R Resources, LLC ("D&R"); (3) Danilo N. Dayao; and (4) Randolf Malgapo.

In its amending complaints, the plaintiffs alleged that the defendants: (1) subjected them to forced labor in violation of the Trafficking Victims Protection Act of 2003 ("TVPA") (18 U.S.C. §§ 1589-90); (2) violated the Racketeer Influenced and Corrupt Organization Act ("RICO") (18 U.S.C. §§ 1961- 68); (3) violated the plaintiffs' civil rights (42 U.S.C. § 1981); (4) violated the Fair Labor Standards Act ("FLSA") (19 U.S.C. §§ 203(m), 206 & 207); (5) violated the Klu Klux Klan Act of 1871 (42 U.S.C. § 1985) and the Thirteenth Amendment; (6) committed fraud and negligent misrepresentation; (7) subjected the plaintiffs to false imprisonment; (8) committed the torts of intentional and negligent infliction of emotional distress under Louisiana law; and (7) breached contracts and/or covenants of good faith and fair dealing. *See* Rec. Docs. 24, 172, 235, 311. The plaintiffs have dismissed their claims under RICO, the TVPA, and section 1985, as well as their claims for intentional and negligent infliction of emotional distress. *See* Rec. Docs. 564, 566, 567, 571, 577 and 578. The Court dismissed the false imprisonment claims on motion for partial summary judgment. Rec. Doc. 465. The instant motions seek to dismiss the plaintiffs' remaining claims (except for the FLSA claims, which were the subject of a separate motion for summary judgment that was denied).[2]

---

[1] The defendants that have been dismissed are: (1) DNR Offshore and Crewing Services, Inc. ("DNR"); (2) Pacific Ocean Manning, Inc. ("POMI"); (3) V Manpower Philippines, Inc., f/k/a V People Manpower Philippines, Inc. ("V People"); (4) Industrial Personnel and Management Services, Inc. ("IPAMS"); (5) Thunder Enterprises, Inc.; (6) Mark Pregeant; and (7) Nilfil Peralta.

[2] *See* Rec. Docs. 647, 672.

**II. LAW AND ANALYSIS:**

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he burden on the moving party may be discharged by 'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 234 (5th Cir. 2010) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Once the moving party has carried this burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "[T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Id.* (quoting *Matsushita,* 475 U.S. at 587). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). Although the Court must draw in favor of the nonmoving party all reasonable inferences that may be drawn from the evidence submitted, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994)); *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012). If the nonmoving party cannot produce admissible evidence sufficient to establish an essential element as to which the nonmoving party would bear the burden at trial, entry of summary judgment is mandated. *Celotex Corp.*, 477 U.S. at 322-23.

A.   **The Motions for Partial Summary Judgment on Plaintiffs' Purported Tax Refund Claim (Rec. Docs. 583 and 586):**

Since the inception of this law suit, the plaintiffs have alleged that certain defendants wrongfully submitted tax returns on the plaintiffs' behalf and retained the plaintiffs' tax refunds. *See* Rec. Docs. 1 at ¶ 54, 24 at ¶ 99, 172 at ¶ 116, 235 at ¶ 122, 311 at ¶ 150. Although the plaintiffs initially included GIS among the defendants named in this allegation,[3] they dropped GIS from the allegation after the First Amended Complaint. *See* Rec. Docs. 172 at ¶ 116, 235 at ¶ 122 and 311 at ¶ 150. Defendants D&R, Dayao, and Malgapo are consistently named throughout all the amended complaints as having committed this wrong.

D&R, Dayao, and Malgapo now seek to dismiss this claim on two grounds: (1) that it was not fairly raised in the pleadings; and (2) that the allegations should be construed as the tort of conversion, and that as such, the cause of action has prescribed under the one-year period applicable to delictual obligations. GIS seeks to dismiss the claim on grounds, *inter alia*, that GIS was dropped from this allegation in the later amended complaints and, thus, was not given fair notice that the plaintiffs continued to bring the claim against it. Rec. Docs. 583-1, 586-2. As to GIS, the Court finds that any fair reading of the complaints would lead a reasonable person to believe that the claim had been dropped insofar as it pertained to GIS. Thus, GIS is entitled to judgment as a matter of law dismissing this claim. However, the Court finds that all of the amended complaints give fair notice of the claim as to D&R, Dayao, and Malgapo.

The Court is further unpersuaded that the claims are prescribed, at least insofar as they are alleged against D&R. Although the law imposes a general duty to not retain the property of

---

[3] Rec. Doc. 24 at ¶ 99.

another, in this case, the alleged employment relationship also imposed upon D & R a contractual duty to pay the plaintiffs for the work performed.  Allegedly applying for and withholding the plaintiff's tax refunds, if proven, would result in a breach of this contractual duty.  Thus, D&R is not entitled to judgment as a matter of law on this claim, and the motion for summary judgment will be denied.  With regard to Dayao and Malgapo, there is no evidence that any plaintiff had a contractual relationship with either of these two defendants in their personal capacities.  Thus, as to them personally, the motion will be granted.

   **B.**  **The Motion for Partial Summary Judgment on Plaintiffs' Misrepresentation Claims (Rec. Doc. 585):**

  Certain of the plaintiffs have asserted intentional and negligent misrepresentation claims against the defendants, alleging that the defendants promised them free food and housing and/or sponsorship for green cards or permanent residency in connection with signing employment contracts.  The remaining four defendants seek to dismiss these claims on several grounds.  The Court need not address all the defendant's arguments, for the Court finds that all but two of the plaintiffs have failed to show that they can establish each element of these causes of action.

  To establish a claim for negligent misrepresentation, a plaintiff must prove that:  "(1) the defendant, in the course of its business or other matters in which it had pecuniary interest, supplied false information, (2) the defendant had a legal duty to supply correct information to the plaintiff, (3) the defendant breached its duty, which can be breached by omission as well as by affirmative misrepresentation, and (4) the plaintiff suffered damages or pecuniary loss as a result of the its justifiable reliance upon the omission or affirmative misrepresentation." *Systems Engineering and Sec., Inc. v. Science & Eng'g Ass'ns, Inc.*, 962 So. 2d 1089, 1092 (La. Ct. App.

4th Cir. 2007). "The elements of a claim for intentional misrepresentation in Louisiana are: (1) a misrepresentation of a material fact; (2) made with intent to deceive; and (3) causing justifiable reliance with resultant injury." *Kadlec Medical Ctr. v. Lakeview Anesthesia Assocs.*, 527 F.3d 412, 418 (5th Cir. 2008).

With the exception of two plaintiffs, the Court agrees with the defendants that the plaintiffs have failed to come forward with evidence of specific facts demonstrating what specific misrepresentation(s) was made to the individual plaintiff and how that particular plaintiff relied on the misrepresentation. Throughout their opposition memorandum, the plaintiffs refer to allegations in the complaint and suggest that they should be accepted as true. *See* Rec. Doc. 607. However, the question on summary judgment is not whether the plaintiffs have pled sufficient facts to give fair notice of their claim; it is whether they can prove their claim. Once the moving party points out the absence of evidence to support an element for which the nonmoving party bears the burden of proof, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Amazing Spaces*, 608 F.3d at 234 (quoting *Matsushita,* 475 U.S. at 587). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* (quoting *Liberty Lobby*, 477 U.S. at 249).

The only real evidence proffered by the plaintiffs are the declarations of Jose Espiritu and Rosauro Dimalanta. Espiritu attests that he was told by Mark Pregeant, Sr., "in one of his monthly meetings" that "my work would make me eligible for a green card or permanent residency" and that "he will help us get a green card." Rec. Doc. 607-3. Espiritu states that he relied on this statement in continuing to work for GIS and D&R. *Id.* Similarly, Dimalanta

6

attests that Dayao told him that "he will help me obtain a green card." Rec. Doc. 607-4. Dimalanta attests that this promise was one of the reasons that he continued working for GIS and D&R. *Id.* No similar evidence is offered in support of any other plaintiff's claim.

The only other evidence proffered by the plaintiffs are the employment contracts of eight plaintiffs.[4] Rec. Docs. 607-5 through 607-12. While the Court agrees that promises and statements made to the plaintiffs regarding free housing or food may be relevant to their breach of contract claims and FLSA claims (given that the propriety of deductions for room and board will be at issue in the trial of those claims, at least as to certain plaintiffs), the employment contracts contain nothing to help the plaintiffs establish the essential elements of their misrepresentation claims. Likewise, the deposition excerpt of Isidro Baricuatro[5] contains nothing that aids the plaintiffs. Thus, the defendants are entitled to judgment as a matter of law dismissing the misrepresentation claims of every plaintiff except for Jose Espiritu and Rosauro Dimalanta.

As for Espiritu and Dimalanta, it is a closer call. Their declarations provide evidence of a false promise upon which they relied, allegedly to their detriment. The defendants argue vigorously that reliance upon a promise for green card sponsorship or help attaining permanent resident status is *per se* unjustifiable. However, the case upon which they rely, *Francis v. Gaylord Container Corp.*, 837 F. Supp. 858 (S.D. Ohio 1992), is a "reasonable reliance" case of promissory estoppel, not a "justifiable reliance" case of misrepresentation. Justifiable reliance is

---

[4] These plaintiffs are: Isidro Baricuatro, Jose Espiritu, Ferdinand Garcia, Angelo Nalzaro, Cornelio Ingco, Rufino Orlanes, Francisco Villanueva, and Rosauro Dimalanta.

[5] Rec. Doc. 607-13.

less strict than the objective reasonable man standard, as the Supreme Court explained in *Field v. Mans,* 516 U.S. 59 (1995):  "Although the plaintiff's reliance on the misrepresentation must be justifiable ... this does not mean that his conduct must conform to the standard of the reasonable man.  Justification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases."  *Id.* at 70-71 (quoting the RESTATEMENT (SECOND) OF TORTS).  Here, Espiritu and Dimalanta attest that they were not familiar with the laws of residency or the process for obtaining a green card, and they believed what they were told.  *See* Rec. Docs. 607-3, 607-4.  Especially given the plaintiffs' backgrounds and language barriers, the Court cannot conclude that these two plaintiffs' reliance was unjustifiable as a matter of law.

       The defendants also argue that the misrepresentation claims of Espiritu and Dimalanta are prescribed as a matter of law.  However, the Court finds that the record would support a reasonable jury in finding in favor of Espiritu and Dimalanta on this issue.  The doctrine of *contra non valentem* "prevents the running of liberative prescription where the cause of action is not known or reasonably knowable by the plaintiff." *Becker v. Murphy Oil Corp.,* 70 So. 3d 885, 911 (La. Ct. App. 2011) (quoting *Cole v. Celotex Corp.*, 620 So. 2d 1154, 1156 (La. 1993)).  Thus, prescription " 'commences when the plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort.' " *Watters v. Dep't of Social Servs.,* 102 So. 3d 118, 131 (La. Ct. App. 4th Cir. 2012) (quoting *Campo v. Correa*, 828 So. 2d 502, 510 (La. 2002).  It "does not run against a plaintiff who is unaware of the facts upon which [his] cause of action rests unless his ignorance is willful, negligent or unreasonable." *Id.*

Here, although the declarations of Espiritu and Dimalanta suggest that the promises and statements regarding green card eligibility were made in 2006 and/or 2007, they also attest that they did not realize until their employment ended in 2011 that the defendants "had lied." Rec. Doc. 607-4. The defendants argue in their reply memorandum that the Court should disregard these statements because they are "self-serving" and, as such, do not constitute competent summary judgment evidence. *See* Rec. Doc. 619 at 13-14 of 17. However, testimony is not excludable merely because it is self-serving. *C.R. Pittman Const. Co., Inc. v. National Fire Ins. Co. of Hartford.*, 453 Fed. Appx. 439, 443 (5th Cir. 2011) ("If all 'self-serving' testimony were excluded from trials, they would be short indeed."). *Id.* "Instead, an affidavit based on personal knowledge and containing factual assertions suffices to create a fact issue, even if the affidavit is arguably self-serving." *Id.* Nor is this a case where in the face of overwhelming evidence to the contrary, the non-moving party's only evidence is a vague or conclusory affidavit. *See, e.g., Burrle v. Plaquemines Parish Gov't,* 553 Fed. Appx. 392, 394-95 (5th Cir. 2014). Espiritu and Dimalanta are competent to testify about their lack of knowledge, and the defendants have failed to show that their failure to apprehend the misrepresentation earlier was unreasonable as a matter of law. Thus, as to Espiritu and Dimalanta, as to the green card/residency representations only,[6] the motion will be denied. It is granted in all other respects.

---

[6] Espiritu also attests that he was told he would have free housing. Rec. Doc. 607-3. However, he attests that it was IPAMS that made this representation, not any of the remaining defendants. *Id.*

C. **The Motion for Partial Summary Judgment on Plaintiffs' Breach of Contract and Implied Duty of Good Faith and Fair Dealing Claims (Rec. Doc. 628):**

The defendants seek to dismiss and/or limit the plaintiff's state-law breach of contract claims on several grounds: (1) the plaintiffs should be judicially estopped from seeking FLSA remedies as part of their breach of contract claims because they have expressly confined such claims to "straight time" only; (2) the plaintiffs' claim for breach of contract, insofar as it seeks the payment of unpaid wages, is subject to a three-year prescriptive period, and claims for earlier periods are time-barred; (3) the plaintiffs have failed to identify the specific provisions of the contracts that were allegedly breached; and (4) certain plaintiffs have undercut their breach of contract claim by testifying in their depositions that the defendants did not breach their contracts or that they were unaware of the basis of their breach of contract claim. The defendants also argue that claims for breach of the implied duty of good faith are subject to a one-year prescriptive period.

The Court agrees with the defendants that the plaintiff's have expressly confined their breach of contract claims to seek "straight time" pay only, not minimum wage or overtime. *See* Rec. Doc. 517 at 20 of 72. Moreover, even if the plaintiffs had not judicially admitted this point, the Court has held already that the FLSA preempts the plaintiffs' state law breach of contract claims to the extent that they seek to enforce rights arising under FLSA (*i.e.*, the rights to be paid overtime and minimum wage). *See* Rec. Doc. 551 at 26-28. Thus, the plaintiffs' breach of contract claims are limited to seeking "straight time" wages.

However, the Court does not find that the defendants are entitled to judgment as a matter of law dismissing the breach of contract claims in their entirety. Although a handful of plaintiffs have made statements in their depositions that could be construed as denouncing or professing ignorance as to the basis for their individual breach of contract claim, the record is sufficiently replete with evidence of the plaintiffs' language barriers and unsophisticated backgrounds that the Court will not construe these statements as waivers of these plaintiffs' contract claims. Likewise, with regard to the issues of prescription and *contra non valentum*, these factors preclude a finding as a matter of law on the present record as to when prescription began to run as to any particular plaintiff. Motions under Rule 50 may be appropriate on these issues as the trials of individual claims proceed.

### D. Defendant's Motion for Partial Summary Judgment on Section 1981 Claim (Rec. Doc. 609):

The plaintiffs allege that they were discriminated against by GIS in several conditions of their employment because of their race, *i.e.*, Filipino or Asian Pacific Islander. Specifically, they claim that: (1) GIS paid Caucasian American employees time-and-a-half for overtime, but did not pay time-and-a-half for overtime worked by Filipino workers; (2) GIS did not restrict the movements of off-duty Caucasian American employees, whereas off-duty Filipino workers were not allowed to leave GIS facilities without supervision; (3) GIS required Filipino workers to perform menial tasks (*e.g.*, shoveling mud, working in the scrap yard, or working in a restaurant owned by a GIS executive) and personal servitude (*e.g.*, mowing the grass, washing cars, and babysitting) for GIS executives on a regular basis, whereas Caucasian American employees were not required to render personal services to GIS executives and were rarely required to perform menial tasks; (4) GIS did not debit the wages of Caucasian American employees for meals, tools,

or being allowed to bunk in the GIS bunkhouse, as it did for Filipino workers; and (5) GIS segregated its bunkhouse according to race, with Filipino, African-American, and Caucasian workers housed in separate quarters.  GIS seeks to dismiss the race discrimination claims on grounds (1) that it is not the plaintiffs' "employer" for purposes of 42 U.S.C. § 1981, and (2) that the plaintiffs cannot meet their burden of proving race discrimination under applicable law.

"Claims of racial discrimination in employment, pursuant to 42 U.S.C. § 1981 ..., are governed by the same analysis as that employed for such claims under Title VII."  *Hudson v. Cleco Corp.*, 539 Fed. Appx. 615, 619 (5th Cir. 2013) (quoting *DeCorte v. Jordan*, 497 F.3d 433, 437 (5th Cir. 2007)).  Where a claim of discrimination is based on circumstantial evidence, the court applies "the familiar *McDonnell Douglas* burden-shifting analysis."  *Id.*  (quoting *Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 316–17 (5th Cir. 2004) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

> To survive summary judgment under *McDonnell Douglas*, the plaintiff must first present evidence of a prima facie case of discrimination. If the plaintiff presents a prima facie case, discrimination is presumed, and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the underlying employment action. If the employer is able to state a legitimate rationale for its employment action, the inference of discrimination disappears and the plaintiff must present evidence that the employer's proffered reason was mere pretext for racial discrimination.

*Id.* (quoting *Davis*, 383 F.3d at 317).  "To establish a prima facie case of discrimination, a plaintiff must demonstrate that he:  '(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group.' "  *Id.* (quoting *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007)).

To prevail on a hostile work environment claim, a plaintiff must establish that: "(1) he belongs to a protected group, (2) he was subjected to unwelcome harassment, (3) the harassment complained of was based on race, (4) the harassment complained of affected a term, condition, or privilege of his employment, and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action." *Burrle v. Plaquemines Parish Gov't*, 553 Fed. Appx. 392, 394 (5th Cir. 2014) (quoting *Barkley v. Singing River Elec. Power Ass'n*, 433 Fed. Appx. 254, 258 (5th Cir. 2011)).

GIS argues half-heartedly that the plaintiffs' section 1981 claims fail because they cannot establish a contractual relationship with GIS.[7] The plaintiffs' contracts, GIS argues, are with the recruiting agencies in the Philippines, not with GIS. After two years of extensive motion practice, the Court is now quite familiar with the employment contracts and the arrangements between GIS and the Philippines recruiting agencies. There is ample evidence in the record to support a finding that the plaintiffs were recruited to work as employees of GIS. The plaintiffs reported daily to a GIS supervisor, who controlled all aspects of the plaintiffs' work — the hours and shifts worked, the assigned location of their work, the tasks to be performed, and the procedures to be followed. The record would support a reasonable jury in finding that a contractual relationship existed between GIS and the plaintiffs for purposes of section 1981.

---

[7] Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right...to make and enforce contracts...as is enjoyed by white citizens...." 42 U.S.C. § 1981(a). The term "make and enforce contracts" is defined to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). "Any claim brought under § 1981, therefore, must initially identify an impaired 'contractual relationship'...under which the plaintiff has rights." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006).

There is also sufficient evidence to support a reasonable jury in finding that GIS intentionally treated the plaintiffs less favorably than similarly situated Caucasian employees and did so because of their race. For the most part, GIS quibbles with the plaintiffs' evidence of disparate treatment. For example, GIS points to: (1) evidence that on certain occasions an "American" employee did work in the scrap yard or in a restaurant owned by a GIS executive; and (2) the depositions of two plaintiffs who testified that they preferred bunking with other Filipinos because they were neater and less noisy than Americans. Yet, while this evidence surely will be weighed by the jury against the plaintiffs' considerable evidence of disparate treatment, such weighing of evidence is no business of the Court's on summary judgment.[8]

GIS also argues that it had a legitimate, non-discriminatory reason for certain of the alleged disparate treatment. Specifically, it argues: (1) that it was justified in the failure to pay Filipino workers time-and-a-half for overtime because these workers were subject to contracts mandated by the Philippines government; and (2) that its deduction of housing expenses was justified because the Filipino workers were in the country on E-2 or H-2B visas. However, it

---

[8] "In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991) (citing *Liberty Lobby*, 477 U.S. at 255), *cert. denied*, 502 U.S. 1059 (1992) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). "Indeed, even if the moving party comes forward with an abundance of evidence supporting its theory of the case, the nonmoving party may nevertheless defeat the motion by countering with evidence of its own, which, if credited by the fact-finder, would entitle the nonmoving party to a verdict in its favor." *Id.* at 1263.

fails to explain how the POEA contract or the plaintiffs' visa status dictated the disparate treatment. Moreover, the plaintiffs' visa status and POEA contracts would appear to have no bearing on the other alleged acts of discrimination (*e.g.*, racially segregating the bunkhouse and requiring Filipinos to perform menial tasks and render personal services to GIS executives). Drawing all reasonable inferences in the plaintiffs' favor, the Court finds that a jury could reasonably find for the plaintiffs on the race discrimination claim. Accordingly, this motion will be denied.

## E. The Motion for Partial Summary Judgment on Damages (Rec. Doc. 635):

Finally, the defendants move to dismiss three categories of damages: (1) compensation for hours worked performing menial tasks and rendering personal services to GIS executives; (2) improperly withheld tax returns; and (3) improper deductions for housing. In short, the defendants argue that the plaintiffs ultimately received the amounts they were owed under their contracts regardless of where they worked or the nature of the work performed, regardless of whether the defendants withheld their tax refunds, and regardless of whether deductions were made for housing. The defendants' argument appears to be that these individual items of damages should be disregarded because the net effect of the defendants' payroll decisions did not amount to an overall net pay of less than the contractual amount owed. To state it colloquially, it all came out in the wash. The Court disagrees that this is a valid basis for judgment as a matter of law at this stage. While this argument certainly may be made at trial with respect to individual plaintiffs, each of these three items of damages are appropriate considerations in determining whether a plaintiff was paid the proper amounts under his contract and/or under the FLSA. Accordingly, the motion is denied.

### III.  CONCLUSION:

Accordingly, for the foregoing reasons, **IT IS ORDERED** that:

(1) The Motion for Partial Summary Judgment on Plaintiffs' Purported Tax Refund Claim, filed by D&R Resources, LLC, Danilo Dayao, and Randolf Malagapo **(Rec. Doc. 583)** is **GRANTED IN PART,** in that it is granted as to the claims against Danilo Dayao and Randolf Malagapo, and **DENIED IN PART**, in that it is denied as to the claims against D&R Resources, LLC;

(2) The Motion for Partial Summary Judgment on Plaintiffs' Purported Tax Refund Claim, filed by Grand Isle Shipyard, Inc. **(Rec. Doc. 586)** is hereby **GRANTED**;

(3) The Motion for Partial Summary Judgment on Plaintiffs' Misrepresentation Claims **(Rec. Doc. 585)** is hereby **DENIED IN PART**, in that it is denied as to the claims of Jose Espiritu and Rosauro Dimalanta, and **GRANTED IN PART,** in that it is granted in all other respects;

(4) The Motion for Partial Summary Judgment on Plaintiffs' Breach of Contract and Implied Duty of Good Faith and Fair Dealing Claims **(Rec. Doc. 628)** is hereby **GRANTED IN PART,** in that the plaintiffs' breach of contract and bad faith claims shall be dismissed to the extent that they are based on rights arising under the FLSA, and **DENIED IN PART**, in that it is denied in all other respects;

(5) Defendant's Motion for Partial Summary Judgment on Section 1981 Claim **(Rec. Doc. 609)** is hereby **DENIED**;

(6) The Motion for Partial Summary Judgment on Damages **(Rec. Doc. 635)** is hereby **DENIED**; and

(7) The following claims are hereby **DISMISSED**:

(a) Plaintiffs' claims against Grand Isle Shipyard, Inc., Danilo Dayao, and Randolf Malagapo, for retaining plaintiffs' tax refunds;

(b) Plaintiffs' claims for negligent and intentional misrepresentation, except for the claims of Jose Espiritu and Rosauro Dimalanta for misrepresentations relating to green cards and/or permanent residency;

(c) Plaintiffs' claims for breach of contract and implied duty of good faith and fair dealing to the extent that they are based on rights arising under the FLSA.

New Orleans, Louisiana, this 7th day of July, 2014.

_____
**KURT D. ENGELHARDT**
**UNITED STATES DISTRICT JUDGE**